STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

CHARTER INTERNATIONAL OIL COMPANY,

Plaintiff,

v.

C.A. NO. 06-3226

TRAVELERS CASUALTY AND SURETY COMPANY (f/k/a AETNA CASUALTY AND SURETY COMPANY),

Defendant.

# COMPLAINT

1. Plaintiff, Charter International Oil Company ("Charter") brings this action against Defendant, Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) ("Travelers") for breach of contract.

## INTRODUCTION

2. This is an insurance coverage action for breach of contract.

3. Charter seeks a judgment against Travelers for breaching insurance contracts by refusing and/or failing to defend and/or indemnify Charter with respect to claims relating to a former petroleum storage terminal located in Tiverton, Rhode Island.

## PARTIES

4. Charter is a Texas corporation, with a principal place of business at 11 Stanwix Street, Pittsburgh, Pennsylvania 15222.

5. Charter is the successor-in-interest by merger to the Northeast Petroleum Corporation ("Northeast"), which in turn was the successor-in-interest by merger to Pacific Oil Company ("Pacific").

6. Travelers is a Connecticut corporation with a principal place of business at 1 Tower Square, Hartford, Connecticut 06183.

## JURISDICTION AND VENUE

7. This Court may properly exercise personal jurisdiction over Travelers pursuant to R.I. Gen. Laws § 9-5-33(a). Specifically, Travelers possesses the necessary minimum contacts with the State of Rhode Island for this Court to assert personal jurisdiction because, upon information and belief, Travelers:

(a) is licensed or authorized to do business in Rhode Island;

(b) has, within the relevant time periods, transacted the business of selling insurance in Rhode Island; and/or

(c) agreed to insure person, property and/or risk located in Rhode Island at the time of contracting.

8. This Court has subject matter jurisdiction pursuant to R.I. Gen. Laws § 8-2-14 because the amount in controversy exceeds $10,000.

9. Venue lies in this Court pursuant to R.I. Gen. Laws § 9-4-5.

## UNDERLYING ENVIRONMENTAL CLAIM

10. Charter owned approximately 106 acres of land on the eastern shore of the Sakonnet River in Tiverton, Rhode Island ("Site").

11. From approximately the mid-1960s through the mid-1980s, Northeast utilized the Site for petroleum storage and distribution operations.

12. Various portions of the Site allegedly were contaminated with petroleum and petroleum constituents.

13. On December 18, 1985, the Rhode Island Department of Environmental Management ("RIDEM"), Division of Water Resources, Groundwater Section, wrote Northeast stating that "[i]ndividual concentrations [for oil and grease] … indicate the introduction of pollutant levels far in excess of existing levels established by the RI Department of Health for maximum contaminant levels for certain organic chemicals." RIDEM demanded a comprehensive testing proposal, prepared by a professional services firm, including a plan of the Site showing sample sites, water, wells, and organic parameters to be tested (the "Underlying Environmental Action").

14. As part of the Underlying Environmental Action, RIDEM demanded Site testing, monitoring and a remediation plan in accordance with its obligations to enforce the applicable law concerning the protection of the State's waters, including groundwater and other bodies of water, such as Narragansett Bay.

15. In lieu of issuing a Notice of Violation and as part of the ongoing Underlying Environmental Action, RIDEM and Charter, as successor-in-interest to Northeast, entered into a Consent Agreement in March 1992, which set forth a required Site remediation plan and required, among other things, that Charter remediate the Site and any off-site contamination resulting from Site-related activities, in accordance with the laws and regulations administered by RIDEM, as well as in accordance with any federal, state or local laws.

16. The 1992 Consent Agreement provided that it remained in full force and effect until completion of Site remediation, after which time RIDEM would cause a Release to be executed and recorded in the Land Evidence Records of the Town of Tiverton, Rhode Island.

17. In response to the Underlying Environmental Action and as a result of RIDEM's claim that Charter's operations caused property damage or injury to or destruction of third-party property, e.g., the "waters" of Rhode Island, Charter incurred millions of dollars in damages, liabilities, losses, costs and expenses because of such alleged property damage or injury to or

destruction of third-party property and/or to defend itself against and investigate RIDEM's claim of such alleged property damage or injury to or destruction of third-party property.

18. On May 30, 2002, RIDEM sent a Letter of Compliance ("LOC") to Charter stating, among other things, that the Site was in compliance with the March 1992 Consent Agreement, and that RIDEM had recorded the LOC in the Land Evidence Records of the Town of Tiverton, Rhode Island, thereby concluding the Underlying Environmental Action.

**THE INSURANCE POLICIES**

19. Upon information and belief, in 1996, Travelers purchased the property and casualty operations of Aetna Casualty and Surety Company ("Aetna"); thus, Travelers succeeded to the rights and obligations set forth in comprehensive general liability insurance policies sold and issued by Aetna.

20. For at least the period from July 1, 1963 through October 1, 1985, Aetna, in consideration of premiums paid by or on behalf of Northeast, sold and issued comprehensive general liability policies to Northeast that provide either primary, umbrella or excess insurance coverage. Aetna may have issued other relevant policies insuring Northeast, Pacific or Charter during relevant times.

21. As Northeast's successor-in-interest, Charter possessed the relevant rights under the Policies.

22. Attachment A hereto and incorporated by reference herein identifies the applicable, known insurance policies sold and issued by Aetna to Northeast (referred to collectively as the "Policies").

