**IN THE DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHARTER INTERNATIONAL OIL COMPANY, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CIVIL ACTION NO. 06-324 S |
| TRAVELERS CASUALTY AND SURETY COMPANY (f/k/a AETNA CASUALTY AND SURETY COMPANY), | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Charter International Oil Company, hereby objects to the motion to dismiss filed by Defendant, Travelers Casualty and Surety Company. In support of its objection, Charter relies on its brief in opposition submitted herewith.

CHARTER INTERNATIONAL OIL CORPORATION

Respectfully submitted by its attorneys:

/s/ Gerald J. Petros
Gerald J. Petros (#2931)
Anna M. Piazza (#7206)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Phone: (401) 274-2000
Fax: (401) 277-9600
gpetros@haslaw.com
apiazza@haslaw.com

Neal R. Brendel (admitted pro hac vice)
James R. Segerdahl (admitted pro hac vice)
Brian F. Saulnier (admitted pro hac vice)
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
nbrendel@klng.com
jsegerdahl@klng.com
bsaulnier@klng.com

Dated: September 18, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2006, a copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros (#2931)

749192v1

**IN THE DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHARTER INTERNATIONAL OIL COMPANY,<br><br>Plaintiff,<br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY (f/k/a AETNA CASUALTY AND SURETY COMPANY),<br><br>Defendant. | ) | CIVIL ACTION NO. 06-324 S |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Acknowledging the absolute dearth of Rhode Island law addressing when a cause of action on an insurance contract accrues, Defendant Travelers nonetheless asks this Court to dismiss Plaintiff Charter's well-pled complaint by adopting a view on the statute of limitations inconsistent with the public policy of the state of Rhode Island and inconsistent with the overwhelming authority holding that the statute of limitations for an environmental insurance claim begins to run only when liability is absolutely fixed by final judgment. Recognizing the weakness of its position, Travelers then invents a phantom choice-of-law dilemma, claiming that Massachusetts law should apply, even though not a single connection to Massachusetts is evident from the face of the complaint and even though under well-established Rhode Island choice-of-law rules, the statute of limitations is deemed procedural and governed by the law of the forum. Resolving a statute-of-limitations claim on a motion to dismiss is, of course, disfavored. But even if this Court decides the issue at this premature stage, sound case law from a number of other jurisdictions and the sensible public policy of this state demonstrate that Charter's cause of action accrued in 2002, well within the limitations period.

**FACTUAL BACKGROUND**

As detailed in the complaint, this is an environmental insurance coverage action for breach of insurance contracts brought by Charter, a Texas corporation, against Travelers, a Connecticut corporation. (Compl. ¶¶ 2, 4-6.) The underlying environmental action concerned 106 acres of property Charter owned in Tiverton, Rhode Island. (*Id*. at ¶ 10.) Over the course of many decades and at various times, Texaco, the United States Department of Defense, and Charter's predecessor (Northeast Petroleum Corporation, collectively "Charter") utilized the Tiverton site for petroleum storage and distribution. (*Id*. at ¶ 11.) In the mid-1980s, the Rhode Island Department of Environmental Management ("RIDEM") initiated proceedings against Charter, which then owned the Tiverton Site, under its statutory authority to require comprehensive testing, monitoring, and remediation of the site. (*Id*. at ¶¶ 13-15.) Charter defended itself against these claims and eventually engaged in an extensive environmental investigation and remediation of the property, incurring millions of dollars in expenses. (*Id*. at ¶ 16-17.) In 2002, the action was finally resolved, and RIDEM sent Charter a Letter of Compliance. (*Id*. at ¶ 18.)

As RIDEM asserted Charter's alleged liability, Charter corresponded with Travelers and its predecessor (Aetna Casualty and Surety Company, collectively "Travelers"), seeking coverage for its defense and the environmental investigation and remediation costs it was incurring. (*Id*. at ¶¶ 29-32.) Under the comprehensive general liability insurance policies Charter had purchased from Travelers, Travelers was obligated to pay defense costs and fully indemnify Charter in connection with its environmental liabilities and losses, including those incurred as a result of the Tiverton investigation and clean-up action. (*Id*. at ¶¶ 27-28.) Rather than acknowledging its obligations to Charter and rightfully paying under the policies, Travelers

opted to equivocate, eventually failing to provide coverage and forcing Charter to defend the costly environmental action alone and bear all of the clean-up costs. (*Id*. at ¶ 33-35.) Charter more recently requested indemnification and defense costs from Travelers; this request again fell on deaf ears. (*Id*. at ¶ 34.)

