**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CHARTER INTERNATIONAL OIL COMPANY,<br><br>Plaintiff,<br>v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY (f/k/a AETNA CASUALTY AND SURETY COMPANY),<br><br>Defendant. | Civil Action No. 06-324 S |

**REPLY MEMORANDUM IN SUPPORT OF TRAVELERS CASUALTY AND SURETY COMPANY'S MOTION TO DISMISS**

The breach of contract complaint filed by Charter International Oil Company ("Charter") against Travelers Casualty and Surety Company ("Travelers C&S") should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it is time-barred by the statute of limitations. There is no dispute as to the material facts relevant to this motion. Nothing precludes this Court from resolving the purely legal question presented – when does a cause of action for breach of an insurance contract accrue – on the present motion to dismiss. Rhode Island decisions support Travelers C&S's position that Charter's cause of action accrued in 1991, when Travelers C&S is alleged to have breached the insurance contract by denying Charter's claim for defense or indemnity at the Tiverton Site. Upon examination, the case law from other jurisdictions cited by Charter actually supports Travelers C&S's position that Charter's claim is time-barred. Those decisions, properly applied, suggest that Charter's claim accrued in March 1992, when it entered into a consent decree with the Rhode Island Department of Environmental Management

("RIDEM"). Thus, even if this Court follows the authority cited by Charter, Charter's claim is more than four years too late under the generous ten-year Rhode Island statute of limitations, and more than eight years too late under the potentially applicable six-year Massachusetts statute of limitations.

**A. Charter's Opposition Brief Ignores Critical Facts Plead In The Complaint.**

Charter's Opposition Brief ("Opp.") asserts that RIDEM initiated proceedings against it in the mid-1980's and that RIDEM had "statutory authority to require comprehensive testing, monitoring, and remediation of the site." Opp. at 2. Charter then fast-forwards to 2002 when, it asserts, the action was "finally resolved" by RIDEM sending a Letter of Compliance to Charter. *Id.* Charter elides over the most significant intervening allegation in the Complaint:

> In lieu of issuing a Notice of Violation and as part of the ongoing Underlying Environmental Action, RIDEM and Charter, as successor-in-interest to Northeast, entered into a Consent Agreement in March **1992**, which set forth a required Site remediation plan and required, among other things, that Charter remediate the Site and any off-Site contamination resulting from Site-related activities, in accordance with the laws and regulations administered by RIDEM, as well as in accordance with any federal, state or local laws.

Complaint, ¶15 (emphasis added). Charter's Opposition omits that it allegedly incurred "millions of dollars" of cleanup expenses as a result of complying with the March 1992 consent agreement and that its 2002 Letter of Compliance stated that it was in compliance with the March 1992 consent agreement. *Id.* ¶¶17-18. Thus, contrary to Charter's current theory, its legal obligation to spend money and to clean up the Tiverton Site in accordance with a remediation plan negotiated with RIDEM was allegedly fixed and final in March 1992.

**B. Additional Factual Development Is Not Necessary To Resolve The Question of When Charter's Cause of Action Accrued.**

Charter asserts that the resolution of a statute of limitations defense on a motion to dismiss is "strongly disfavored." Opp. at 3. Not in a case like this. When, as here, the dates

included in the Complaint demonstrate that the limitations period is exceeded, courts routinely grant motions to dismiss on statute of limitations grounds. *See LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998) (affirming dismissal of time-barred contract claim and finding that doctrine of equitable estoppel did not apply to toll insurance policy's statute of limitations); *see also Epstein v. C.R. Bard, Inc.*, – F.3d –, 2006 WL 2458020, at 4 (1st Cir. Aug. 25, 2006) (affirming dismissal of complaint on statute of limitations grounds when issue turned on legal significance of letter discussed in complaint); *Edes v. Verizon Communications, Inc.*, 417 F.3d 133, 139 (1st Cir. 2005) (affirming dismissal of time-barred ERISA claim and finding that statute of limitations was not tolled); *Jorge v. Rumsfeld*, 404 F.3d 556, 561-63 (1st Cir. 2005) (affirming dismissal of time-barred ADEA claim based on analysis of when cause of action accrued). As Charter's Opposition makes clear, there is no factual dispute between the parties as to the historical facts relevant to the statute of limitations defense. The only issue for this Court to resolve is the purely legal question of when Charter's cause of action accrued. Further, when additional factual information is not required to determine when a cause of action accrued, the absence of directly controlling Rhode Island state court case law is immaterial. The cases cited by Charter offer nothing to the contrary. *See* Opp. at 3-4.

