**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHARTER INTERNATIONAL OIL COMPANY,<br><br>Plaintiff,<br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY (f/k/a AETNA CASUALTY AND SURETY COMPANY),<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 06-324 S |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

After informing this Court in its principal brief that Rhode Island courts surely would find the insurer's denial of coverage as commencing the statute of limitations for breach of an insurance contract, Travelers completely changes course in its reply brief, advancing an entirely different argument. Travelers now argues, for the first time, that Rhode Island courts would instead find the date of a consent agreement in the underlying environmental action as the limitations trigger—even where, as here, the consent agreement did not resolve the underlying action and the insured continued its defense well after execution of the agreement and until completion of the underlying action. Neither of Travelers's divergent positions is correct. And Travelers's backtracking only underscores the flimsy foundation for its motion, as it introduces a host of new factual disputes, all of which further demonstrate the problems inherent in deciding the limitations issue on a narrow motion-to-dismiss record.

In addition to flip-flopping on the limitations trigger, Travelers, as clarified below, misconstrues many of the relevant cases in the context of its new argument. If this Court were to decide the limitations question on Travelers's premature motion, then the case law and

associated arguments establish that Charter's Complaint was timely, as it was filed well within Rhode Island's ten-year statute of limitations, which began to run at the conclusion of the underlying action in 2002. If this Court decides to defer this issue to a later time after development of the record, then Charter respectfully suggests that, in light of the important public-policy implications at stake, this issue, along with any associated choice-of-law issue, may be appropriate for certification to the Rhode Island Supreme Court. At this time, however, no basis exists for granting Travelers's premature motion.

## I. The Letter of Compliance, not the Consent Agreement, Finally Fixed Charter's Liability and Thus Commenced to Run the Statute of Limitations.

Instead of defending its prior limitations trigger (date of coverage denial), Travelers devises a new trigger in its reply, claiming that the consent agreement between RIDEM and Charter in 1992 was a final judgment, fixing liability and thus commencing the limitations period. Travelers's new position rests on its mischaracterization of the consent agreement as the equivalent of a final judgment requiring no further litigation or adversity between Charter and RIDEM. Nothing could be further from the truth. Indeed, as the Complaint clearly alleges, Charter was forced to continue to defend the Underlying Action on its own all the way through its conclusion in 2002—a fact that Travelers fails to appreciate, perhaps due to its abandonment of Charter during the long course of the underlying action. *See* Complaint ¶ 33 ("Charter [defended the Underlying Environmental Action] on its own. . . all the way through the conclusion of the Underlying Action in 2002."). The Complaint and the reasonable inferences drawn from the allegations in the Complaint demonstrate that the consent agreement was merely a step in the long, <u>ongoing</u> Underlying Action, where many of the material issues were not yet resolved, the terms of clean-up could be and were modified and disputed, certain clean-up costs were incurred on a variable, rolling basis depending on the resolution of disputed issues, and

RIDEM could still hold Charter liable for violations of environmental statutes. *See* Complaint ¶¶ 15 (consent agreement as part of "ongoing" Underlying Action); 16 (consent agreement requiring release before compliance); 18 (Letter of Compliance needed to finalize action); 31 (RIDEM's ongoing investigation of site after consent agreement entered); 33 (adversarial relationship between Charter and RIDEM after consent agreement entered). Indeed, if the consent agreement effectively terminated the action, it would have obviated the need for issuing a final Letter of Compliance, expressly required as part of the consent agreement. *See* Complaint ¶¶ 16, 18.

The environmental consent agreement, contrary to Travelers's argument, was not the equivalent of a judicially entered consent decree in an ordinary commercial case that resolves all disputed issues. An environmental consent decree represents only the beginning of a host of contested issues. Courts have explicitly recognized this fact. For example, in *Fed. Ins. Co. v. Purex Indus, Inc*., 972 F. Supp. 872 (D.N.J. 1997), a federal district court rejected a similar argument advanced by the insurers, holding that an administrative consent order (ACO) between the environmental agency and insured did not finally fix liability. Even though the insured in that case, pursuant to the ACO, had "submitted a cleanup plan and begun remediation under the plan," the court refused to use the ACO as the limitations trigger because the ACO was still subject to modification, and the agency could still sue the insured under a number of environmental statutes. *Id*. at 880.

