**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHARTER INTERNATIONAL OIL COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY (f/k/a AETNA CASUALTY AND SURETY COMPANY),<br><br>Defendant. | ) | Civil Action No. 06-324S |

**AFFIDAVIT OF TIMOTHY O'CONNOR, P.E.**

I, Timothy O'Connor, P.E., affirm and declare the following to be true and accurate and based on my personal knowledge of the matters set forth herein:

1. I have both my bachelor of science and masters of science degrees in civil and environmental engineering from the University of Rhode Island and am a registered professional engineer in Rhode Island. I am currently Vanasse Hangen Brustlin's ("VHB") Director of Environmental Sciences for Rhode Island. My primary responsibilities include corporate Practice Leader for VHB's Oil and Hazardous Materials Groups and the direction of the Rhode Island environmental group.

2. From July 1987 to early 1997, I worked at the Rhode Island Department of Environmental Management ("RIDEM") in the Waste Management Division. I started as a junior sanitary engineer and was promoted three times to ultimately the position of supervisory sanitary engineer. During my ten years at RIDEM, I was responsible for the supervision of Rhode Island's hazardous materials and petroleum site cleanup programs and the development of

RIDEM regulations and policies, including the 1996 Rules and Regulations for the Investigation and Remediation of Hazardous Material Releases (the "Remediation Regulations"). While at RIDEM, I supervised the former Charter International Oil Company ("Charter") property located at 995 Main Road, Tiverton, Rhode Island (the "Site).

3. In March 1992, RIDEM entered into a Consent Agreement (the "Consent Agreement") with Charter pursuant to its authority under the Water Pollution Act, R.I. Gen. Laws chapter 46-12 and the Oil Pollution Control Rules and Regulations. A true and correct copy of the Consent Agreement is attached to this affidavit as Exhibit 1. Under this law and regulations, RIDEM exercises its authority to prevent, control and cause the remediation of sites that are contaminating the waters of the State, including ground and surface waters.

4. The Consent Agreement neither fixed nor made final the selection of cleanup methods, but was part of a long process to address the many issues at the Site. As a practical matter, RIDEM used consent agreements such as the one with Charter as flexible frameworks to address the investigation and cleanup of a site over a period of time. Consent agreements were not used as the final resolution of a matter because the investigation required under such an agreement necessarily meant that not all environmental conditions were known at the time the agreement was entered into but would be addressed as discovered and the cleanup then negotiated.

5. In 1992 and 1993, Charter worked on pre-remedial characterization plans for soil on the Site and obtained an assent from the Rhode Island Coastal Resources Management Council ("CRMC") and a water quality certification from RIDEM to allow the remediation to begin. Over the next few years, Charter worked on the investigation and remediation of the Site.

6. In August 1996, RIDEM significantly amended the Remediation Regulations, which changed how contaminated sites are cleaned up. The Remediation Regulations are promulgated under various Rhode Island environmental laws and are based on the policy of the State not to allow the unpermitted introduction of pollutants into the environment and to investigate, evaluate and remediate pollution that may adversely affect human health or impact the waters, including groundwater, of the State.

7. Because of the significant changes to cleaning up sites under the Remediation Regulation, Charter and RIDEM had many meetings throughout 1996 and 1997 to determine how the Remediation Regulations would apply to the Site. Some standards under the new Remediation Regulations applicable to the Site became less onerous, while others became more stringent. For example, the cleanup standard for total petroleum hydrocarbons was changed from the 50 parts per million ("ppm") standard under the Consent Agreement to 1000 ppm for certain upland parcels and 500 ppm for two shoreline parcels to protect marine organisms. The Regulations also imposed on Charter an expanded list of compounds regulated in groundwater, whereas the Consent Agreement only had a few compounds for groundwater. Standards were also published for arsenic, resulting in additional work for Charter.

8. In 1997, I left RIDEM and joined private environmental consulting firms, where I worked on behalf of Charter, assisting it in on-going negotiations with RIDEM and the cleanup of the Site.

9. As a result of the Remediation Regulations, Charter developed revisions to the remedial action work plan ("RAWP") to address the contamination at the Site. The development of the RAWP involved extensive negotiations with RIDEM. This is shown in a letter to Charter dated October 29, 1997, in which RIDEM provided a summary of 14 documents dated between

June 2, 1997 and October 15, 1997 concerning the RAWP and clarified its understanding of the remedial action that it then wanted Charter to take for the Site. A true and accurate copy of this letter is attached to this affidavit as Exhibit 2. During this same time period, Charter also had to obtain additional approvals or extensions of permits from various state agencies, including an assent modification from CRMC for an amended remedial approach for the coastal areas of the Site.

10. After many meetings, negotiations and the submittal of numerous documents, RIDEM approved Charter's RAWP under a November 7, 1997 Order of Approval, that explicitly amended the Consent Agreement. A true and correct copy of the Order of Approval is attached to this affidavit as Exhibit 3. In the Order of Approval, RIDEM imposed new conditions on Charter including: implementing the remedy for the Site as described in the 1997 RAWP for the excavation and bioremediation of contaminated soils; submitting a Fresh Water Wetlands Restoration/Replication Plan; and investigating additional contaminants in groundwater. Under the terms of the 1997 Order of Approval, cleanup occurred on the Site over the next four to five years.

11. In July 2001, Charter, RIDEM and Starwood Capital Group, LLC, the prospective purchaser of the Site, entered into a Settlement Agreement and Covenant Not To Sue ("SACNTS") that acknowledged that Charter still was "remediating the [Site] pursuant to the Consent Agreement dated March 25, 1992, as modified in conformance with the Rules and Regulations for the Investigation and Remediation of Hazardous Material Releases ("the Remediation Regulations") . . . ." The SACNTS defined the "Consent Agreement" as not just the 1992 Agreement but rather stated that the 1992 Agreement was "modified pursuant to the Remediation Regulations, the Summary Letter dated 10/29/97, and the Order of Approval dated

11/7/97 . . . " A true and accurate copy of the Settlement Agreement and Covenant Not To Sue is attached to this affidavit as Exhibit 4.

12. After the SACNTS, Charter still was performing work at the Site, including the development and recording of three environmental land use restrictions ("ELURs").

13. Finally, in May 2002, RIDEM issued a letter of compliance ("LOC") to Charter. RIDEM uses LOCs at the end of the process, much like resolving a lawsuit, when it determines that no further action is necessary and the area or site at issue is compliant with the Remediation Regulations. The LOC issued to Charter acknowledged that the Site was in compliance with the 1992 Consent Agreement and 1997 Order of Approval based on the data Charter provided to RIDEM in 41 documents over the period March 1992 through May 2002.

Timothy O'Connor

Subscribed and sworn to before me this 31st day of May, 2007.

Notary Public

My Commission Expires 12-21-08

804830

## CERTIFICATE OF SERVICE

**TO:**

John A. Nadas, Esq.
Kathleen Burdette Shields, Esq.
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts, Carroll Feldstein & Peirce
Ten Weybosset Street
Providence, RI 02903

I hereby certify that on May 31, 2007, a copy of the foregoing Affidavit of Timothy O'Connor, P.E. of was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros (#2931)