RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT

235 Promenade Street, Providence, RI 02908-5767 TDD 401-831-5508

Mr. John E. Ross, Deputy General Counsel
Spelling Entertainment Group, Inc.
Charter International Oil Company
4655 Salisbury Road, Suite 399
Jacksonville, Florida 32256

October 29, 1997

RECEIVED
NOV 03 1997
LEGAL DEPARTMENT

Re: Charter International Oil Company/Northeast Petroleum Site in Tiverton
Application for Assent Modification to CRMC dated June 1997

Dear Mr. Ross:

The following bullets summarize the correspondence and deliverables which have been submitted to this Office in support of the above referenced remedial action work plan.

- June 2, 1997 - CRMC Assent Modification which pertains to an amended remedial approach for the coastal areas was submitted to the Office of Waste Management by NES. NES submitted this document to the Office as a functional equivalent of an Amended Remedial Action Work Plan.

- June 6, 1997 - After reviewing the Assent Modification, the Office of Waste Management along with the Office of Water Resources sent a comment letter to NES in response to the document.

- June 10, 1997 - NES submitted a response to comment letter along with additional supporting documentation to the Office of Waste Management.

- June 27, 1997 - The Office of Waste Management sent a comment, requirement, and recommendation letter to NES in response to their June 10, 1997, letter.

- July 16, 1997 - The Office of Waste Management met with John Ross to negotiate unresolved issues. Items that were discussed included the standards in the Remediation Regulations, remediation completion date, modification to the Project Implementation Plan, BTEX in soils, PAHs in soil, lead in soil, arsenic in soil, and groundwater monitoring.

- July 29, 1997 - John Ross submitted a request for renewal of the Water Quality Certification to the Office of Water Resources. It is believed that their current certification expires October 1, 1997.

- August 4, 1997 - Hinckley, Allen & Snyder, on behalf of Charter International Oil Company ("Charter"), submitted a request for renewal of their existing wetlands permit

to the Office of Water Resources. Their original permit expired August 2, 1997. The letter also requested a meeting with various members of the Department staff involved with the site.

- August 5, 1997 - John Ross submitted several documents to the Office of Waste Management, including a description of the treatability experiments, a Vegetative Investigation of the Shore Area and a letter report documenting that there is no evidence of adverse impact to the Sakonnet River from the site contaminants. The cover letter also included a summary of the items that were agreed to during the meeting.

- August 7, 1997 - John Ross submitted the graph and table attachments which were supposed to be included in the August 5, 1997 submittal to the Office of Waste Management.

- August 8, 1997 - NES submitted an updated "Areas of Impact" drawing to the Office of Waste Management based on a Remedial Objective of 500 ppm TPH in soil.

- August 15, 1997 - NES submitted amended Tables 4 and 5 from the Data Tables and Site Maps package presented by Mr. John Ross on July 16, 1997.

- October 10, 1997 - Hinckley, Allen & Snyder on behalf of Charter submitted a letter of commitment regarding Fresh Water Wetlands Restoration/Replication (FWW Permit No. 93-0182D).

- October 13, 1997, John Ross submitted the results of the lead leachability study.

- October 15, 1997, John Ross submitted a letter describing the proposed TPH compliance sampling strategy for the site.

The following bullets summarize this Office's understanding of all the terms agreed upon between Charter and the Office of Waste Management concerning Charter's recent request to deviate from the original remedial action work plan by excavating shore line contaminated soils (Texaco Shore Area and Shore Area) and treating them in the upland bioremediation beds.

- Charter will have a contingency plan in place for addressing sediment controls, berming, sheening, immediate response and dewatering procedures.

- All work conducted outside of the protective berm will be conducted three hours after high tide and finish three hours before the next high tide.

- Charter will remediate all contaminated soils in the shoreline areas to 500 ppm and conduct compliance sampling at no less than one sample per every 25 linear feet of excavation boundary and no less than one sample per 2000 square feet of excavation floor.

- The Office of Waste Management concurs with Charter's TPH compliance sampling strategy as described in the October 15, 1997 letter from John Ross.

- Confirmation samples taken along the railroad right of way boundary will not be included in calculating the average TPH value for an excavation since Charter will conduct a Human Health Risk Assessment in that area. The Office of Waste Management will expect a Human Health Risk Assessment Work Plan as required by Rule 8.04 (Method 3 Remedial Objectives) by February 15, 1998.

- By adopting the conservative 500 ppm direct contact standard in the shoreline soils, Charter will not be required to conduct an Ecological Risk Assessment of the shore areas provided that Charter meets the remedial objective throughout the shore. This remedial objective approval is based upon the findings of the vegetative study, as well as the impact analysis conducted by the Center for Toxicology and Environmental Health dated 4 August 1997.

- Charter will be allowed to backfill the Shore Area and Texaco Shore Area with soils containing TPH up to 500 ppm for those areas not requiring offsite soils to meet specific sieve characteristics.

- The Office of Waste Management did <u>not</u> concur with Charter's proposal to stop groundwater monitoring. Charter agreed to continue to conduct groundwater monitoring for VOC's and SVOC's up until all remedial action has been completed and the Department has issued the Final Letter of Compliance to Charter.

- Charter will maintain an Active Operating Log of all site activities.

- Per Charter's 16 July 1997 request, the Office of Waste Management grants extension for remedial activities to September 25, 1998.

- The Office of Waste Management concurs with Charter that no further BETX soil sampling is warranted.

- The Office of Waste Management concurs with Charter that no further PAH soil sampling is warranted.

- The Office of Waste Management concurs with Charter that no further lead or arsenic soil sampling is warranted.

**Outstanding Issue:**

- According to the letter dated July 16, 1997 from John Ross to the Office of Waste Management, Item #3 under clarification of matters with regard to the Consent Agreement, Charter was supposed to submit a letter to codify the changes in site conditions that have occurred since the Consent Agreement was signed in 1992 which

have caused deviation from the original work plan. The Office will expect this submittal after the Order of Approval is granted.

- The Office of Waste Management expects the submittal of the Fresh Water Wetland Restoration/Replication Plan by November 15, 1997.

In closing, this letter is meant to clarify our understanding of your intentions with respect to this remedial action. If this letter accurately reflects the issues associated with this project, the Office will begin processing an Order of Approval once we receive a letter verifying your concurrence with these issues and a check for $1000 made out to the State of Rhode Island General Treasurer.

Please feel free to contact me if you have any questions at (401) 277 - 3872 ext. 7139.

Sincerely,

Gregory S. Fine, P.E.
Supervising Engineer
Office of Waste Management

cc: K. Owens
J. Crawford
T. O'Connor
A. Pacchiania
C. Hobert

nepet.ltr