# EXHIBIT
# 4

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS DEPARTMENT OF ENVIRONMENTAL MANAGEMENT OFFICE OF WASTE MANAGEMENT

IN RE: Property identified as:
AP 1-13 BLK 94 Lot 191A
AP 7-8 BLK 54 Lot 16
AP 7-9 BLK 24 Lot 1
AP 7-9 BLK 24 Lot 2
AP 7-9 BLK 51 Lot 2
AP 7-9 BLK 51 Lot 1
AP 7-8 BLK 57 Lot 23
AP 7-8 BLK 57 Lot 29A
AP 7-8 BLK 57 Lot 22
995 Main Road
Tiverton, Rhode Island

Charter International Oil Company
Starwood Capital Group LLC

Case No: 97-059

**SETTLEMENT AGREEMENT AND COVENANT NOT TO SUE**

I. INTRODUCTION

This Settlement Agreement and Covenant Not to Sue (the "Agreement") is made and entered into by and between the State of Rhode Island (the "State"), acting by and through the Rhode Island Department of Environmental Management (the "Department"), Charter International Oil Company ("Charter" or the "Performing Party") and Starwood Capital Group, LLC ("Starwood" or the "Settling Respondent") and all collectively referred to herein as the "Parties".

The State enters into this Agreement pursuant to Chapter 23-19.1 of the Rhode Island General Laws ("R.I. Gen. Laws"), specifically the Industrial Property Remediation and Reuse Act (Chapter 23-19.14), and contingent upon successful completion of the actions contained in Section III of this Agreement (Work to be Performed).

The Settling Respondent is a Delaware limited liability corporation with a principal place of business at 591 West Putnam Avenue, Greenwich, Connecticut. Starwood is a Bona

Fide Prospective Purchaser planning to purchase the real property and improvements located at 995 Main Road, Tiverton, Rhode Island and also known as AP 1-13 BLK 94 Lot 191A; AP 7-8 BLK 54 Lot 16; AP 7-9 BLK 24 Lot 1; AP 7-9 BLK 24 Lot 2; AP 7-9 BLK 51 Lot 2; AP 7-9 BLK 51 Lot 1; AP 7-8 BLK 57 Lot 23; AP 7-8 BLK 57 Lot 29A; AP 7-8 BLK 57 Lot 22 on the Town of Tiverton Assessor's Plat Maps as of the date hereof (the "Property"). The Property consists of approximately 106 acres of land, more or less, and being more particularly described in Exhibit A, which is intended to include all of the land comprising the former Northeast Petroleum Oil Storage facility.

The Town of Tiverton has indicated that the Property is currently zoned general industrial with the surrounding properties as mixed residential and commercial. The current Zoning Ordinance in Tiverton would permit the development of an Age Restricted Mixed Use Community. The Sakonnet River abuts the site to the west.

The property is owned by Charter. Charter is remediating the Property pursuant to the Consent Agreement dated March 25, 1992, as modified in conformance with the Rules and Regulations for the Investigation and Remediation of Hazardous Material Releases ("the Remediation Regulations")(said agreement, as modified pursuant to the Remediation Regulations, the Summary Letter dated 10/29/97, and the Order of Approval dated 11/7/97, is referred to as the "Consent Agreement").

The Parties agree to undertake all actions or obligations required by the terms and conditions of the Consent Agreement. The purpose of this Agreement is to settle and resolve, subject to reservations and limitations contained in Sections VI (Certification), VII (State of Rhode Island's Covenant Not to Sue), VIII (Reservation of Rights) and IX (Settling Respondent's Covenant Not to Sue), the potential liability of the Settling Respondent for any Existing Contamination which would otherwise result from the Settling Respondent becoming the owner of the Property. Existing Contamination means any hazardous

substances, including any petroleum-related contamination as defined in the Remediation Regulations, on or below the existing ground surface of the Property and identified in or reasonably inferable from the statistical evaluation of the contaminants of concern on the Property.

The Parties agree that the Settling Respondent does not admit liability by entering into this Agreement and/or performing any and all actions as provided for by this Agreement. All obligations of the Settling Respondent contained in this Agreement are null and void should the Settling Respondent not acquire title to the Property.

## II. STATEMENT OF FACTS AND BACKGROUND

2.1 The Performing Party is the owner of the Property, and intends to sell the Property to the Settling Respondent.

2.2 The documents listed on Exhibit B to this Agreement constitute the major documents submitted to or generated by the Department pertaining to the environmental conditions at the Property. All of the documents listed in Exhibit B are contained in the more comprehensive publicly available Administrative file maintained by the Department regarding the Property.

2.3 Charter is close to completing the remediation at the Property, and expects to file final documents requesting a Letter of Compliance within the next several months.

2.4 Starwood has agreed to purchase the Property from Charter, upon the terms and conditions set forth in the purchase and sales agreement dated as of January 12, 2000.

2.5 The Settling Respondent represents, and for purposes of this Agreement the State relies on those representations, that the Settling Respondent's involvement with the Property has been as a bona fide prospective purchaser of the Property.

