# EXHIBIT H

STATE OF RHODE ISLAND
CENTER OF ENVIRONMENTAL MANAGEMENT
DIVISION OF GROUNDWATER AND FRESHWATER WETLANDS
DIVISION OF WATER RESOURCES

RE: CHARTER INTERNATIONAL OIL COMPANY

CONSENT AGREEMENT

A. INTRODUCTION

1. This Consent Agreement ("Agreement") is entered into by and between the State of Rhode Island acting by and through the Department of Environmental Management, Groundwater Section ("DEM"), with offices located at 291 Promenade Street, Providence, Rhode Island, 02908, and Charter International Oil Company ("Charter"), a Texas corporation registered to do business in the State of Rhode Island, having a registered agent for service of process at Smith and Hulsey, 1800 Florida National Bank Tower, Jacksonville, Florida 32202 and a principal business address at One East Fourth Street, Cincinnati, Ohio 45202.

2. This Agreement is entered into in accordance with Chapters 46-12, 42-17.1 and 42-17.6 of the Rhode Island General Laws.

B. FINDINGS OF FACT

1. Charter is the owner of certain parcels of real property located in the Town of Tiverton, Rhode Island, on the eastern shore of the Sakonnet River with an address of 995 Main Road and designated as Tiverton Tax Assessor's Plat 24, Lot 1; Plat 51, Lot 21; Plat 54, Lot 2/16/22; Plat 57, Lot 23; and Plat 94, Lot

29A/191A (collectively referred to as the "Site").

2. The Site is an inactive petroleum storage facility characterized by the presence of petroleum and/or petroleum products in the soil and groundwater subjacent thereto.

3. Charter has submitted to DEM a conceptual plan, dated February 13, 1991, prepared by GZA GeoEnvironmental, Inc. ("GZA") and entitled Remedial Work Plan, Former NEP Terminal, Tiverton, RI-Revision 2 (the "GZA Plan") whereby Charter proposes to decommission the storage facility at the Site by removing certain improvements and remediating the soil and groundwater contamination.

4. DEM has reviewed and approved the conceptual GZA Plan, with the condition that all pollutant concentrations at the Site be reduced to the levels specified in "Exhibit A," attached hereto, and provided that the GZA Plan is implemented in accordance with the schedule set forth in "Exhibit B", attached hereto.

5. The Rhode Island Coastal Resources Management Council ("CRMC") has issued Permit Nos. 90-9-1, 90-9-2, and 90-11-7 authorizing Charter to remove petroleum products, storage facilities and other improvements from the Site.

ACCORDINGLY, based on the facts set forth above, the Director of the Department of Environmental Management (the "Director"), in lieu of issuing a Notice of Violation and with the agreement and consent of Charter, enters into this Agreement

for the purpose of remediating conditions arising from the release of petroleum products which may have spilled or leaked into the waters of the state and which, if not controlled and remediated, may migrate off site.

C. AGREEMENT

Finding it in the best interest of the public to effect a timely resolution of this matter, DEM and Charter hereby agree as follows:

Jurisdiction

1. Charter is subject to the provisions of R.I. Gen. Laws chapter 46-12, as amended, and the Oil Pollution Control Rules and Regulations, 1990, as amended.

2. DEM has jurisdiction over the subject matter of this agreement and has personal jurisdiction over Charter.

3. Charter agrees that it will not contest or appeal DEM's jurisdiction over the subject matter of this action in any proceeding related to the facts ~~set forth above.~~

4. The provisions of this Agreement shall be binding on and inure to the benefit of the parties hereto and their respective agents, servants, employees, independent contractors, successors in the interest and assigns.

Remediation

5. Approval of GZA Plan: DEM hereby approves the GZA Plan, provided that it is implemented and carried out so as to reduce the pollutant concentrations at the site to the levels prescribed

in the remediation criteria set forth in Exhibit A.

6. Implementation of GZA Plan: Charter agrees to implement the GZA Plan pursuant to the terms and requirements of the schedule of activities attached hereto as Exhibit B and subject to the terms of this Agreement and any amendments thereto.

