# EXHIBIT Y

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

COASTAL RESOURCES MANAGEMENT COUNCIL ←
Oliver H. Stedman Government Center
4808 Tower Hill Road
Wakefield, R.I. 02879-1900
(401) 277-2476

995 Main Rd

# ASSENT

File Number: 92-8-39 Assent Number: B92-8-39

Meeting Date: February 23, 1993

Whereas, Charter International Oil Company
One East Fourth Street
of Cincinnati, OH 45202

has applied to the Coastal Resources Management Council for assent to: Construct and maintain long term biological site remediation project to reduce petroleum hydrocarbon contamination in soil at former Northeast Petroleum storage terminal; and hereby represents that they are the owner(s) of the riparian rights attached to the property involved and submitted plans of the work to be done.

Now, said Council, having fully considered said application in accordance with all the regulations as set forth in the Administrative Procedures Act does hereby authorize said applicant, subject to the provisions of Title 46, Chapter 23 of the General Laws of Rhode Island, 1956, as amended, and all laws which are or may be in force applicable thereto: Construct and maintain long term biological site remediation project to reduce petroleum hydrocarbon contamination in soil at former Northeast Petroleum storage terminal; located at former Texaco Tank Farm, Tiverton, RI; Plat 24, 51, 54, 57, 94, 113, 121, 160, and 192, lots 1, 2, 1, 16, 22, 23, 29A, 19A, 21N, 36, 70, 28 & 33; in accordance with said plans submitted to this Council and approved by this Council. All work being permitted must be completed on or before November 2, 1996, after which date this assent is null and void, (unless written application requesting an extension is received by CRMC sixty (60) days prior to expiration date).

Applicant agrees that as a condition to the granting of this assent, members of the Coastal Resources Management Council or its staff shall have access to applicant's property to make on-site inspections to insure compliance with the assent.

Licensee shall be fully and completely liable to State, and shall waive any claims against State for contribution or otherwise, and shall indemnify, defend, and save harmless State and its agencies, employees, officers, directors, and agents with respect to any and all liability, damages (including damages to land, aquatic life, and other natural resources), expenses, causes of action, suits, claims, costs (including testing, auditing, surveying, and investigating costs), fees (including attorneys' fees and costs), penalties

(civil and criminal), and response, cleanup, or remediation costs assessed against or imposed upon Licensee, State, or the Property, as a result of Licensee's control of the Property, or Licensee's use, disposal, transportation, generation and/or sale of Hazardous Substances or that of Licensee's employees, agents, assigns, sublicensees, contractors, subcontractors, permittees, or invitees.

Nothing in this assent shall be construed to impair the legal rights of this granting authority or of any person. By this assent the granting authority by no manner, shape, or form assumes any liability or responsibility implied, or in fact, for the stability or permanence of said project; nor by this assent is there any liability implied or in fact assumed or imposed on the granting authority. Further, the granting authority by its representatives or duly authorized agents shall have the right to inspect said project at all times including, but not limited to, the construction, completion, and all times thereafter.

This Assent is granted with the specific proviso that the construction authorized therein will be maintained in good condition by the owner thereof, his heirs, successors, or assigns for a period of fifty (50) years from the date thereof, after which time this permission shall terminate necessitating either complete removal or a new application.

Permits issued by the CRMC are issued for a finite period of time, confer no property rights, and are valid only with the conditions and stipulations under which they are granted. Permits imply no guarantee of renewal, and may be subject to denial, revocation, or modification.

A copy of the legal decision may be acquired by contacting the CRMC office in writing.

A copy of this Assent shall be kept on site during construction.

Application for future alteration of the shoreline or other construction or alteration within the CRMC jurisdiction shall be submitted to the CRMC for review prior to commencing such activity.

All applicable policies, prohibitions, and standards of the RICRMP shall be upheld.

All local, state or federal ordinances and regulations must be complied with.

Please be advised that as a further conditions of this Assent, it is hereby stipulated that you and/or your agents shall comply at all times with Federal and State Water Quality Standards and other State standards and regulations regarding water quality, and shall exercise such supervision over and control of these facilities to prevent the dumping or discarding or refuse, sanitary wastes and other pollutants in the tidal waters, either from vessels docked at said facilities or from land adjacent thereto.