23. Upon information and belief, most or all of the relevant language contained in the Policies is based upon standardized insurance policy language drafted by one or more insurance

industry trade organizations, such as the National Bureau of Casualty Underwriters ("NBCU"), the Mutual Insurance Rating Bureau ("MIRB"), the Insurance Rating Board ("IRB"), and the Insurance Services Organization ("ISO").

24. Upon information and belief, Aetna was a member of one or more of the insurance industry trade organizations identified above.

25. The comprehensive general liability insurance provided by the Policies was developed and marketed by the insurance industry as an insurance product that would provide policyholders with broad protection against all forms of legal liability, subject to a limited number of expressly stated exclusions.

26. Upon information and belief, the insurance industry, including the NBCU, the MIRB, the IRB, the ISO, and Aetna directly and/or through agents or representatives, made representations to the policyholder public, to insurance regulatory bodies and in internal documents that the relevant policy language contained in the Policies covers environmental claims against policyholders, such as the claim made by RIDEM against Charter.

27. By issuing the Policies, Aetna was obligated, among other things, to indemnify Charter in connection with damages, liabilities, losses, costs and expenses incurred by Charter as a result of claims made by third parties, such as the Underlying Environmental Action, within the terms of the Policies.

28. By issuing the Policies, Aetna also undertook to provide Charter with a defense and/or reimburse defense costs with respect to claims made by third parties, such as the Underlying Environmental Action, within the terms of the Policies.

## AETNA'S REFUSAL TO PROVIDE COVERAGE

29. On March 5, 1986, Charter notified Aetna of the Underlying Environmental Action and demanded coverage under the Policies.

30. On April 4, 1986, Charter further notified Aetna that RIDEM's claim could implicate umbrella and/or excess coverage provided by Aetna and demanded coverage under the Policies.

31. Throughout the late 1980s and into the 1990s, Charter and Aetna corresponded and exchanged information related to RIDEM's claim and the proposed investigation into and remediation of alleged third-party property damage allegedly caused by Charter's Site operations. Charter also continued to demand coverage under the Policies.

32. On December 31, 1991 Aetna issued correspondence declining and refusing to involve itself in the defense or resolution of the Underlying Environmental Action.

33. As a result of the position taken by Aetna, Charter undertook to defend and address the Underlying Environmental Action on its own, without the involvement of Aetna. Charter did so all the way through the conclusion of the Underlying Environmental Action in 2002.

34. Charter subsequently demanded that Travelers reimburse it for the defense and indemnity expenses it had incurred in defending the Underlying Environmental Action and remediating the Site. Travelers responded that it needed documentation showing how Charter is entitled to benefits of insurance policies issued to Northeast. Charter provided the requested information. Travelers did not respond to the information provided by Charter or Charter's demand for coverage.

35. Charter was forced to incur millions of dollars of damages, liabilities, losses, costs and expenses in response to the Underlying Environmental Action without defense and/or indemnity from Aetna and/or Travelers, as had been promised under the Policies.

**COUNT I**
**(Breach of Contract)**

36. Charter incorporates the allegations of paragraphs 1-35, as if set forth in full herein.

37. Charter's claim is within the scope of the coverage afforded by the Policies.

38. Pursuant to the Policies, Travelers, as Aetna's successor-in-interest, is obligated under the Policies to defend and indemnify Charter with respect to the Underlying Environmental Action.

39. Charter incurred damages, liabilities, losses, costs and expenses because of the Underlying Environmental Action.

40. Charter provided Aetna with notice of the Underlying Environmental Action and demanded coverage under the Policies for the damages, liabilities, losses, costs and expenses incurred because of the Underlying Environmental Action.

41. All conditions precedent to recovery under the Policies have been satisfied or waived.

42. Aetna wrongfully failed to participate in defense and remediation activities related to the Underlying Environmental Action and Aetna and Travelers wrongfully failed to reimburse Charter for its defense and indemnity costs.

43. Thus, Aetna and Travelers breached their obligations under the Policies by failing to defend and indemnify Charter with respect to the Underlying Environmental Action and failing to reimburse Charter.

44. As a result of this breach, Charter has suffered damages, in an amount yet to be specifically ascertained, for which Travelers is liable, together with costs and disbursements for this action, including, but not limited to, reasonable attorneys' fees and pre-judgment and post-judgment interest.

WHEREFORE, Charter demands judgment in its favor against Travelers:

(a) requiring Travelers to pay for all damages, liabilities, losses, costs and expenses incurred by Charter because of the Underlying Environmental Action;

(b) enjoining Travelers from refusing to pay for all damages, liabilities, losses, costs and expenses incurred by Charter because of the Underlying Environmental Action;

(c) granting Charter specific performance of the Policies;

(d) for money damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest;

(e) for costs of suit;

(f) for reasonable attorneys' fees; and

(g) for such other and further relief, including any appropriate equitable relief, as this Court may deem just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

CHARTER INTERNATIONAL OIL COMPANY

By its attorneys,

Gerald J. Petros (AMP)

Gerald J. Petros (#2931)
Anna M. Piazza (#7206)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Phone: (401) 274-2000
Fax: (401) 277-9600

Neal R. Brendel
James R. Segerdahl
Brian F. Saulnier
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501

Dated: June 15, 2006.

723989V1