As a result of Travelers's failure to abide by the terms of the insurance policies, Charter brought an action in 2006 in Rhode Island Superior Court for breach of the policies, alleging breaches of Travelers's duties to defend and indemnify with respect to the Tiverton clean-up action. (*Id*. at ¶¶ 42-43.) Travelers removed the case to this Court and has now moved to dismiss the complaint on statute-of-limitations grounds alone.

**ARGUMENT**

In considering a motion to dismiss, all well-pled facts must be accepted as true and all reasonable inferences construed in favor of the plaintiff. *Toledo v. Sanchez*, 454 F.3d 24, 30 (1st Cir. 2006). The defendant's burden on such a motion is heavy—a complaint can be dismissed only when "it is apparent beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Stanton v. Metro Corp*., 438 F.3d 119, 123-24 (1st Cir. 2006) (all internals omitted). Motions to dismiss based on the statute of limitations, as the one here, are strongly disfavored given the factual nature of the inquiry. *See Blackstone Realty LLC v. F.D.I.C*., 244 F.3d 193, 197 (1st Cir. 2001) (allowing parties to raise affirmative defenses on a motion to dismiss, but mandating that the "facts establishing the defense must be clear on the face of the plaintiff's pleadings") (all internals omitted). In this case, that disfavor is heightened by the lack of any Rhode Island law supporting Travelers's position. *See, e.g., Hogan v. PMI Mortg. Ins. Co*., No. C-053851-PJH, 2006 WL 1310461, at *8 (N.D. Cal. May 12,

2006) (denying motion to dismiss due to dearth of legal authority on issue); *Stromsen v. Aluma Shield Indus., Inc.*, No. 89C5036, 1993 WL 34727, at *12 (N.D. Ill. Feb. 8, 1993) (same).

In light of these well-settled standards, this Court should deny Travelers's motion to dismiss as premature. However, if this Court elects to reach the merits of the limitations issue at this early stage, Charter's complaint is not time barred. Based on cases from a number of other jurisdictions, Rhode Island public policy, and language in analogous Rhode Island cases, the ten-year limitations period, *see* R.I. Gen. Laws § 9-1-13(a), commenced to run only in 2002 when RIDEM sent Charter the Letter of Compliance finally fixing its liability and concluding the underlying action. (Compl. ¶ 18.) Thus, the statute would not bar this claim until 2012.

## I. The Statute of Limitations Commenced to Run in 2002 Upon Final Resolution of the Underlying Action

As Travelers acknowledges in its brief, Rhode Island courts have not addressed when the statute of limitations begins to run for a breach-of-contract action in the insurance context, and more particularly, in the environmental insurance context. Travelers Br. at 6. Despite the absence of any Rhode Island authority on the issue, Travelers insists that an insurance action accrues for limitations purposes when an insurer denies the claim. Rhode Island courts, however, have never made any such determination.

In fact, courts from other jurisdictions considering this same issue have reached the very opposite conclusion. A majority of courts have held that in actions alleging breach of the duty to indemnify and breach of the duty to defend, the statute of limitations commences only when liability is fixed by a final judgment or settlement. *See, e.g., Dutton-Lainson Co. v. Continental Ins. Co.*, 716 N.W. 2d. 87, 100-02 (Neb. 2006) (adopting "clear majority view" that duty-to-defend claim accrues at final judgment and indemnity claim at final payment by policyholder in underlying action); *John Beaudette, Inc. v. Sentry Ins. A Mutual Co.*, 94 F. Supp. 2d 77, 103 (D.