**C. Rhode Island Decisions Do Not Support Charter's Position That The Statute of Limitations Did Not Begin To Run Until 2002.**

The Rhode Island decisions cited in Travelers C&S's opening brief suggest that, if faced with the question, the Rhode Island Supreme Court would rule that an action for breach of an insurance contract accrues at the time the insurer denies coverage rather than at any other date. See *Adams v. Town of Burrillville*, 249 F. Supp. 2d 151, 152 (D.R.I. 2003) (Smith, J.); *Gail Frances, Inc. v. Alaska Diesel Electric, Inc.*, 62 F. Supp. 2d 511, 515 (D.R.I. 1999). Charter attempts to dismiss those cases on grounds that they do not deal with the accrual of a cause of

action for breach of an insurance contract. *See* Opp. at 11. Because Rhode Island courts have not expressly addressed the accrual of a cause of action for breach of an insurance contract, this Court must necessarily rely on analogous cases such as *Adams* and *Gail Frances*. Charter's argument proves too much, as Charter itself relies on numerous cases outside of the insurance contract context as support for its arguments. *See* Opp. at 8-10, 14. The only other basis on which Charter attempts to distinguish either case is its assertion that the rule in *Adams* depends upon Rhode Island's rejection of the continuing violation theory of extending tort statutes of limitations. *See* Opp. at 12. Charter errs. In *Adams*, the court clearly found that the plaintiffs' injuries "emanate[d] from" the town's denial of health benefits and distinguished between that denial as the cause of plaintiffs' injury and the continuing consequences of that denial; *Adams* found that the continuing violation theory would not apply in these circumstances even if it were accepted in Rhode Island. *Id.* at 154-55. Charter's arguments about whether the continuing violation doctrine should be extended to environmental insurance cases is thus beside the point.

Charter grasps at straws in contending that an unpublished Rhode Island case involving the accrual of a Fifth Amendment cause of action for inverse condemnation is relevant. *See* Opp. at 10 (citing *Palazzolo v. Coastal Resource Mgm't Council of R.I.*, No. 88-297, 1988 WL 1017232 (R.I. Super. Ct. Oct. 31, 1988)). *Palazzolo* involved a landowner's claim that his property had been, and was being, turned from dry land into a swamp by the government's actions. *See id.* at *3. After concluding that the Rhode Island ten-year statute of limitations applied and that the statute began to run "when evidence of injury resulting from the alleged wrongful acts was sufficiently significant to alert the plaintiff to the wrongful acts," the court found that it could not determine precisely when the cause of action accrued given the gradual nature of the alleged flooding and the posture of the case at the motion to dismiss phase. *Id.* at

*3, 4. This holding – that more facts were needed to determine when the flooding was significant enough to alert the landowner to his claim -- has no bearing on Charter's claim against Travelers C&S. Here, Charter clearly knew it had a claim against Travelers C&S both when Travelers C&S refused to provide coverage for remediation at the Tiverton Site and when Charter then entered into a consent decree that, it alleges, obligated it to perform such remediation. The nature of Charter's claim, unlike that of the flooded landowner, was then fixed, and needed no further time to "stabilize."

**D. Even If This Court Follows The Out-of-State Cases Cited By Charter, Charter's Complaint Is Still Time Barred.**

Charter urges this Court to follow a number of out-of-state decisions, which it characterizes as setting forth the majority rule that claims for breach of both an insurance policy's duty to defend and its duty to indemnify accrue "when liability is fixed by final judgment or settlement." Opp. at 4. Charter's analysis is flawed in two significant respects. First, the actual holdings of the decisions it cites compel the conclusion that Charter's claim is time barred. Second, the decisions from other jurisdictions are not nearly as simple, nor as uniform, as Charter suggests.