As in *Purex*, the consent agreement here by no means operated as a final judgment and, importantly, nothing in the Complaint alleges that it did. As noted above, Charter and RIDEM still maintained an adversarial relationship after the entry of the consent agreement, as Charter continued to defend the Underlying Action all the way through its conclusion in 2002. There is

nothing in the record to refute this allegation or to suggest that the consent agreement resolved the Underlying Action; the agreement was merely a step in the process leading to the case's ultimate conclusion in 2002. To the extent that Travelers predicts that the consent agreement will have terms to the contrary, such a factual dispute cannot be resolved on a motion to dismiss. *See In re Credit Suisse First Boston Corp*., 431 F.3d 36, 45 (1st Cir. 2005) ("In considering a motion to dismiss, the district court is bound to assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability.") (all internals omitted).[1]

*Dutton-Lainson Co. v. Continental Ins. Co*., 716 N.W. 2d. 87, 100-02 (Neb. 2006), cited in Charter's principal brief, does not prove otherwise. In its reply, Travelers, implicitly acknowledging that *Dutton* devastates its original "date of denial of coverage" position, nevertheless embraces the *Dutton* rationale but suggests that the court in *Dutton* held that a cause of action accrues from the date of an environmental consent agreement. Travelers Reply, at 5-6. To the contrary, the *Dutton* court found that a "cause of action accrues and the statute of limitations begins to run not at the time of the underlying act causing the damage, but when the

---

[1] Contrary to the speculation of Travelers, which abandoned its insured during the relevant time period, Charter fully anticipates that the record, after discovery, will only further support these allegations in the Complaint. While the applicable notice-pleading rules certainly do not require Charter to lay out every detail of the Underlying Action in its Complaint, Charter contends that the record will show myriad examples of significant defense and related activities in response to the consent agreement, including claims for contribution against third parties. For example, in the intervening years between the consent agreement and the final Letter of Compliance, the parties continued to negotiate the consent agreement's scope and interpretation, haggled over the retroactive application of an evolving regulatory environment to the consent agreement and argued over risk assessment standards and the execution of environmental land-use restrictions in the Underlying Action's eleventh hour (as Travelers is likely well aware from experience, despite its legal position in this matter). Indeed, such defense activities continued right up until completion of the underlying action in 2002, and only then was Charter's ultimate responsibility fixed.

would-be indemnitee pays the judgment arising from underlying loss or damage"—in other words, at the date when all damages are fixed and paid. *See Dutton*, 716 N.W. 2d. at 100. The court in *Dutton* merely used the date of the consent agreement as the best-case scenario for the insurer, finding that "[a]t the earliest," the cause of action accrued on the date of the consent agreement, thereby making the complaint timely. *Id*. Whether the consent agreement actually was the limitations trigger was neither an issue before nor decided by the court, because the complaint would have, *at a minimum*, been timely filed even supposing that entry of a consent agreement constituted the appropriate trigger. *Id*.

Relying on its newfound trigger, Travelers gives short shrift to the sound policy arguments advanced by Charter in its principal brief. Yet a consent agreement between an environmental agency and the insured does not eliminate the problem for the insured of litigating a dispute on two fronts, particularly where, as here, the agency can still sue the insured and modify the terms of the clean-up plan. *See, e.g., Purex*, 972 F. Supp. at 880; *Paper, Allied-Industrial, Chemical & Energy Workers Int'l Union v. Continental Carbon Co*., 428 F.3d 1285, 1289-90 (10th Cir. 2005) (describing "acrimonious" relationship between agency and remediator even after entry of consent agreement). Again, Travelers assumes, incorrectly, that a consent agreement resolves an environmental action for all time and fixes liability, an assumption that is plainly incorrect. Even when an insured agrees to remediate, the underlying dispute with the environmental agency continues. In fact, these ongoing disputes can be the most important and consequential disputes of all. In the environmental-remediation regime, liability may be strict, but the details defining the extent and scope of the insured's liabilities and responsibilities are often subject to wide swings depending on the facts, legal standards, and related issues affecting an insured's position. To force an insured to defend itself with respect to the underlying

environmental action, while at the same time wage a battle against a breaching insurer would, as described at length in Charter's opening brief, undermine Rhode Island's codified public policy of assuring cooperative clean-up actions, as well as create the risk of insurers compounding policyholders' liability by raising inconsistent and harmful defenses in the insurance action. *See* R.I. Gen. Laws § 23-19.14-2; *Aetna Casualty & Surety Co. v. Kelly*, 889 F. Supp. 535, 541-42 (D.R.I. 1995).

The date of full and final compliance (March 20, 2002) is when Charter's obligations became finally fixed and its battle against RIDEM complete. *See Hays v. Mobil Oil. Corp*., 736 F. Supp. 387, 397 (D. Mass. 1990) (agency release letter as fixing liability and commencing limitations period), *reversed on other grounds by Hays v. Mobil Oil. Corp*., 930 F.2d 96 (1st Cir. 1991).[2] And only then did the statute of limitations begin to run. Any earlier trigger would frustrate Rhode Island public policy and run contrary to the sensible final-judgment accrual rule.