## III. WORK TO BE PERFORMED

3.1 The Performing Party agrees to record or to cause to be recorded three (3) Environmental Land Usage Restrictions ("ELURs") in form and substance acceptable to and

approved by the Department concerning (x) the contaminated soil under and adjacent to the thirty inch (30") storm drain which runs beneath that portion of the Property which lies west of the railroad right of way and south of Carey Lane; (y) soil under and adjacent to the oil water separator building, and (z) the area of the railroad right of way.

3.2 The Performing Party agrees to complete the work required under the Consent Agreement. Any such work shall be conducted by the Performing Party, and shall be performed in accordance with the Consent Agreement and the Remediation Regulations and the Rules and Regulations for Groundwater Quality ("Groundwater Quality Regulations").

3.3 A Final Letter of Compliance will be issued by the Department upon completion of the work required under the Consent Agreement provided that the ELURs have been recorded in the Town of Tiverton's Land Evidence Records in accordance with the Remediation Regulations and recorded copies received at the Department and upon submittal of the Closure Report.

## IV. ACCESS/NOTICE TO SUCCESSORS IN INTEREST

4.1 The State acknowledges that this Agreement anticipates that the Performing Party will perform the response actions described in Section III (Work to be Performed). The Settling Respondent agrees to provide to the State, its authorized officers, employees, and representatives, access for the purposes of overseeing response actions being performed by Performing Party pursuant to the Consent Agreement. Nothing in this paragraph is intended to limit any rights of the State as provided by Section VIII (Reservation of Rights) of this Agreement or as otherwise provided through statute or regulation.

4.2 Within thirty (30) days of the execution of this Agreement by the Parties, the Performing Party shall record a copy of each ELUR in the Town of Tiverton Land Evidence Records for the Property. Thereafter, each deed, or other instrument conveying an interest in any of the areas restricted by the ELURs shall contain language stating that the Property is

subject to the ELURs. A stamped copy of this Agreement, along with any future documents conveying management functions or responsibilities delineated under this Agreement to a subsequent owner, shall be sent to the State as specified in Section XIV (Notices and Submissions).

4.3 Prior to the completion of the work described in Section III (Work to be Performed) and during any such time that the Settling Respondent is in possession of the Property, it shall require that assignees, successors in interest, lessees, and sublessees of the Property provide the same access and cooperation required of the Settling Respondent under this Agreement, and the Settling Respondent shall ensure that any lessee, subsequent lessees or tenants of the Property not violate this Section, or Section III (Work to be Performed) of this Agreement.

## V. DUE CARE/COOPERATION

5.1 The Settling Respondent and the Performing Party shall exercise due care at the Property. Due care shall be exercised by the Parties as follows:

a) In the event the Settling Respondent becomes aware of any action or occurrence which causes or threatens a release of hazardous materials, as defined in the Remediation Regulations, at or from the Property, the Settling Respondent shall comply with any applicable notification requirements under Chapter 23-19.1 of the R.I. Gen. Laws, including but not limited to, the requirements of Section 5 (Notification) of the Remediation Regulations;

b) In the event of any action or occurrence which causes or threatens a release of hazardous materials at or from the Property not related to the Existing Contamination the Settling Respondent shall take all appropriate actions to comply with all requirements of the Remediation Regulations; and

c) In the event the Settling Respondent becomes aware of any condition which is not in compliance with any of the ELURs, the Settling Respondent shall notify

the Department of the same within thirty (30) days of the date upon which the Settling Respondent first became aware of such condition.

## VI. CERTIFICATION

6.1 By entering into this Agreement, the Settling Respondent and the Performing Party each independently certify that to the best of their knowledge and belief they have fully and accurately disclosed to the Department all material information known to them and all such information in the possession or control of their officers, directors, employees, contractors and agents relating to the Existing Contamination or any past or potential future release of hazardous materials at or from the Property and to their qualification to enter into this Agreement.

6.2 The Settling Respondent also certifies that to the best of its knowledge and belief it has not caused or contributed to a release or threat of release of hazardous materials at the Property. If the State reasonably determines that information provided by the Settling Respondent is not materially accurate and complete, this Agreement, within the sole discretion of the State, shall be null and void and the State reserves all rights it may have.

6.3 If the State determines that any new information provided by the Performing Party in connection with this Agreement is not materially accurate and complete, this Agreement and the approvals granted under this Agreement to the Performing Party, within the sole discretion of the State, shall be null and void and the State reserves all rights it may have. However, the State's Covenant Not to Sue set forth in Section VII herein shall remain in full force and effect notwithstanding any determination by the State that the information provided by the Performing Party is not materially accurate and complete.

## VII. STATE OF RHODE ISLAND'S COVENANT NOT TO SUE

7.1 Subject to Section VIII of this Agreement (Reservation of Rights), and upon issuance of the final Letter of Compliance, the State and the Department covenant not to sue or take any other civil or administrative action against the Settling Respondent, its tenant, sublessees or secured lenders and successors and assigns for any and all civil liability and/or injunctive relief, including, but not limited to, claims relating to remediation obligations and damages to natural resources, with respect to the Existing Contamination. No assignment by the Settling Respondent of this Agreement shall alter or terminate the obligations of the State to the Settling Respondent or any assignee, subject to the limitations of Section X (Parties Bound/Transfer of Covenant). Each assignee, however, is bound by all the obligations in this Agreement and the State does not waive any of the rights it has under this Agreement.