7. Off-Site Contamination: In the event that off-site soil contamination and/or groundwater contamination is discovered, which contamination DEM has reason to believe occurred as a result of any activities conducted at the Site at any time, whether by Charter or any other person or entity, Charter shall, within sixty (60) days of any such discovery, submit an "Off-site Remediation Proposal" to DEM for its approval. Said Off-site Remediation Proposal shall assess the extent and nature of the off-site contamination and propose remediative action and standards with respect thereto. Upon approval by DEM, Charter shall implement any such Off-Site Remediation Proposal. In the event that Charter and DEM fail to agree upon a remediation plan with respect to such off-site contamination, this paragraph shall not in any way limit the exercise of DEM's statutory and/or regulatory authority in regard to such contamination.

8. Notification: Charter or its representative shall notify the DEM Groundwater Section at least 48 hours prior to any Site activity so that a DEM representative may, at its discretion, be present at the Site.

9. Progress Reports: Charter will submit to DEM quarterly progress reports which shall include information on all

monitoring and remedial activities.

10. Air Pollution Control: Charter shall comply with all laws and regulations of the Division of Air and Hazardous Materials during remediation.

11. CRMC Approval: Charter agrees to submit a copy of the DEM approved GZA Plan to CRMC for its approval prior to implementing the GZA Plan.

12. Water Quality Certification: If CRMC requires that a Water Quality Certification be issued by DEM as a pre-requisite to approval of the GZA Plan, DEM agrees to issue such certification based upon the soil and groundwater contamination standards contained in Exhibit A. Any Water Quality Certification issued to CRMC by DEM based on the standards in Exhibit A shall be conditioned upon Charter's implementation of, compliance with and fulfillment of the GZA Plan and the terms of this Agreement. DEM reserves the right to attach reasonable additional conditions to any Water Quality Certification issued to CRMC with respect to the GZA Plan relating to matters not addressed by the soil and groundwater contamination standards referenced above. Charter shall have all rights provided by law or regulations with respect to any such action by DEM.

13. Effect of Compliance: Compliance with this Agreement does not relieve Charter its obligation to comply with any and all other laws rules or regulations administered by DEM or any other federal, state or municipal governmental entity.

14. Conflict of Terms: In the event that the terms of this

Agreement establish groundwater or remediation requirements or standards which conflict with existing regulations administered by DEM, the terms of this Agreement shall control.

15. New Standards: In the event that DEM adopts, or is required by the federal government to enforce, soil and/or groundwater contamination standards that are more stringent than existing standards or which conflict with the terms of this Agreement, then the new standards shall control where appropriate for and applicable to the remediation of the Site. When necessary to facilitate compliance with such standards, reasonable extensions of time for the completion of additional remediation work shall be granted upon written request to the Director. The reasonableness of the application of such new standards to those areas of the Site where remediation has been completed as of the effective date of the new standards may be raised by Charter as a defense in any action by DEM to enforce compliance with this Agreement.

16. No Waiver of Authority: This Agreement shall not limit the authority of DEM to initiate any action against Charter or any other person in regard to conditions existing at or emanating from the Site upon a determination by the Director that: (a) such conditions constitute an immediate threat to the public health and/or environment; (b) such conditions were previously unknown to DEM and thus are not being adequately addressed under the GZA Plan, any amendment thereto or any approved Off-site Remediation Proposal implemented in accordance with Paragraph C.7., above; or

(c) Charter has failed to implement, comply with or fulfill the terms of this Agreement. Conditions existing at or emanating from the Site shall be deemed to be "previously unknown to DEM" unless such information is contained in the GZA Plan or has been disclosed to DEM in a written document filed with DEM by Charter or its predecessor, Northeast Petroleum ("NEP"), prior to the effective date of the Agreement.

17. Final Administrative Action: This Agreement shall have the full force and effect of a final administrative decision and order under the Administrative Procedures Act, R.I. Gen. Laws chapter 42-35, from which no appeal has been taken. Accordingly, this Agreement shall be fully enforceable in the Superior Court of the State of Rhode Island.

18. Title Warranties and Authorization: Charter represents that it is the owner of the Site in fee simple, and that the execution and delivery of this Agreement have been authorized by the completion of any and all corporate actions necessary to render the Agreement binding upon Charter, its successors in interest and assigns.