No work that involves alteration to wetlands or waters of the United States, shall be done under this Assent until the required Federal Permit has been obtained.

Non-compliance with this assent shall result in legal action and/or revocation of this permit.

In Witness Whereof, said Coastal Resources Management Council have hereto set their hands and seal this second day of November in the year nineteen hundred ninety-three.

Grover J. Fugate, Executive Director
Coastal Resources Management Council

CAUTION:

**The limits of authorized work shall be only for that which was approved by the CRMC. Any activities or alterations in which deviate from the approved plans will require a separate application and review. If the information provided to the CRMC for this review is inaccurate or did not reveal all necessary information or data, then this permit may be found to be null and void. Plans for any future alteration of the shoreline or construction or alteration within the 200' zone of CRMC jurisdiction or in coastal waters must be submitted for review to the CRMC prior to commencing such activity.**

ATTENTION: ALL STRUCTURES IN THE TIDAL, COASTAL, OR NAVIGABLE WATERS OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS ARE SUBJECT TO:

1. The Superior Property Rights of the State of Rhode Island and Providence Plantations in the Submerged and Submersible Lands of the Coastal, Tidal, and Navigable Waters;

2. The Superior Navigation Servitude of the United States;

3. The Police Powers of the State of Rhode Island and the United States to regulate Structures in the Tidal, Coastal, or Navigable Waters.

THE SUBMERGED AND SUBMERSIBLE LANDS OF THE TIDAL, COASTAL, AND NAVIGABLE WATERS OF THE STATE ARE OWNED BY THE STATE AND HELD IN TRUST FOR THE PUBLIC. CONVEYANCE OF THESE LANDS IS ILLEGAL; TITLES PURPORTING TO TRANSFER SUCH LANDS ARE VOID. ASSENTS THAT INVOLVE THE FILLING OR USE OF THE STATES SUBMERGED LANDS ARE GRANTED WITH THE PROVISO THAT IT IS SUBJECT TO THE IMPOSITION OF A USAGE FEE TO BE ESTABLISHED BY THE COASTAL RESOURCES MANAGEMENT COUNCIL.

ADDITIONAL STIPULATIONS

A. For the purpose of this permit, the coastal feature shall be the coastal beach and the manmade timber bulkhead; and the inland edge of the coastal feature shall be the top of man made timber bulkhead.

B. The approved site plan shall be that entitled "Charter International Oil - Tiverton Terminal...Shore Area - Bioremediation Site Plan..." by I.E.S. services stamped received by the CRMC October 30, 1992.

C. As the proposed berm bordering the beach is partially existing and currently vegetated, to avoid unnecessary disturbance the impervious barrier shall be installed along the landward edge of the berm. In order to more fully control leaching of hydrocarbons and nutrients from the remediation site, the impervious barrier shall be extended to the Mean Low Water (MLW) elevation.

D. The proposed adjustments of the existing berm shall be performed in a manner which prevents tidal waters from entering the remediation site (i.e. as proposed, the berm shall be extended eastward to "close-off" the existing tidal inlet.

E. The berm shall be monitored at least monthly and immediately after any storm event which may threaten the berm. Where necessary, repairs to the berm shall be undertaken immediately. Failure to properly maintain the berm shall be considered a violation of this CRMC assent.

F. Immediately upon completion of bioremediation activities, the applicant shall contact CRMC staff to discuss remediation of the site. This shall include berm removal and restoration of the tidal inlet and grading to promote salt marsh establishment (salt marsh is currently developing at the site).

G. The applicant shall notify CRMC in writing at least two weeks in advance of the approximate date of the start of construction. This does not alleviate the applicant's responsibility to arrange appointments for any required pre-construction meeting.

Earthwork Stipulations

H. The standards and specifications set forth in the most recent RI Soil Erosion and Sediment Control Handbook (RISESCH) shall be strictly adhered to.

I. Excavation and grading shall be limited to the area approved. Excess earthwork beyond that authorized by this assent is not permitted.

J. There shall be no discharge or disposal of hazardous wastes or hazardous materials which may be associated with construction machinery, etc. on the site or in the waterway. All used oil, lubricants, construction chemicals, etc. shall be disposed of in full compliance with applicable RIDEM regulations.

/lam

5