Mass. 1999) (holding that limitations period for duty-to-indemnify claim accrues upon "issuance of a judgment, settlement or final resolution wherein the insured becomes legally obligated to pay damages"); *Oliver B. Cannon & Son, Inc. v. Fidelity & Casualty Co. of N.Y.*, 484 F. Supp. 1375, 1389-90 (D. Del. 1980) (finding indemnity claim accrues when "liability becomes fixed . . . upon the entry of a final judgment" and defense claim accrues "only when full damages can be determined and recovered"); *Luppino v. Vigilant Ins. Co*., 677 A.2d 617, 619, 622 (Md. Ct. App. 1996) (finding breaches of both duties accrue when liability becomes fixed and all damages ascertainable); *Eaton Hydraulics Inc. v. Continental Casualty Co*., 132 Cal. App. 4th 966, 973 (Cal. Ct. App. 2005) (holding limitations period for duty-to-defend claim accrues upon insurer's refusal to defend, but is tolled until final judgment in the underlying action); *see also Pardee v. Consumer Portfolio Servs., Inc.*, 344 F. Supp. 2d 823, 836 (D.R.I. 2004) (compiling cases and holding that for contractual indemnity claim, the "general rule regarding indemnity" under Rhode Island law "is that no claim arises as such until the indemnitee's liability is fixed either by entry of judgment holding the indemnitee liable or by the settlement of the underlying claim by the indemnitee on the belief that he is liable").

The rationale for using the date of RIDEM's Letter of Compliance, where liability was fixed, as the accrual date makes perfect sense, particularly in light of the facts of this case. For instance, if the statute began to run before then (such as at the date of the insurer's decision not to participate in the defense of the underlying claim, as Travelers contends), then a policyholder would be confronted with the unfair scenario of litigating two actions at once—the underlying action against an environmental agency and an action against its own insurer, which is supposed to be its ally in defending the environmental action. Requiring the litigation of such a two-front war at the risk of jeopardizing all coverage would be fundamentally inconsistent with the broad

protection comprehensive general liability policies are expected to provide. *See, e.g., Pacific Ins. Co. v. Catholic Bishop of Spokane*, No. CV-05-0075-JLQ, 2006 WL 1148673, at *11 (E.D. Wash. Apr. 24, 2006) (interpreting "comprehensive general liability policies in a fashion consistent with their label" and finding that "[b]ecause comprehensive general liability policies are marketed by insurers as 'comprehensive' in their scope, such a policy should be strictly construed when the insurer attempts to constrict its coverage").

In many cases, it may be simply cost-prohibitive to expect an insured to pursue both litigations at once. The action against the insurer would involve coverage for defense costs and possible indemnity payments that would be uncertain in amount and ongoing, thus, among other things, making any meaningful cost-benefit analysis as to whether to pursue or settle the coverage action virtually impossible. At the end of the day, assuming the insurer has in fact breached its duty to defend and indemnify its insured (as must be assumed in this motion-to-dismiss context), under the rule proposed by Travelers, the insurer would have every incentive to breach its obligation as early as possible with respect to any long-term underlying environmental action, regardless of the merits, as such an early breach might well make it impossible as a practical matter for its insured to ever recover on a valid claim.

Moreover, if a two-front war is required, insurers may well, as they almost always do, raise defenses in the coverage action (for example, a defense based on the alleged intentional nature of releases) that could be harmful to insureds in the underlying environmental actions. Insureds buy liability insurance to protect against liability—not to compound it. Yet requiring a coverage suit while the underlying action is pending would risk exactly that. As the courts have repeatedly recognized, there are no good policy reasons to adopt the rule advocated by Travelers in a case such as this one. *See Aetna Casualty & Surety Co. v. Kelly*, 889 F. Supp. 535, 541-42

(D.R.I. 1995) (stating that "[t]he principal purpose of liability insurance is to protect policy holders from claims asserted by third parties based on matters covered by the policy. By taking action that makes a policy holder liable for such claims, an insurer would subvert the purpose of the policy and violate one of the most fundamental duties it owes to its insured"); *Lambert v. Commonwealth Land Title Ins. Co*., 811 P.2d 737, 742 (Cal. 1991) (finding protection of insurance "would ring resoundingly hollow were the holder compelled to simultaneously enforce rights under the policy and defend a costly and potentially devastating claim against the subject property").[1]

Further, courts have adopted the date of final judgment or settlement as the accrual date as a matter of common sense and judicial efficiency. That is, if a policyholder had to pursue damages from an insurer before liability became fixed in the underlying action, the policyholder could end up recovering first from the insurer in the coverage action, but potentially not paying anything in the underlying action or paying less than the amount recovered in the contract action against the insurer. *See Oliver B. Cannon and Son, Inc.*, 484 F. Supp. 1375 at 1389 ("If the