The first, and most recent, case Charter cites is *Dutton-Lainson Co. v. Continental Ins. Co.*, 716 N.W.2d 87 (Neb. 2006). *Dutton* held that an insured's cause of action for an insurer's breach of an insurance policy's duty to indemnify accrued when "the insured bec[ame] legally obligated to pay the damages." *Id.* at 100. Dutton [the insured] became so obligated, and the statute of limitations began to run, when it entered into a consent agreement with the EPA that obligated it to clean up environmental contamination at a number of locations. *See id.* at 93-94, 100. *Dutton* also held that a cause of action for breach of an insurance policy's duty to defend

accrued when "the underlying action is resolved against the insured" because the duty to defend is a continuing obligation while that litigation is ongoing. *Id.* at 101-02.

Applying *Dutton* here means that Charter's claim, which asserts that Travelers C&S breached both the duties to indemnify and defend, is clearly time barred. *See* Complaint, ¶43. First, Charter asserts that, like Dutton, it became legally obligated to pay for environmental cleanup when it entered into a consent decree with the relevant environmental agency in March 1992. *See* Complaint, ¶15. Similarly, Charter's claim for breach of the duty to defend accrued when RIDEM's demand that Charter conduct testing, investigation and cleanup at the Tiverton Site was resolved by the March 1992 consent decree. *See id.* ¶¶13, 15. From that point in time until its cleanup was certified as complete in 2002, Charter was merely implementing the remedy to which it had agreed. Under either the ten-year Rhode Island statute of limitations or the six-year Massachusetts statute of limitations, both of Charter's indemnity and defense claims are simply too late, since they were brought more than 14 years after the causes of action accrued.[1]

---

[1] Charter fares no better under the other cases it cites. *Luppino v. Vigilant Ins. Co.,* 677 A.2d 617, 621 (Md. Ct. Spec. App. 1996), found that the statute of limitations began to run against an insured on its duty to indemnify claim when the trial court entered judgment against the insured because at that point in time, the insured was legally obligated to pay the judgment. The insured's duty to defend claim did not accrue until the conclusion of the appeal, however, because the insurer's duty to defend continued throughout the litigation. *See id.* at 622 (recognizing that a cause of action may sometimes accrue when the insurer notifies the insured that it will not pay defense fees). Thus under *Vigilant*, as under *Dutton*, Charter's claims for breach of the duty to defend and the duty to indemnify accrued in 1992 when it alleges that it was legally obligated to spend money to clean up the Tiverton Site and it agreed to RIDEM's demand.

The majority rule Charter touts is also not as uniform as it would have this court believe. California courts hold that the key date for determining when the statute of limitations begins to run on a duty to defend claim is the date when an insurer denies coverage. *See, e.g., Eaton Hydraulics, Inc. v. Continental Cas. Co.*, 132 Cal. App. 4th 966, 973 (2005). California then equitably tolls the statute of limitations on a duty to defend claim until the underlying lawsuit is terminated by final judgment because the duty to defend continues throughout that litigation. *See id.; accord Brannon v. Continental Cas. Co.,* 137 P.2d 280, 287 (Alaska 2006) (adopting California rule). In *Eaton*, the court noted that the underlying lawsuit was terminated based on a consent decree entered into by the insured and the EPA that "impos[ed] payment and other