## II. Travelers Misconstrues the Case Law on Both the Accrual and Choice-of-Law Issues.

Travelers misconstrues many of the cases cited or distinguished by Charter, including this Court's decision in *Adams v. Town of Burrillville*, 249 F. Supp. 2d 151 (D.R.I. 2003). As this Court is aware, that case did not consider the question of accrual of a contract claim (insurance contract or otherwise), but instead a tort one. This Court in *Adams* only attached significance to

[2] Travelers misleadingly cites the district court decision in *Hays* as being overruled by the First Circuit on the limitations issue. Travelers Reply, at 8, n.2. Not so—the First Circuit remanded due to confusion as to what costs (tank-removal costs or clean-up costs) were subsumed in the district court's analysis. The First Circuit expressed no opinion on the district court's marking of the accrual date as the date of the release letter. *See Hays*, 930 F.2d at 103 n. 13. Further, not even under the most strained reading does the *Hays* decision, as Travelers contends, support an accrual date of the 1992 consent agreement, as opposed to the 2002 Letter of Compliance. The Letter of Compliance here was the equivalent of the release letter in *Hays*.

the town's denial of health benefits because that denial constituted the plaintiff's injury. *Id*. at 154. While tort claims generally accrue at the time of injury, breaches of insurance or indemnity contracts do not. The more relevant case—one involving a contract for indemnification—is *Pardee v. Consumer Portfolio Servs., Inc*., 344 F. Supp. 2d 823 (D.R.I. 2004), cited by Charter in its principal brief and ignored by Travelers in its reply. The court in *Pardee* found that "[i]n Rhode Island, the general rule regarding indemnity is that no claim arises as such until the indemnitee's liability is fixed either by entry of judgment holding the indemnitee liable or by the settlement of the underlying claim by the indemnitee on the belief that he is liable." *Id*. at 836. Rhode Island courts would surely apply their "general rule regarding indemnity" to an insurance contract establishing a duty to indemnify.[3]

Further, Travelers, based on a fundamental misunderstanding of settled choice-of-law principles, parrots the misguided decisions in *Waters v. Walt Disney Co*., 237 F. Supp. 2d 162, 165 (D.R.I. 2002) and *Montaup Elec. Co. v. Ohio Brass Corp*., 561 F. Supp. 740, 744 (D.R.I. 1983), insisting that Massachusetts law governs the limitations question. There is no question that a conflict of laws on the statute of limitations in some cases (though not this one) may be outcome determinative, which is why under *Erie*, state law governs. Thus, Charter does not dispute for purposes of *Erie* that the statute of limitations is substantive. The issue here, however, is not *Erie* (a conflict between federal and state law), but instead a conflict between the law of two states. In such a situation, a federal court sitting in diversity applies the choice-of-law

[3] To be clear, both parties concede that the statute-of-limitations trigger for a breach-of-insurance-contract action in the environmental context is a question of first impression, and thus both parties endeavor to predict how Rhode Island courts would answer this issue of state law if given the opportunity. Charter foresees other issues of first impression arising as this case proceeds, likely necessitating certification of several of these important issues, potentially including the statute-of-limitations issue, to the Rhode Island Supreme Court at a later date. *See* R.I. Supreme Court Rule 6.

rules of the forum, and under Rhode Island choice-of-law rules, the statute of limitations, considered "procedural," is that of the forum. Cases like *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988), *Servicios Comerciales Andinos, S.A. v. Gen. Elec. Del Caribe, Inc.*, 145 F.3d 463, 479 (1st Cir. 1998),[4] and *Pinkham v. Collyer Insulated Wire Co., Inc.*, Civ. A. No. 92-0426B, 1994 WL 385375, at *4 (D.R.I. Mar. 22, 1994), all compel such a conclusion.[5]

[4] Contrary to Travelers's claim, nothing in *Servicios* supports the notion that "the statute of limitations should be considered substantive for choice of law purposes." Travelers Reply, at 11 n.5. *Servicios*, 145 F.3d at 480 ("Contrary to GE's contention, therefore, the fact that Rule 44.1 is considered 'substantive' for *Erie* purposes does not bar a finding that it is 'procedural' for conflict of laws purposes.").

[5] Travelers, looking beyond the pleadings, informs that discovery will demonstrate Massachusetts has substantial connections with this dispute. Travelers Reply, at 10 n.4. If Travelers must depend on discovery for its choice-of-law argument, then it certainly is inappropriate to decide the issue on a motion to dismiss.

## CONCLUSION

For the foregoing reasons, as well as the ones given in Charter's opening brief, Charter respectfully requests that this Court deny Travelers's motion to dismiss.

CHARTER INTERNATIONAL OIL
CORPORATION

Respectfully submitted by its attorneys:

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Anna M. Piazza (#7206)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Phone: (401) 274-2000
Fax: (401) 277-9600
gpetros@haslaw.com
apiazza@haslaw.com

Neal R. Brendel (admitted pro hac vice)
James R. Segerdahl (admitted pro hac vice)
Brian F. Saulnier (admitted pro hac vice)
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
nbrendel@klng.com
jsegerdahl@klng.com
bsaulnier@klng.com

Dated: October 12, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2006, a copy of the foregoing Plaintiff's Sur-Reply to Defendant's Reply Memorandum in Support of its Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros (#2931)