## VIII. RESERVATION OF RIGHTS

8.1 The covenant not to sue set forth in Section VII (State of Rhode Island's Covenant Not to Sue) does not pertain to any matters other than those expressly specified in the same. The State reserves and this Agreement is without prejudice to all rights against the Settling Respondent with respect to all other matters, including but not limited to, the following:

a) claims based on a failure by the Settling Respondent to meet its express obligations under this Agreement, including but not limited to, Section IV (Access/Notice to Successors in Interest), and Section V (Due Care/Cooperation);

b) any liability resulting from the release or threat of release of hazardous material at the Property, which said release occurs while the Settling Respondent is in possession of the Property after the effective date of this Agreement, and is not within the definition of Existing Contamination;

c) criminal liability;

d) violation of the ELURs.

8.2 The State reserves and this Agreement is without prejudice to all rights the State may otherwise have against the Performing Party, and is without prejudice to all defenses the Performing Party may have against the State, with respect to all other matters, including but not limited to, the following:

a) claims based on a failure by the Performing Party to meet its specified obligations under this Agreement, including but not limited to Section III (Work to be Performed), Section IV (Access/Notice to Successors in Interest), and Section V (Due Care/Cooperation);

b) liability resulting from the release or threat of release of hazardous substances at the Property associated with the Existing Contamination;

c) criminal liability;

d) liability for violation of local, State or federal laws or regulations; and

e) violation of the ELURs,

8.3 With respect to any claim or cause of action asserted by the State, the Settling Respondent shall bear the burden of proving that the claim or cause of action, or any part thereof, is attributable to Existing Contamination.

8.4 Nothing in this Section shall change the status or fundamental liability of the Performing Party as a "Responsible Party" as defined in the Remediation Regulations with respect to any and all contamination attributable to the Existing Contamination.

8.5 Nothing in the Agreement is intended as a release or covenant not to sue for any claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which the State may have against any corporation or other entity not a party to this Agreement, except for successors and assigns as defined in Section X.

8.6 Nothing in this Agreement shall in any way restrict or limit the nature or scope of response actions not covered by this Agreement which may be taken or be required by the State in exercising its authority under State or Federal law.

8.7 Nothing in this Agreement is intended to limit the right of the State to undertake future response actions at the Property, as defined in the Remediation Regulations or to seek to compel parties other than the Settling Respondent to perform or pay for response actions at the Property.

## IX. SETTLING RESPONDENT'S COVENANT NOT TO SUE

9.1 In consideration of Section VII (State of Rhode Island's Covenant Not to Sue), the Settling Respondent, on its behalf and its successors and assigns, hereby covenants not to sue and not to assert any claims or causes of action against the State, its authorized officers, employees, or representatives with respect to this Agreement and the remediation activities required herein, including but not limited to, any claims arising out of response activities at the Property, and any claims based on the State's oversight of such activities or approval of plans for such activities.

## X. PARTIES BOUND/TRANSFER OF COVENANT

10.1 This Agreement shall apply to and be binding upon the State, shall apply to and be binding on the Settling Respondent, its officers, directors, employees, and agents, and assignees, and shall apply to and be binding upon the Performing Party. Each signatory of a Party to this Agreement represents that he or she is fully authorized to enter into the terms and conditions of this Agreement and to legally bind such Party. Notwithstanding any other provisions of this Agreement, all the rights, benefits and obligations conferred upon the Settling Respondent with regard to the areas subject to an ELUR, may be assigned or transferred without the consent of the State only in their entirety. The Settling Respondent

(and any successor or assign of the Settling Respondent) is only liable for its obligations hereunder arising during its period of ownership.

10.2 The rights, benefits and obligations conferred upon the Settling Respondent under this Agreement may be assigned or transferred in part only if the State, the Settling Respondent and the assignee agree otherwise and modify this Agreement in writing. In no case may a responsible party for the Existing Contamination at the Property, as defined in the Remediation Regulations, become a sublessee, assignee or transferee, or otherwise benefit from Section VII of the Agreement (State of Rhode Island's Covenant Not to Sue).

## XI. EFFECTIVE DATE

11.1 The effective date of this Agreement shall be the date upon which the State has fully executed this Agreement after review of and response to any public comments received.

## XII. CONTRIBUTION PROTECTION

12.1 With regard to claims for contribution against the Settling Respondent, the Parties hereto agree that the Settling Respondent is entitled to protection from contribution actions or claims for matters addressed in this Agreement as provided by Chapter 23-19.14 of the R.I. Gen. Laws, specifically Section 19.14-12. The matters addressed in this Agreement are all the response actions taken or to be taken and response costs or damages to natural resources incurred or to be incurred by the State or any other person for the Property with respect to Existing Contamination.

12.2 The Settling Respondent agrees that with respect to any suit or claim for contribution brought by it for matters related to this Agreement it will notify the State in writing no later than 60 days prior to the initiation of such suit or claim.