19. Successor Disclosure: Charter shall disclose this Agreement, the terms of thereof and the fact that the Site was used as a storage facility for petroleum products to any person or entity to which ownership or any other interest in the Site is transferred. Charter shall record an original copy of this Agreement in the Land Evidence Records of the Town of Tiverton, Rhode Island, and the covenants and agreements contained herein

shall be deemed to be covenants running with the land and binding upon Charter and its successors in title, until such time as DEM or its successor agency shall execute and record a release of such covenants and agreements.

20. Release: Upon completion of remediation to the levels described in Exhibit A, DEM shall cause to be executed and recorded in the Land Evidence Records of the Town of Tiverton, Rhode Island, a release of all such covenants and agreements. The recording of such a release shall cause this Agreement to expire and be void thereafter.

21. DEM Warranties: DEM makes no representations or warranties concerning the GZA Plan or any other remediation plan called for in this Agreement or concerning the suitability of the Site for any use upon completion of any remediation plan.

22. Access to Off-Site Areas: The parties to this Agreement recognize and agree that remediation of the Site and all off-site areas may be contingent upon Charter's obtaining access to sites that Charter does not own and over which Charter does not have possession or control. Charter shall use its best efforts to obtain any and all "Site Access Agreements" necessary to complete the remediation required by this Agreement. If Charter cannot obtain such Site Access Agreements, DEM agrees to exercise its authority, wherever possible, to secure access to the sites for Charter, its consultants, and agents.

23. Delay in Compliance: Any failure of Charter to comply with the terms and conditions set forth in this Agreement as a

result of delay due to causes beyond the reasonable control of Charter, including, but not limited to, delay in obtaining necessary permits or approvals when Charter has taken all steps necessary to obtain such permits or approvals, or delay in obtaining legal access to property when Charter has taken all reasonable steps necessary to obtain such access, shall not be construed to be a breach or violation of this Agreement, provided that Charter shall notify DEM in writing within five (5) working days of Charter's obtaining knowledge of such delay. Such notice shall clearly indicate that Charter is providing notice pursuant to this paragraph and shall describe: (a) the obligation affected by the delay, (b) the specific occurrence which caused the delay; and (c) the duration of the delay expected to result from such occurrence. Financial inability to perform any obligation under this Agreement shall not be considered a cause for delay that is beyond the reasonable control of Charter.

24. Extension of Time: The time for performance of any activity delayed by circumstances beyond the reasonable control of Charter shall be extended by agreement of the parties for a reasonable period of time, taking into consideration the nature of delay. Charter shall use its best efforts to anticipate and minimize or avoid delay or circumstances which might result in the delay or prevention of Charter's performance of its obligations under this Agreement.

25. Effect of Delay: The effect of any such delay encountered by Charter shall be narrowly construed so as to

require Charter to continue to perform all other obligations under this agreement to the fullest extent possible.

26. Failure to Comply: In the event that Charter fails to comply with any provisions of this Agreement, the Director may issue the appropriate notice and orders and assess the appropriate penalties for each violation and for each and every day Charter remains in violation of this Agreement. Any administrative action taken by the Director pursuant to this paragraph, including, but not limited to, the assessment of penalties, shall be considered a final administrative decision and order of the Director and shall be enforceable in Superior Court as part of any action taken to enforce the terms of this Agreement. Charter hereby waives all rights to an administrative hearing as to any administrative action taken by the Director pursuant to this paragraph.

27. Payment of Penalties: All penalties shall be paid to the Treasurer, State of Rhode Island, and be deposited into the Water and Air Protection Fund created pursuant to R.I. Gen. Laws section 42-17.1-2. The payment of an administrative penalty in accordance with this paragraph shall not preclude DEM from seeking any other appropriate remedy.

28. This agreement may be amended by mutual agreement of the parties in writing.

IN WITNESS WHEREOF the undersigned have caused these presents to be executed, each by its duly authorized agent.

CHARTER INTERNATIONAL
OIL COMPANY

By: [signature]

Title: President

STATE OF Ohio

COUNTY OF Hamilton

In Denver, on the 6th day of March 1991, before me personally appeared the aforesaid [signature], a duly authorized representative of the Charter International Oil Company, to me known and known by me to be the person executing the foregoing Consent Agreement, and he/she acknowledged said instrument executed by him/her to be his/her free act and deed and the free act and deed of said Charter International Oil Company.