[1] Travelers cannot argue that there is some unreasonable unfairness in a holding that causes of action for breach of the duties to indemnify and defend accrue only upon completion of the underlying action. Insurers routinely include in their policies so-called "No Action" clauses, which provide, in relevant part: "No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company." *See, e.g., Interface Flooring Systems, Inc. v. Aetna Cas. & Sur. Co*., No. X02CV930151595S, 2001 WL 238148, at *9 (Conn. Super. Ct. Feb. 16, 2001) (citing no-action clause in Aetna policy). Although the policies are not yet part of the record before this Court in light of the posture of this motion, when they become part of the record, the Court will find this clause in the policies at issue. For present purposes, however, it is sufficient to note that this standard language, as quoted above, undercuts any argument an insurer, like Travelers, can make that accrual at settlement or judgment of the underlying action is somehow unfair or unreasonable. Insurers, in fact, require no-action clauses in their policies to suit their interests; they cannot disavow them when they do not.

defendant's position were adopted, [the policyholder] might have recovered for damages, for 'liability,' which it ultimately did not have to pay."). Recognizing this potential dilemma, the United States Court for the District of Rhode Island granted a motion to stay an indemnification action for legal costs incurred in pending underlying actions until completion of the underlying actions. *Pardee*, 344 F. Supp. 2d at 836. In so holding, the Court relied upon Rhode Island's "general rule regarding indemnity" that "no claim arises. . . until the indemnitee's liability is fixed either by entry of judgment holding the indemnitee liable or by the settlement of the underlying claim." *Id.* The Court also reasoned that "the final amount, if any, of the indemnification is almost certain to be unknown until the. . . [underlying] cases are concluded." *Id.* at 837. Additionally, using the conclusion of the underlying action as the limitations trigger affords an insurer the flexibility to change its mind or to react to new developments in an underlying action—in other words, giving it the option of easily rescinding an earlier (perhaps wrongful) denial of coverage. *See John Beaudette, Inc.*, 94 F. Supp. 2d at 103 ("Moreover, up until entry of a judgment, settlement or final resolution against the insured, the insurer may rescind an earlier denial of coverage and agree to pay the judgment."). The elimination of this flexibility is contrary to sound public policy—it would incentivize an insurer to stand by an early denial of coverage no matter what happens in the underlying action in hopes that the statute of limitations may moot any earlier mistake and prevent any realistic exposure on an otherwise valid claim.

Rhode Island courts have not had the opportunity to consider this issue. Nonetheless, there is strong evidence—in both Rhode Island public policy and related Rhode Island state court decisions—that, if faced with this issue, Rhode Island law would support the majority rule that

the limitations period commences upon final judgment, settlement, or, as in this case, issuance of a Letter of Compliance confirming the end of the underlying action.

In addition to the points noted above, which pertain particularly to the insurance context, the public policy rationale for this rule in the environmental context is strong. For example, one of the express statutory purposes behind the Rhode Island Industrial Property Remediation and Refuse Act is to assure that "cooperative clean-up actions are encouraged to the greatest extent possible." R.I. Gen. Laws § 23-19.14-2. A rule triggering the statute of limitations upon denial of the claim before remediation would frustrate this statutory purpose by discouraging corporations, like Charter, from promptly remediating their property in a cooperative resolution of the government's claims. That is, if a policyholder were faced with a two-front war of litigating with its insurer and negotiating with RIDEM, it may prioritize resolving its insurance coverage dispute over productive early discussions with RIDEM and active remediation of the property. As courts have noted, an earlier accrual date would only "encourage or reward recalcitrance on the part of liable parties," thereby frustrating the General Assembly's intent. *See Hays v. Mobil Oil. Corp*., 736 F. Supp. 387, 397 (D. Mass. 1990) (rejecting date of discovery as accrual date and finding date of DEM release letter as triggering statute of limitations, since "barring plaintiff's action. . . because he freely complied with DEQE's requests, but did not sue until receiving a final release letter, would punish the plaintiff for his voluntary cooperation and frustrate the statute's purpose 'to compel the prompt and efficient cleanup of hazardous material'"), *partially reversed on other grounds by Hays v. Mobil Oil. Corp*., 930 F.2d 96 (1st Cir. 1991); *see also Textron, Inc. v. Aetna Casualty and Surety Company*, 754 A.2d 742, 754 (R.I. 2000) (interpreting pollution-exclusion clause to further public policy of "reward[ing] manufacturers with coverage if they undertake a good-faith effort to dispose of contaminants

safely yet suffer an unexpected discharge despite these efforts, thus providing them with an incentive to arrange for the disposal of toxic waste with great care").