Further, well-reasoned decisions from other jurisdictions, including Washington and Massachusetts**,** have adopted the rule urged by Travelers C&S. *See Schwindt v. Commonwealth Ins. Co.*, 997 P.2d 353, 356 (Wash. 2000) ("the contract statute of limitations begins to run against an insured on the date the insurer breaches the contract of insurance" by denying coverage); *Travelers Ins. Co. v. Royal Ins. Co.*, 841 N.E. 2d 287, 2006 WL 223854, at *2 (Mass. App. Ct. 2006). *Travelers* clearly held that the statute of limitations for a claim for breach of an insurance contract begins to run from "the date the insurer disclaimed any obligation to defend or indemnify." *Id.* Charter dismisses this controlling case by mischaracterizing one of the decisions on which the appeals court relied, *Lumbermens Mut. Cas. Co. v. Y.C.N. Transp. Co.*, 705 N.E.2d 297 (Mass. App. Ct. 1999). In *Lumbermens,* the court did not assume that the insured's claim accrued at the time of the insurer's denial of coverage, as Charter asserts. *See* Opp. at 14, n.3. Instead, the court assumed that the insurer's denial of coverage was a breach of its duty to defend (as the lower court had concluded). *See id.* at 301 ("If we assume that the disclaimer violated Lumbermens' contractual obligation . . . "). The court then found that the statute of limitations on that claim began to run when the insurer denied coverage. *See id.* (". . . then [the insured] had until [six years after the denial] to assert its legal claims against Lumbermens arising from that violation"). The court then concluded that Lumbermens had waived its statute of limitations defense by its subsequent conduct. *See* i*d. Lumbermens'* finding concerning waiver does not alter its conclusion about when the statute of limitations ran.

The Massachusetts cases on which Charter relies to question *Travelers* do not support Charter's position. For example, in *John Beaudette, Inc. v. Sentry Ins. Co.*, 94 F. Supp. 2d 77,

---

obligations" on the insured for the environmental contamination at issue. *Id.* at 970. Thus, even if this Court follows the California and Alaska courts, and finds that an insured's cause of action that accrues on the insurer's denial of coverage is equitably tolled until the underlying litigation is concluded, it is clear that Charter's claim accrued in March 1992.

102 (D. Mass. 1999), the court concluded that an insured's duty to defend claim accrued when an insurer unequivocally refused to defend its insured. With respect to the duty to indemnify, *Beaudette* held that a cause of action accrued when the insured became "legally obligated to pay damages." *Id*. at 104. Applying *Beaudette* here, Charter's duty to defend claim accrued in 1991 when Travelers denied coverage, and Charter's duty to indemnify claim accrued when it entered into a consent decree with RIDEM in 1992 that allegedly obligated it to incur clean up costs.[2]

**E. Charter's Policy Arguments Are Purely Speculative Or Inapplicable To The Facts Of This Case.**

To support its theory that RIDEM's issuance of a Letter of Compliance in 2002 started its statute of limitations running, Charter offers six policy rationales: (1) such a rule is purportedly necessary to protect an insured from having to litigate two actions at once; (2) the uncertainty of the amount of defense and indemnity costs would allegedly make it hard for the insured to know whether to pursue a coverage action; (3) an insurer's coverage defenses theoretically could be harmful to the insured's position in the underlying environmental action; (4) it is allegedly more efficient to wait until liability is fixed before addressing indemnification; (5) waiting until the conclusion of the environmental litigation supposedly permits an insurer to change its mind and provide a defense or indemnity in reaction to developments during the litigation; and (6) an insured theoretically may frustrate public policy by prioritizing its coverage dispute over

[2] Neither of the remaining cases on which Charter relies improve its position. *See Wolverine Ins. Co. v. Tower Iron Works, Inc.*, 370 F.2d 700, 702-03 (1st Cir. 1966) (claim for common-law indemnity accrued when underlying action for which indemnification is sought is settled); *Hays v. Mobil Oil Corp.*, 736 F. Supp. 387, 397 (D. Mass. 1990) (after finding that statutory indemnification claim was barred by contractual provision, observing in dicta, that statutory indemnification claim arose when liability was fixed), *vacated in relevant part*, 930 F.2d 96, 103 n.13 (1st Cir. 1991) (vacating analysis of whether indemnification claim is time barred). Under *Wolverine* and *Hays*, which are completely irrelevant to Charter's duty to defend claim, and only marginally relevant to Charter's duty to indemnify claim, Charter's claim would have accrued when it entered into the consent decree with RIDEM in 1992.