12.3 The Settling Respondent also agrees that with respect to any suit or claim for contribution brought against it for matters related to this Agreement it will notify the State in writing within 10 days of service of the complaint on them.

## XIII. PUBLIC COMMENT

13.1 The Agreement shall be subject to a fourteen (14) day public comment period, after which the State may modify or withdraw its consent to this Agreement if comments received disclose facts or considerations which indicate that this Agreement is inappropriate, improper or inadequate.

## XIV. NOTICES AND SUBMISSIONS

14.1 All notices and submissions required pursuant to the Agreement shall be forwarded by the Settling Respondent to:RIDEM Office of Waste Management
235 Promenade Street
Providence, RI 02908

and to

Charter International Oil Company
c/o John Ross, Esq.
4655 Salisbury Road, Suite 399
Jacksonville, FL 32256

Charter may designate a new recipient by written notice to Starwood and RIDEM.

Executed as a sealed instrument as of the latest date set forth below.

**State of Rhode Island**
**Department of Environmental Management**

By: 7-11-01

Leo Hellested, P.E. Chief Date
Office of Waste Management

Starwood Capital Group LLC

By: 6/27/01

Date

Charter International Oil Company

By: 6/19/01

Date

399026V5
5/29/01 9:32 AM

**WATERMAN ENGINEERING COMPANY**

PROPOSED PROPERTY DESCRIPTION – AP 7-9 Block 24 Lots 1 & 2

Northeast Petroleum Corporation
Tiverton, Rhode Island

That certain tract or parcel of land situated northerly of Carey's Lane and westerly of Main Road (R.I. Route 138) in the Town of Tiverton, Newport County and State of Rhode Island and Providence Plantations designated AP 7-9 Blk. 24 Lots 1 & 2. Said parcel is more particularly bounded and described as follows;

Beginning at a the intersection of the southerly street line of Carey's Lane with the westerly line of land now or formerly of the State of Rhode Island, being the former Old Colony RR right of way opposite to and 47.25' right of station 252+36.46 of the monumented baseline of the said Railroad right of way. Said point of beginning is also the southeasterly corner of the parcel herein-described;

thence proceeding N 89°48'28" W, by and with the said northerly street line of Carey's Lane, and passing through a granite bound, a distance of one hundred seventy seven (177'±) feet, more or less, to the mean high water line of the Mount Hope Bay / Sakonnet River;

thence proceeding in a general northerly direction, along the said mean high water line a distance of two thousand one hundred seventy (2,170'±') feet, more or less, to land now or formerly of the Town of Tiverton;

thence proceeding N 88°38'13" E, bounded easterly by the said Town land a distance of two hundred fifty (250'±) feet, more or less, to the said State land;

thence proceeding S 12°14'27" E, a distance of one hundred fifty and 41/100 (150.41') feet to a point of curvature opposite to and 47.25' right of baseline station PC 236+32.80;

thence proceeding southerly along the arc of a curve tangent to the previous course, deflecting to the right, having a central angle of 10°06'20" an a radius of 5,682.42 an arc distance of one thousand two and 24/100 (1,002.24') feet to a point of tangency opposite to and 47.25' right of baseline station PT 246+43.36;

thence proceeding S 02°08'07" E, tangent to the previous curve, a distance of five hundred ninety three and 10/100 (593.10') feet to the point and place of beginning. The last three herein described courses run by and with the said westerly line of the former Old Colony RR right of way and are bounded easterly by the said State land.

The above-described parcel contains 476,930 square feet, more or less (10.95 Acres ±) of land.

**WATERMAN ENGINEERING COMPANY**

PROPOSED PROPERTY DESCRIPTION – AP 7-9 Block 51 Lots 1 & 2

Northeast Petroleum Corporation
Tiverton, Rhode Island

That certain tract or parcel of land situated northerly of Carey's Lane and westerly of Old Post Road in the Town of Tiverton, Newport County and State of Rhode Island and Providence Plantations designated AP 7-9 Blk.51 Lots 1 & 2. Said parcel is more particularly bounded and described as follows;

Beginning at a the intersection of the southerly street line of Carey's Lane with the easterly line of land now or formerly of the State of Rhode Island, being the former Old Colony RR right of way opposite to and 35.25' left of station 252+39.82 of the monumented baseline of the said Railroad right of way. Said point of beginning is also the southwesterly corner of the parcel herein-described;

thence proceeding N 02°08'07" W, a distance of five hundred ninety six and 46/100 (596.46') feet to a point of tangency opposite to and 35.25' left of baseline station PT 246+43.36;

thence continuing N 02°08'07" W, a distance of ninety two and 00/100 (92.00') feet, to a corner;

thence proceeding N 89°43'55" E, a distance of thirty and 02/100 (30.02') feet to a corner;

thence proceeding N 02°08'07" W, a distance of one hundred sixty one and 93/100 (161.93') feet to an angle point;

thence proceeding N 10°01'05" W, a distance of eight hundred ninety nine and 23/100 (899.23') feet to a corner of a stone wall at the southwesterly corner of land now or formerly of Jason and William Reynolds and the northwesterly corner of the parcel herein described. The last five herein-described courses run by and with the said easterly right of way line of the former Old Colony RR and are bounded westerly by the said State land;