[signature]
NOTARY PUBLIC
My commission expires:

LESLEY M. CONRADI, Attorney at Law
NOTARY PUBLIC - STATE OF OHIO
My Commission has no expiration date. Section 147.03 O.R.C.

STATE OF RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL
MANAGEMENT

Edward S. Szymanski, PE
Associate Director for
Water Resource

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In the City of Providence, on the 25th day of March, 1997 before me personally appeared the aforesaid Edward S. Szymanski, P.E., a duly authorized representative of the State of Rhode Island, Department of Environmental Management, to me known and known by me to be the person executing the foregoing Consent Agreement, and he acknowledged said instrument executed by him to be his free act and deed and the free act and deed of the State of Rhode Island, Department of Environmental Management.

NOTARY PUBLIC
My commission expires: June 9, 199?

## EXHIBIT A

Remedial Criteria for Restoration
Of Soils and Groundwater

| Contaminant | Maximum Contaminant Level |
|---|---|
| 1. Soils: | |
| BTEX* | 250 ug/kg |
| Petroleum Hydrocarbons | 50 mg/kg |
| Lead | 250 mg/kg** |
| 2. Groundwater: | |
| BTEX* | 250 ug/l*** |
| Petroleum Hydrocarbons | 50 mg/l |
| Volatile Organic Compounds ("VOC's") | 1 ppm*** |

(*) "BTEX" = Benzene, Toluene, Ethylbenzene and Xylene.

(**) Or consistent with levels established by the Rhode Island Department of Health or the Hazardous Materials Section of DEM.

(***) No individual compound shall exceed the established Maximum Contaminant Level.

0192W

EXHIBIT B.

Implementation Schedule

1. Within 30 days of the execution of the Agreement by both Charter and DEM, Charter shall:

(a) Submit a copy of the approved GZA Plan to the CRMC for its approval; and

(b) Begin implementation of those aspects of the approved GZA Plan that may be performed without CRMC approval, including: (i) detailed field screening of the shore area; and (ii) bench or laboratory scale bio-degradation evaluations.

2. Full implementation of the approved GZA remedial plan shall proceed consistent with the following:

(a) Upon completion of the bench scale evaluations and additional field screening work, and no later than 180 days from the date of execution of this agreement, Charter agrees to submit a detailed "Project Implementation Plan," which shall include but not limited to: any new analytical results; updated specification of the location and size of the bio-remediation treatment area; updated estimates of volume of soil to be moved and/or otherwise treated; final specification of treatment procedures, e.g. tilling frequency, etc. and final specific monitoring activities to be utilized to evaluate the effectiveness of the remedial activities and confirm final compliance after active treatment. The Project Implementation Plan shall also include specifications for erosion and stormwater control. A revised implementation schedule, including proposed progress reports, shall be included.

(b) DEM shall review the Project Implementation Plan to determine if the descriptions of the specific treatment processes to be employed at the site: (i) are consistent with the approved GZA Plan; (ii) are sufficient so as to provide reasonable expectations that the remedial clean-up standards specified in Exhibit A of this Consent Agreement will be achieved in a timely manner; and (iii) will result in the collection of sufficient data so as to allow for the evaluation of the efficacy of the remedial program. DEM reserves the right to include conditions on its approval consistent with above, which approval shall not be unreasonably withheld.

(c) Implementation activities shall begin no later than thirty (30) days following DEM's approval of there Project Implementation Plan and contingent on CRMC's approval, where applicable.

(d) Prior to making any modification to the procedures and activities approved in the Project Implementation Plan, Charter agrees to give DEM written notice and obtain DEM's written approval of the proposed change.

3. Completion of all the proposed soil and groundwater remediation in compliance with the terms of this Agreement shall occur within sixty (60) months of the execution of the Agreement by both Charter and DEM. In the event that DEM review and approval of the proposed Project Implementation Plan does not occur within sixty (60) days of its receipt by DEM, then Charter's time to complete the approved GZA Plan shall be extended by a period of time equal to the number of days beyond the sixty-day review period which are incurred.