Moreover, case law suggests that Rhode Island courts would indeed adopt a final judgment accrual date in the context of continuous environmental remediation. For instance, in *Palazzolo v. Coastal Res. Management Council of R.I.,* No. WC NO. 88-297, 1988 WL 1017232 (R.I. Super. Ct. Oct. 31, 1988), the Superior Court was confronted with an inverse condemnation/takings case, where the plaintiff property owner's land had, due to certain government action, slowly flooded over 27 years. The court recognized that the "legal concept of when a cause of action accrues" was "difficult" given the continuous nature of the taking. *Id*. at *3. Thus, the court declined to apply Rhode Island's ten-year limitations period and denied the defendants' motion to dismiss based on the statute of limitations (allowing the defendants to raise the argument at trial once the facts were further developed). In its discussion, the court quoted a U.S. Supreme Court case that discussed the uncertainty of damages due to a continuous taking and found that the law should postpone suit until the condition becomes "stabilized" and "until the consequences of inundation have so manifested themselves that a final account may be struck." *Id*. (quoting *United States v. Dickinson*, 331 U.S. 745 (1947)).

Much like the taking was continuous in *Palazzolo*, the environmental action here was continuous and thus should not have triggered the statute of limitations until the situation was finally "stabilized" and the final accounts struck in 2002 with RIDEM's Letter of Compliance. *Palazzolo* thus demonstrates two important points—(1) Rhode Island courts accept a date of final judgment or stabilization in the context of a continuous environmental condition; and (2) in such a context, Rhode Island courts will not dismiss a complaint for being time barred on a motion to dismiss. Applying these principles here, it is clear that this Court should find the limitations

period to accrue only when liability was finally fixed, which, on the basis of the pleadings, occurred in this case no sooner than 2002.

The cases Travelers cites in its briefs do not prove to the contrary. Travelers cites two Rhode Island Supreme Court cases for the proposition that the limitations period runs from the "date of loss." Travelers Br. at 6 n.3 (citing *Hay v. Pawtucket Mut. Ins. Co*., 824 A.2d 458 (R.I. 2003) and *DiIorio v. Abington Mut. Fire. Ins. Co*., 402 A.2d 745 (R.I. 1979)). Those cases, however, dealt with the statutory suit-limitation requirement only applicable to the standard form fire insurance policies. *See* R.I. Gen. Laws § 27-5-3; *see also DiIorio*, 402 A.2d at 747. That specific suit-limitation provision expressly states that a suit must be brought within twelve months "after inception of the loss." R.I. Gen. Laws § 27-5-3. That statute does not apply to the third-party liability insurance policies at issue in this case. The general ten-year limitations statute, which is the only limitations statute governing this dispute, has no similar language marking the accrual date as the inception of the loss.

Travelers also cites two Rhode Island federal district court decisions—including one by this Court—that are equally inapposite. Travelers Br. at 6-7 (citing *Adams v. Town of Burrillville*, 249 F. Supp. 2d 151 (D.R.I. 2003) (Smith, J.) and *Gail Frances, Inc. v. Alaska Diesel Elec., Inc*., 62 F. Supp. 2d 511, 515 (D.R.I. 1999)). The most obvious distinction between those cases and the present case is that neither of those cases dealt with a breach of an *insurance* contract, which is recognized by the courts as a unique type of agreement with distinct rules of interpretation and enforcement. *See Lambert*, 811 P.2d at 742 ("As we have observed on other occasions, the contract of insurance is unique in that the purchaser seeks not commercial advantage, but rather peace of mind and security in the event of unforeseen calamity."). In fact, *Adams* did not even deal with a breach of an ordinary contract, but instead a tort claim. 249 F.