deciding to remediate its property voluntarily. *See* Opp. at 5-9. None of these arguments has any relevance to the instant case, where Charter's Complaint concedes that its obligations to RIDEM to clean up the Tiverton Site were allegedly fixed by the March 1992 consent decree. By that time, Charter contends that it had assumed liability for cleanup expenses and negotiated a remediation plan with RIDEM, and therefore there were no outstanding demands by RIDEM against which Travelers C&S could have defended Charter. Finding that Charter's claims accrued in March of 1992 would not prejudice Charter in any of the ways it alleges it could be harmed: (1) once the consent decree was signed, Charter was cooperating with RIDEM, so bringing a coverage action against Travelers C&S could not force it to litigate two actions at once; (2) the consent decree fixed the nature of Charter's remediation obligations and ended any alleged accumulation of defense costs so Charter had a reasonable idea of the amount of costs it allegedly incurred; (3) there was no outstanding demand on Charter made by RIDEM that could be affected by any coverage defense raised by Travelers C&S;[3] (4) efficiency concerns are immaterial because if Charter prevailed in a coverage case against Travelers C&S it could obtain a judgment that Travelers C&S was obligated to indemnify it for all costs incurred in compliance with the consent decree; (5) there was no ongoing dispute between Charter and RIDEM after the consent decree was signed whose developments could cause Travelers C&S to change its coverage position; and (6) Charter had already elected to enter into the consent decree so its abstract speculation about what other environmental polluters might do is irrelevant.

---

[3] In a footnote, Charter alleges that language in an unidentified policy allegedly at issue in this case may be relevant to when the statute of limitations accrues. *See* Opp. at 7, n.1. As Charter is clearly aware, the policy language alleged to be at issue is not plead in, nor attached to, its Complaint, and thus may not be considered on a motion to dismiss. *See Maldonado v. Dominguez*, 137 F.3d 1, 6 (1st Cir. 1998) (matters outside the pleadings must be ignored on a motion to dismiss; consideration of such matters converts motion into one for summary judgment). Charter's footnote 1 should, accordingly, be stricken.

**F. Though Massachusetts Law May Supply The Applicable Statute Of Limitations, Charter's Claim Is Time Barred Under Either Rhode Island Or Massachusetts Law.**

In resolving choice of law questions, Rhode Island courts consider a number of factors, including the place of contracting, the situs of contract negotiations, the place of incorporation and place of business of the contracting parties, and the place where the relationship between the parties is centered. *See Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 5-6 (1st Cir. 1994). Charter's Complaint has failed to plead the facts bearing upon these factors. While Charter concedes that its claims against Travelers C&S are premised upon insurance policies allegedly issued to Northeast Petroleum Corp. ("Northeast"), the Complaint includes no factual information about the location where those insurance contracts were made or negotiated, or the place of incorporation or business of Northeast, and pleads nothing about the place where the relationship between Northeast and Travelers C&S was centered. *See* Complaint, ¶20. Given the procedural constraints of this motion to dismiss, Travelers cannot now introduce facts that would permit the court to conduct a thorough choice of law analysis.[4] The Court need not resolve the choice of law question at this time, however, as Charter's claim is time-barred under the statute of limitations regardless of whether Massachusetts or Rhode Island law applies.

Charter's follow-up argument, that this Court would apply Rhode Island statute of limitations law even if Massachusetts substantive law governs the alleged insurance contracts between Northeast and Travelers C&S, is incorrect. Rhode Island law considers statutes of limitations to be substantive, not procedural, for the purposes of choice of law analysis. "Rhode Island courts view limitations questions in kindred manner as other substantive issues giving rise

[4] Travelers C&S submits that discovery in this case will show that Northeast was a Massachusetts corporation with its principal place of business in Massachusetts, that policies were issued to Northeast in Massachusetts, and that the focus of the relationship between Northeast and Travelers C&S was Massachusetts.

to conflicts of law problems." *Montaup Elec. Co. v. Ohio Brass Corp.*, 561 F. Supp. 740, 744 (D.R.I. 1983) (holding that Massachusetts law governed all claims, including limitations claims). In *Waters v. Walt Disney World Co.*, 237 F. Supp. 2d 162, 165 (D.R.I. 2002), the court held that state statutes of limitations are "substantive in nature, rather than procedural" in analyzing choice of law questions. Like Charter's claim here, the choice of law in *Waters* ultimately "would not change the outcome," as the claims were time-barred regardless of which statute of limitations the court applied. *Id.* at 166-67.