thence proceeding N 88°38'13" E, bounded northerly in part by the said Reynolds land, in part by Olympia Avenue and in part by land now or formerly of Kenneth D. and Kathleen A. Valancourt, a distance of three hundred forty one and 87/100 (341.87') feet to a drill hole;

thence proceeding N 89°53'22" E, bounded northerly in part by Oregon Avenue and in part by land now or formerly of Barbara A. Angelone, a distance of one hundred fourteen and 61/100 (114.61') feet to a drill hole;

thence proceeding N 82°53'40" E, a distance of thirteen and 96/100 (13.96') feet to a drill hole;

thence proceeding N 89°47'12" E, a distance of one hundred fifty three and 55/100 (153.55') feet to an iron pipe. The last two herein-described courses are bounded northerly by the said Angelone land;

thence proceeding N 89°46'40" E, bounded northerly in part by Miles Avenue and in part by land

**WATERMAN ENGINEERING COMPANY**

PROPOSED PROPERTY DESCRIPTION – AP 7-9 Block 51 Lots 1 & 2

Northeast Petroleum Corporation
Tiverton, Rhode Island

now or formerly of Donald J. and Tounglan N. Katyl, a distance of forty six and 64/100 (46.64') feet to a drill hole;

thence proceeding N 88°38'17" E, bounded northerly in part by the said Katyl land and in part by land now or formerly of Dale A. Brown and Patricia K. Petty, a distance of one hundred ninety three and 01/100 (193.01') feet to a brass plug;

thence proceeding N 89°43'06" E, bounded northerly by land now or formerly of John Hardy and Velma L. Fisher, a distance of one hundred twenty and 26/100 (120.26') feet to a brass plug;

thence proceeding N 88°57'12" E, bounded northerly by land now or formerly of Douglas L. and Makiko K. Hardy, a distance of one hundred seventy one and 75/100 (171.75') feet to an angle point in the stone wall;

thence proceeding S 05°03'17" E, along the said stone wall, bounded northerly by the said Hardy land, a distance of five and 05/100 (5.05') feet to a corner of the stone wall at the northwesterly corner of land now or formerly of Mary A. Ferris;

thence proceeding S 00°40'43" E, bounded easterly by the said Ferris land, a distance of one hundred seventy nine and 43/100 (179.43') feet to a corner of the said stone wall;

thence proceeding S 74°49'26" E, bounded northerly in part by the said Ferris land and in part by land now or formerly of Arthur A. and Evelyn Medieros, a distance of three hundred seventy eight and 15/100 (378.15') feet to a drill hole in the westerly street line of Old Post Road marking the southeasterly corner of the said Medieros land and the northeasterly corner of the parcel herein-described. The last eleven herein-described courses run by and with the said stone wall;

thence proceeding S 31°31'51" W, a distance of three hundred four and 40/100 (304.40') feet to an angle point;

thence proceeding S 20°15'26" W, a distance of two hundred thirty eight and 63/100 (238.63') feet to an angle point;

thence proceeding S 15°20'38" W, a distance of three hundred six and 72/100 (306.72') feet to a drill hole;

thence proceeding S 12°53'59" W, a distance of one hundred eighty one and 80/100 (181.80') feet to a copper bolt;

thence proceeding S 14°10'05" E, a distance of one hundred eighty six and 75/100 (186.75') feet to an angle point;

**WATERMAN ENGINEERING COMPANY**

PROPOSED PROPERTY DESCRIPTION – AP 7-9 Block 51 Lots 1 & 2

Northeast Petroleum Corporation
Tiverton, Rhode Island

thence proceeding S 41°58'05" E, a distance of four hundred fifty three and 87/100 (453.87') feet to the said northerly street line of Carey's Lane and the southeasterly corner of the parcel herein-described. The last six herein-described courses run by and with the said westerly street line of Old Post Road;

thence proceeding N 89°48'28" W, by and with the said northerly street line of Carey's lane a distance of seventy two and 30/100 (72.30') feet to the southeasterly corner of land now or formerly of the North Tiverton Fire District;

thence proceeding N 31°48'47" W, a distance of thirty five and 38/100 (35.38') feet to a corner;

thence proceeding N 89°48'28" W, a distance of twenty six and 25/100 (26.25') feet to a corner;

thence proceeding S 00°11'32" W, a distance of thirty and 00/100 (30.00') feet to the said northerly street line of Carey's Lane and the southwesterly corner of the said North Tiverton Fire District. The last three herein-described courses are bounded westerly, southerly and easterly by the said Fire District land;

thence proceeding N 89°48'28" W, by and with the said northerly street line of Careys Lane, a distance of one thousand two hundred thirty and 97/100 (1,230.97') feet to the point and place of beginning.

The above-described parcel contains 2,052,832 square feet (47.126 Acres) of land.