Supp. 2d at 154-55. In that case, this Court correctly rejected the continuing violation theory of extending the limitations period in the tort context. *Id.* at 155. ("Rhode Island has not fully recognized the continuing violation doctrine *in the tort context*.") (emphasis added). That theory, however, is fundamentally a tort concept and has no applicability to contract law, particularly insurance contract law. *See Dziura v. United States*, 168 F.3d 581, 583 (1st Cir. 1999) ("'Continuing violation' jurisprudence is drawn from tort law."); *Dutton-Lainson Co.*, 716 N.W. 2d. at 100 (rejecting insurer's focus on "continuing duty cases," finding them inapposite and duty-to-defend claim unique). Nothing in that decision or Rhode Island case law calls for extending the continuing violation doctrine to the contract setting, especially the environmental insurance coverage setting where strong public policy reasons counsel against it.

The "clear majority view" is that the limitations period for breach of an insurance contract does not commence until judgment, settlement, or when liability is finally fixed. *See Dutton-Lainson Co.*, 716 N.W. 2d. at 101. In this case, that date indisputably was 2002 when the underlying action concluded. In the absence of any Rhode Island law on this point, this Court should apply the majority view, which is fully supported by Rhode Island public policy, sound reasoning, and the decisions of many courts that have thoughtfully considered the issue.

## II. Travelers's Attempt to Manufacture a Conflict with Massachusetts Law Lacks Both Factual Support and Legal Significance

Recognizing that it cannot win under Rhode Island law, Travelers invents a conflict of law, without citation to any authority and devoid of any analysis, pointing to Massachusetts law as possibly controlling in this case. Nothing, however, from the face of the complaint signals that Massachusetts has any relationship to this dispute. Neither of the parties resides in Massachusetts (Charter is a Texas corporation and Travelers a Connecticut one). The subject property is in Rhode Island. The insurance contract covered property in Rhode Island. The

dispute arises due to pollution occurring in Rhode Island and an environmental enforcement action by the Rhode Island DEM. There is no basis in the record for this Court's consideration of Massachusetts law.

Further, it is not clear why Travelers even makes a choice-of-law argument. Regardless of any conflict of law between Massachusetts and Rhode Island, this Court would apply Rhode Island statute-of-limitations law. Rhode Island choice-of-law rules consider the statute of limitations as a "procedural" rule and thus subject to the law of the forum—Rhode Island in this case. *Staples v. Waite*, 76 A. 353, 354 (R.I. 1910) (holding that "no rule is better settled than that the statute of limitations of the state in which the action is brought is to prevail, and not that of the state in which the contract was made"); *Byron v. Great Am. Indemnity Co*., 173 A. 546, 547 (R.I. 1934) (finding that "an action is controlled by the statute of limitations of the state where the action is commenced, and not by the statute of the state where the cause of action accrued," but holding that insurance policy containing specific suit-limitation provision controlled); *Pinkham v. Collyer Insulated Wire Co., Inc.*, Civ. A. No. 92-0426B, 1994 WL 385375, at *4 (D.R.I. Mar. 22, 1994) (finding statute of limitations as being "procedural" under Rhode Island law); *accord Reinhard v. Textron, Inc*., 516 P.2d 1325, 1326 (Okla. 1973) (interpreting Rhode Island law as holding that statutes of limitation are procedural and forum law controls).[2]

[2] Two Rhode Island district courts have reached the opposite conclusion, finding statutes of limitation to be substantive in analyzing a conflict in laws. *See Waters v. Walt Disney Co*., 237 F. Supp. 2d 162, 165 (D.R.I. 2002); *Montaup Elec. Co. v. Ohio Brass Corp*., 561 F. Supp. 740, 744 (D.R.I. 1983). Those decisions, however, Charter respectfully contends, were wrongly decided. In those cases, both courts relied on case law holding that statutes of limitation are substantive for *Erie* purposes. *See Waters*, 237 F. Supp. 2d at 165-66 (relying on *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945)); *Montaup*, 561 F. Supp. at 744 (same); *see also Pinkham*, 1994 WL 385375, at *4-5 (criticizing *Montaup* for this reason, as well as for its misreading of Rhode Island law). The First Circuit, however, has warned that what may be substantive or procedural for *Erie*, may not be for conflict-of-law purposes. *See Servicios Comerciales Andinos, S.A. v. Gen. Elec. Del Caribe, Inc.*, 145 F.3d 463, 479 (1st Cir. 1998)