Contrary to Charter's assertions based on aged case law, this Court correctly decided *Montaup* and *Waters*, which reflect the law of Rhode Island as well as the modern view that statutes of limitations are substantive because they can be outcome-determinative.[5] *See, e.g.*, *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) ("[A] statute that would completely bar recovery in a suit if brought in a State court bears on a State-created right vitally and not merely formally or negligibly. As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law."); *State ex rel. Wade v. Frawley*, 966 S.W.2d 405 (Mo. Ct. App. 1998) (acknowledging substantive nature of statute of limitations to protect potential defendants from the protracted fear of litigation); *Lins v. Blau*, 584 N.W.2d 183 (Wis. Ct. App. 1998) ("[s]tatutes of limitation are substantive statutes because they 'create and destroy' rights by limiting the time in which an action must be commenced").

---

[5] Even under the *Servicios* case cited by Charter, statutes of limitation should be considered substantive for choice of law purposes because the choice of a statute of limitations may well affect the ultimate result in a case. *See* Opp. at 13, n.2 (citing *Servicios Comerciales Andinos, S.A. v. General Elec. Del Caribe, Inc.*, 145 F.3d 463, 479 (1st Cir. 1998) (explaining that choice of law analysis under the Restatement does not focus on whether rules are "substantive" or "procedural" but rather directly on which state's law should apply)); *see also Brown v. Church of the Holy Name of Jesus*, 252 A.2d 176 (R.I. 1969) (rejecting precedent decided prior to Rhode Island's adoption of the interest-weighing approach to choice of law analysis and noting that restrictions contained within Massachusetts statute of limitations applied to determine whether cause of action under Massachusetts statute was time-barred).

Because this Court should conclude that Charter's cause of action for breach of the indemnity and defense obligations of the alleged policies accrued at the latest by 1992, and are thus time barred under either the Rhode Island or Massachusetts statutes of limitations, the Court need not reach the choice of law question at this stage of this case.

**CONCLUSION**

For the foregoing reasons and those explained in Travelers C&S's opening memorandum, Charter's Complaint should be dismissed in its entirety because it is time-barred by the applicable statute of limitations.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule Cv 7(e), Travelers C&S requests that the Court hear oral argument on its Motion to Dismiss. Travelers C&S estimates that half an hour will be required for argument.

TRAVELERS CASUALTY AND SURETY COMPANY

By Its Counsel,

/s/ Jason C. Preciphs
R. Kelly Sheridan (#1976)
Jason C. Preciphs (#6727)
Roberts, Carroll, Feldstein & Peirce
10 Weybosset Street
Providence, Rhode Island 02903
(401) 521-7000 (P)
(401) 521-1328 (F)

John A. Nadas (admitted pro hac vice)
Kathleen Burdette Shields (admitted pro hac vice)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000 (P)
(617) 248-4000 (F)

**CERTIFICATION OF SERVICE**

I hereby certify that on this 3rd day of October 2006, a copy of the foregoing *Reply Memorandum in Support of Travelers Casualty and Surety Company's Motion to Dismiss* was filed electronically through the Court's CM/ECF System, where it is available for viewing and downloading and will be sent electronically to the counsel of record listed below who are registered participants identified on the Notice of Electronic Filing and sent via First-Class mail, postage prepaid, to counsel for Plaintiff who are not registered participants:

Gerald J. Petros, Esq.
Anna M. Piazza, Esq.
gpetros@haslaw.com
apiazza@haslaw.com

Neal R. Brendel, Esq.
Brian F. Saulnier, Esq.
James R. Segerdahl, Esq.
Kirkpatrick & Lockhart Nicholson Graham LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222

/s/ Jason C. Preciphs