**WATERMAN ENGINEERING COMPANY**

PROPOSED PROPERTY DESCRIPTION – AP 7-8 Block 54 Lot 16

Northeast Petroleum Corporation
Tiverton, Rhode Island

That certain tract or parcel of land situated southerly Carey's Lane in the Town of Tiverton, Newport County and State of Rhode Island and Providence Plantations designated as AP 7-8 Blk. 54 Lot 16. Said parcel is more particularly bounded and described as follows;

Beginning at a point on the westerly line of land now or formerly of the State of Rhode Island, being the former Old Colony RR right of way opposite to and 47.25' right of station 263+57.83 of the monumented baseline of the said Railroad right of way. Said point of beginning is also the northeasterly corner of land now or formerly of Anthony J. & Marilyn A. Abraham and the southeasterly corner of the parcel herein-described;

thence proceeding S 87°51'53" W, bounded southerly in part by the said Abraham land, in part by Poplar Drive, part by Riverside Drive and in part by land of unknown ownership, a distance of four hundred sixty four (464'±) feet, more or less to the mean high-water line of the Mount Hope Bay / Sakonnet River;

thence proceeding in a general northerly direction by and with the said mean high-water line of the Mount Hope Bay/Sakonnet River, a distance of one thousand three hundred fifty (1,350'±) feet, more or less to the southerly street line of Carey's Lane;

thence proceeding S 89°48'28" E, by and with the said southerly street line of Carey's Lane, a distance of two hundred ninety seven (297'±) feet, more or less to the aforementioned State of Rhode Island Land and the easterly right of way of the former Bay Colony RR;

thence proceeding S 02°08'07" E, bounded easterly by the said State land and by and with the said former RR right of way a distance of one thousand eighty eight and 34/100 (1,088.34') to the point and place of beginning.

The above-described parcel contains 425, 852 square feet, more or less (9.78 Acres ±) of land.

**WATERMAN ENGINEERING COMPANY**

PROPOSED PROPERTY DESCRIPTION – AP 1-13 Block 94 Lot 191A

Northeast Petroleum Corporation
Tiverton, Rhode Island

thence proceeding N 89°50'47" E, by and with the said stone wall, a distance of seventy five and 03/100 (75.03') feet to an angle point;

thence proceeding N 87°41'17" E, by and with the said stone wall, a distance of seventy four and 09/100 (74.09') feet to an angle point;

thence proceeding N 89°58'59" E, by and with the said stone wall, a distance of one hundred seventy and 46/100 (170.46') feet to an angle point;

thence proceeding N 89°34'24" E, by and with the said stone wall, a distance of one hundred fifty four and 60/100 (154.60') feet to the westerly face of the stone wall bounding the Hambly Family Cemetery (R.I. Historical Cemetery #41). The last six herein-described courses are bounded northerly by the said Bouchard Land;

thence proceeding S 05°24'41" E, by and with the said westerly face of the stone wall, bounded easterly by the said Cemetery a distance of fifty one and 20/100 (51.20') feet to the southwesterly corner of the said Cemetery;

thence proceeding N 87°52'59" E, partly by and with the southerly face of the stone wall, bounded northerly in part by the said Cemetery and in part by the aforesaid Bouchard land a distance of two hundred three and 99/100 (203.99') feet to land now or formerly of John W. Douglas, Jr. and the northeasterly corner of the parcel herein-described;

thence proceeding S 00°02'35" W, a distance of one hundred seventy six and 16/100 (176.16') feet to a corner;

thence proceeding S 89°57'25" E, a distance of twenty and 00/100 (20.00') feet to a corner;

thence proceeding S 00°02'35" W, a distance of one hundred ten and 00/100 (110.00') feet to a corner;

thence proceeding N 89°57'25" W, a distance of twenty and 00/100 (20.00') feet to a corner;

thence proceeding S 00°02'35" W, a distance of one hundred seventy six and 18/100 (176.18') feet to the aforementioned northerly street line of Souza Road, the southwesterly corner of said Douglas land and the southeasterly corner of the parcel herein described. The last five herein-described courses are bounded easterly by the said Douglas Land;

thence proceeding S 88°32'41" W, a distance of one hundred thirty one and 72/100 (131.72') feet to an angle point;

**WATERMAN ENGINEERING COMPANY**

PROPOSED PROPERTY DESCRIPTION – AP 1-13 Block 94 Lot 191A

Northeast Petroleum Corporation
Tiverton, Rhode Island

thence proceeding S 89°48'33" W, a distance of ninety one and 33/100 (91.33') feet to an angle point;

thence proceeding S 88°48'43" W, a distance of three hundred fifty five and 10/100 (355.10') feet to an angle point;

thence proceeding S 89°35'06" W, a distance of one ninety and 80/100 (190.80') feet to the aforementioned easterly highway line of Main Street and the point and place of beginning. The last four herein-described courses run by and with the said northerly street line of Souza Road.

The above-described parcel contains 422, 273 square feet (9.694 Acres) of land.