But even assuming Massachusetts law were to apply, a point with which Charter disagrees, it seems peculiar that Travelers would argue that both Massachusetts and Rhode Island law are the same on the issue of when an insurance action accrues for statute-of-limitations purposes. After all, as Travelers readily admits, there is no Rhode Island law on the issue, and thus it is impossible to determine whether a conflict would exist between Rhode Island and Massachusetts on the statute-of-limitations question. Further, contrary to Travelers's claim, Massachusetts law does not uniformly hold that an insurance action accrues on the date of denial of the claim. *See, e.g., Wolverine Ins. Co. v. Tower Iron Works, Inc.*, 370 F.2d 700, 702-03 (1st Cir. 1966) (holding that under Massachusetts law, common-law indemnity action accrues at final settlement); *Hays*, 736 F. Supp. 387, 397 (holding that under Massachusetts law, date of DEM release letter was accrual date for action for environmental reimbursement), *partially reversed on other grounds by Hays v. Mobil Oil. Corp.*, 930 F.2d 96 (1st Cir. 1991); *John Beaudette, Inc.*, 94 F. Supp. 2d at 103 (holding that under Massachusetts law, indemnity claim accrues at final judgment or settlement).[3] Travelers has utterly failed to demonstrate any basis for concluding

---

(citing *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988), and finding that "the U.S. Supreme Court has rejected the notion that there is an equivalence between what is substantive under *Erie* doctrine and what is substantive for purposes of conflict of laws" (all internals omitted)). Under the two-step process of *Servicios*, this Court would apply Rhode Island choice-of-law rules, and, as seen in well-settled precedents like *Staples* and *Byron* above, Rhode Island views statutes of limitation as procedural for conflicts analysis and applies the law of the forum.

[3] The case Travelers's relies on—the unpublished decision of *Travelers Ins. Co. v. Royal Ins. Co.*, No. 04-P-1776, 2006 WL 223854 (Mass. Ct. App. Jan. 30, 2006)—is poor authority to the contrary. The court there, citing *Lumbermens Mut. Cas. Co. v. Y.C.N. Transp. Co*., 705 N.E. 2d 297 (Mass. Ct. App. 1999), found that a breach-of-insurance-contract claim accrues when the insurer denies the claim. *Travelers*, 2006 WL 223854, at *2. The court in *Lumbermens*, however, never decided this issue, instead opting to *assume* the claim accrued at the time of disclaimer by the insurer. 705 N.E. 2d at 301 ("If we assume that the disclaimer violated Lumbermens' contractual obligation, then YCN had until February 27, 1993, to assert its legal claims against Lumbermens arising from the violation."). The issue of accrual in *Lumbermens* was never decided by the court and, in fact, was entirely irrelevant, because the court went on to conclude that the insurer waived any statute-of-limitations defense by partially paying the claim.

that Massachusetts law should apply here; nevertheless, to the extent that the Court believes that Massachusetts law is relevant, under Massachusetts law, an action for indemnity and defense costs accrues at final settlement or judgment.

**CONCLUSION**

For the foregoing reasons, Charter respectfully requests that this Court deny Travelers's motion to dismiss.

CHARTER INTERNATIONAL OIL
CORPORATION

Respectfully submitted by its attorneys:

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Anna M. Piazza (#7206)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Phone: (401) 274-2000
Fax: (401) 277-9600
gpetros@haslaw.com
apiazza@haslaw.com

Neal R. Brendel (admitted pro hac vice)
James R. Segerdahl (admitted pro hac vice)
Brian F. Saulnier (admitted pro hac vice)
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
nbrendel@klng.com
jsegerdahl@klng.com
bsaulnier@klng.com

Dated: September 18, 2006

---

*Id.*; *see also John Beaudette, Inc.*, 94 F. Supp. 2d at 102 n.6 (finding *Lumbermens's* discussion on accrual to be "not necessary to its decision").

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2006, a copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros (#2931)

749196v1