**WATERMAN ENGINEERING COMPANY**

PROPOSED PROPERTY DESCRIPTION – AP 7-8 Block 57 Lots 22, 23 & 29A

Northeast Petroleum Corporation
Tiverton, Rhode Island

That certain tract or parcel of land situated southerly of Carey's Lane and westerly of Main Road (R.I. Route 138) in the Town of Tiverton, Newport County and State of Rhode Island and Providence Plantations designated as AP 7-8 Blk. 57 Lots 22, 23 & 29A. Said parcel is more particularly bounded and described as follows;

Beginning at a point in the easterly line of land now or formerly of the State of Rhode Island, being the former Old Colony RR right of way opposite to and 35.25' left of station 263+66.89 of the monumented baseline of the said Railroad right of way. Said point of beginning is also the northwesterly corner of land now or formerly of Sakonnet Bay, L.L.C. and the southwesterly corner of the parcel herein-described;

thence proceeding N 02°08'07" W, bounded westerly by the said State land, by and with the said easterly RR right of way line, a distance of one thousand ninety four and 04/100 (1,094.04') feet to the southerly street line of Carey's Lane and the northwesterly corner of the parcel herein-described;

thence proceeding S 89°48'28" E, by and with the said southerly street line of Carey's Lane, a distance of one thousand sixty two and 12/100 (1,062.12') feet to the northwesterly corner of land now or formerly of Edward J. and Helen Dopart and the northeasterly corner of the parcel herein-described;

thence proceeding S 05°01'18" E, bounded easterly by the said Dopart land a distance of two hundred seventy five and 54/100 (275.54') to land now or formerly of J. Craig and Suzanne Lilly and the southwesterly corner of the said Dopart land;

thence proceeding N 89°47'44" W, a distance of seventy four and 60/100 (74.60') feet to a stone wall and the northwesterly corner of the said Lilly land;

thence proceeding S 12°40'19" E, along the said stone wall, a distance of one hundred ninety five and 71/100 (195.71') feet to an angle point;

thence proceeding N 85°19'45" E, a distance of twenty one and 16/100 (21.16') feet to an angle point;

thence proceeding S 89°39'45" E, a distance of seventy seven and 98/100 (77.98') feet to an angle point. The last five herein-described courses are bounded are bounded southerly, easterly and northerly by said Lilly land;

thence proceeding N 87°59'30" E, bounded northerly in part by said Lilly land and in part by land now or formerly of Charles W. Santos and Patricia Athanas a distance of one hundred two and 93/100 (102.93') feet to an angle point;

**WATERMAN ENGINEERING COMPANY**

PROPOSED PROPERTY DESCRIPTION – AP 7-8 Block 57 Lots 22, 23 & 29A

Northeast Petroleum Corporation
Tiverton, Rhode Island

thence proceeding N 87°30'33" E, a distance of eighty nine and 30/100 (89.30') feet to an angle point;

thence proceeding N 89°58'52" E, partly along a stone wall, a distance of one hundred six and 09/100 (106.09') feet to an angle point;

thence proceeding N 89°50'57" E, along the said stone wall, a distance of fifty six and 79/100 (56.79') feet to an angle point;

thence proceeding N 89°19'54" E, along the said stone wall, a distance of sixty six and 19/100 (66.19') feet to the face of a stone pillar, the westerly street line of Main Road (R.I. Route 138) and the southeasterly corner of the said Santos and Athanas land. The last four herein-described courses are bounded northerly by the said Santos and Athanas land;

thence proceeding S 04°01'32" W, a distance of twenty and 71/100 (20.71') feet to an angle point;

thence proceeding S 10°06'58" W, a distance of fifty nine and 79/100 (59.79') feet to an angle point;

thence proceeding S 12°34'16" W, a distance of one hundred sixty two and 89/100 (162.89') feet to the northwesterly corner of land now or formerly of John J. and Dawn M. Vaillancourt. The last three herein-described courses run by and with the easterly face of a stone and the westerly street line of said Main Road (R.I. Route 138);

thence proceeding N 85°39'37" W, bounded southerly by said the Vaillancourt land, a distance of one hundred twenty four and 72/100 (124.72') feet to an angle point;

thence proceeding S 88°08'47" W, bounded southerly in part by the said Vaillancourt land and in part by land now or formerly of Henry M. Maccarone and Maria Rezendes, a distance of one hundred eighty four and 69/100 (184.69') feet to an angle point;

thence proceeding S 86°27'44" W, a distance of thirty six and 55/100 (36.55') feet to an angle point;

thence proceeding N 89°48'05" W, a distance of ninety two and 49/100 (92.49') feet to an iron pin in a stone wall at the northwesterly corner of the said Maccarone and Rezendes land. The last two herein-described courses are bounded southerly by the said Maccarone and Rezendes land;

thence proceeding S 01°55'43" E, a distance of one hundred twenty nine and 79/100 (129.79') feet to a drill hole in the said stone wall;

thence proceeding S 02°36'42" E, a distance of one hundred sixty nine and 32/100 (169.32') feet to a corner of the said stone wall, the southwesterly corner of the said Maccarone and Rezendes land

**WATERMAN ENGINEERING COMPANY**

PROPOSED PROPERTY DESCRIPTION – AP 7-8 Block 57 Lots 22, 23 & 29A

Northeast Petroleum Corporation
Tiverton, Rhode Island

at land now or formerly of James E. and Mertis E. Negus. The last two herein-described courses run by and with the said stone wall and are bounded easterly by the said Maccarone and Rezendes land;

thence proceeding S 87°34'22" W, partly along the said stone wall and bounded southerly in part by the said Negus land and in part by land now or formerly of Sakonnet Bay, LLC, a distance of fifty six hundred eighty six and 26/100 (686.26') feet to an angle point;

thence proceeding S 87°21'36" W, a distance of seventy four and 40/100 (74.40') feet to an angle point;

thence proceeding S 88°15'45" W, a distance of eighty four and 30/100 (84.30') feet to an angle point;

thence proceeding S 87°49'38" W, a distance of one hundred eight and 76/100 (108.76') feet to an angle point;

thence proceeding S 87°45'31" W, partly along a stone wall, a distance of one hundred eighty six and 53/100 (186.53') feet to the said easterly line of the State of Rhode Island land and the point and place of beginning. The last three herein-described courses are bounded southerly by the said Sakonnet Bay, LLC land.

The above-described parcel contains 1,242,458 square feet, more or less (28.523 Acres) of land.

**Former Northeast Petroleum Terminal**
**Tiverton, Rhode Island**

Major documents pertaining to the environmental conditions at the Property

- Consent Agreement between Charter International Oil Company and RIDEM, dated March 25, 1992.
- *Pre-Remedial Characterization Report* (NES), October 1992.
- *Pre-Remedial Soil Characterization Plan, Addendum No. 1*(NES), July 1993.
- *Remedial Work Plan, Revision 1* (NES), July 1993.
- *Draft Remedial Work Plan, Revision 2* (NES), September 1993.
- Letter from P. Therrien (RIDEM) to R. McPeak (NES) dated November 27, 1993 regarding comments on the Draft Remedial Work Plan Revision 2.
- *Data Tables and Site Maps, Former Northeast Petroleum Terminal, Tiverton, Rhode Island* (NES), dated July 16, 1997.
- Letter from J. Ross (Charter) to G. Fine (RIDEM) dated July 16, 1997 regarding Site Closure Issues.
- Letter from J. Ross (Charter) to G. Fine (RIDEM) dated August 5, 1997 regarding the shore and Texaco shore areas with attachments.
- Letter from J. Ross (Charter) to G. Fine (RIDEM) dated August 7, 1997 regarding omissions from the August 5, 1997 submittal with attachments.
- Letter from A. Pacchiana (NES, Inc.) to G. Fine (RIDEM) regarding Data Tables and Site Maps July 16, 1997with attachments dated August 15, 1997.
- Letter from J. Ross (Spelling Entertainment) to G. Fine (RIDEM) regarding the revised agreement with respect to site TPH criteria and compliance sampling dated October 15, 1997.
- Letter from G. Fine (RIDEM) to J. Ross (Charter) dated October 29, 1997 regarding Application for Assent Modification.
- Letter from J. Ross (Charter) to G. Fine (RIDEM) dated October 30, 1997 regarding Shore Remedial Action.
- Letter from J. Fester (RIDEM) to J. Ross (Charter) dated November 7, 1997 enclosing Order of Approval dated November 7, 1997.
- Letter from J. Ross (Charter) to G. Fine (RIDEM) dated February 26, 1998 regarding the on-site laboratory.
- Letter from A. Pacchiana (NES, Inc.) to K. Owens (RIDEM) with attachments regarding TPH Closure Documents for the Northeast Parcel and the Air Force Parcel dated March 3, 1998.

- Letter from A. Pacchiana (NES, Inc.) to G. Fine (RIDEM) with attachments regarding TPH Closure Documents for the Pacific Parcel, Souza Road Parcel, Texaco Shore Parcel and the Town of Tiverton Parcel, May 12, 1998.

- Letter from R. McPeak (NES, Inc.) to G. Fine (RIDEM) dated August 27, 1998 regarding TPH Closure Documents for the Shore Area Parcel.

- Letter from R. McPeak (NES, Inc.) G. Fine (RIDEM) dated August 28, 1998 regarding Treatment Cell Closure Report.

- Letter from R. McPeak (NES, Inc.) G. Fine (RIDEM) dated October 13, 1998 regarding Treatment Cell Closure Report Addendum.

- Letter from R. McPeak (NES, Inc.) to G. Fine (RIDEM) regarding Groundwater Sampling July 1998 with attachments dated October 13, 1998.

- Northeast Parcel Closure Report Addendum for NEPR-14 (NES), December 8, 1998.

- Letter from T. O'Connor (VHB) to G. Fine (RIDEM) dated May 5, 1999 regarding Groundwater Monitoring.

- Letter from T. Crawford (Charter) to G. Fine (RIDEM) dated May 7, 1999 regarding the on-site laboratory.

- Letter from T. O'Connor (VHB) to G. Fine (RIDEM) dated June 24, 1999 regarding Groundwater Monitoring.

- Letter from W. Angell (RIDEM) to J. Ross (Charter) dated July 26, 1999 regarding groundwater monitoring.

- Letter from W. Angell (RIDEM) to J. Ross (Charter) dated July 26, 1999 regarding the on-site laboratory.

- Letter from T. O'Connor (VHB) to W. Angell (RIDEM) dated November 10, 1999, with attachments regarding the railroad right-of-way.

- NES Inc. *Groundwater Data and Site Maps, Former Northeast Petroleum Terminal, Tiverton, Rhode Island,* No Date.