**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CHARTER INTERNATIONAL OIL COMPANY,

Plaintiff,

v.

TRAVELERS CASUALTY AND SURETY COMPANY (f/k/a AETNA CASUALTY AND SURETY COMPANY),

Defendant.

Civil Action No. 06-324-S

**TRAVELERS CASUALTY AND SURETY COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE STATUTE OF LIMITATIONS**

TRAVELERS CASUALTY AND SURETY COMPANY

R. Kelly Sheridan (#1976)
Jason C. Preciphs (#6727)
Roberts, Carroll, Feldstein & Peirce
10 Weybosset Street
Providence, Rhode Island 02903
(401) 521-7000 (P)
(401) 521-1328 (F)

John A. Nadas (admitted pro hac vice)
Kathleen Burdette Shields (admitted pro hac vice)
Christopher R. Blazejewski (# 7549)
Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000 (P)
(617) 248-4000 (F)

Dated: June 15, 2007

**TABLE OF CONTENTS**


A. Charter Fails To Manufacture a Dispute Of Material Facts………………………… 2

B. Rhode Island's Choice of Law Rules Require The Application Of Massachusetts Law……………………………………………………… 3

C. Massachusetts Law Is Clear That The Statute Of Limitations Began To Run In 1991……………………………………………………… 6

D. If Rhode Island Law Governs The Statute Of Limitations Issue, It Does Not Provide That The Statute Begins To Run Only When The Insured Pays Its Final Dime Of Liability And Gets A Release………………… 7

E. Public Policy Weighs Against The Extreme Position Taken By Charter……………11

F. The "No Action" Clause Appearing In Some Of The Policies Does Not Mean That Charter's Claim Accrued First In 2002……………………………. 13

G. Charter's Alternative Request For Certification Is Not Appropriate………………. 14

CONCLUSION…………………………………………………………………….. 15

# TABLE OF AUTHORITIES

## CASES

*56 Associates ex rel. Paolino v. Frieband*,
89 F. Supp. 2d 189 (D.R.I. 2000)....................14

*Adams v. Town of Burrillville*,
249 F. Supp. 2d 151 (D.R.I. 2003)....................8

*Aetna Cas. & Surety Co. v. Dow Chemical Co.*,
883 F. Supp. 1101 (E.D. Mich. 1995)....................5

*Aetna Cas. & Surety Co. v. Kelly*,
889 F. Supp. 535 (D.R.I. 1995)....................12

*American Employers Ins. Co. v. Coachmen Indus., Inc.*,
838 N.E.2d 1172 (Ind. Ct. App. 2005) ....................6

*American Home Assurance Co. v. Libbey-Owens-Ford Co.*,
588 F. Supp. 764 (D. Mass. 1984) ....................5

*Bardon Trimount, Inc. v. Louis E. Guyott, Jr.*,
732 N.E.2d 916 (Mass. App. Ct. 2000) ....................1

*Blue Ribbon Beef Co. v. Napolitano*,
696 A.2d 1225 (R.I. 1997)....................9, 11

*Brown v. Church of the Holy Name of Jesus*,
252 A.2d 176 (R.I. 1969)....................4

*Cardillo v. Cardillo*,
360 F. Supp. 2d 402 (D.R.I. 2005)....................3

*DeCesare v. Lincoln Life Benefit Co.*,
852 A.2d 474 (R.I. 2004).................... 4-5

*Federal Ins. Co. v. Purex Indus., Inc.*,
972 F. Supp. 872 (D.N.J. 1997) ....................10

*Gail Frances, Inc. v. Diesel Elec., Inc.*,
62 F. Supp. 2d 511 (D.R.I. 1999).................... 8-9

*Gordon v. Clifford Metal Sales Co., Inc.*,
602 A.2d 535 (R.I. 1992)....................4

*Hammersmith v. TIG Ins. Co.*,
480 F.3d 220 (3d Cir. 2007)....5

*Insurance Co. of N. Am. v. Kayser-Roth Corp*.,
No. C.A. PC 92-5248, 1999 WL 813661 (R.I. Super. Ct. July 29, 1999), *aff'd*, 770 A.2d 403 (R.I. 2001)....13

*John Beaudette, Inc. v. Sentry Ins.*,
94 F. Supp. 2d 77 (D. Mass. 1999)....7, 13

*Liberty Mutual Ins. Co. v. National Council on Compensation Ins., Inc.*,
2007 R.I. Super. LEXIS 16 (R.I. Super. Ct. Jan. 22, 2007)....6

*Maryland Cas. Co. v. W.R. Grace & Co.*,
332 F.3d 145 (2d Cir. 2003)....5

*Maurice v. State Farm Mut. Auto. Ins. Co.*,
235 F.3d 7 (1st Cir. 2000)....15

*Mendez v. Brites*,
849 A.2d 329 (R.I. 2004)....4

*National Pharmacies, Inc. v. Feliciano-de-Melecio*,
221 F.3d 235 (1st Cir. 2000)....14

*New Hampshire Ball Bearings v. Aetna Cas. & Surety Co.*,
43 F.3d 749 (1st Cir. 1995)....1

*Over the Road Drivers, Inc. v. Transport Ins. Co.*,
637 F.2d 816 (1st Cir. 1980)....3

*Owens-Corning Fiberglas Corp. v. Allstate Ins. Co*.,
660 N.E.2d 755 (Ohio Ct. C.P. 1993)....14

*Port Authority of New York & New Jersey v. Affiliated FM Ins. Co.*,
311 F.3d 226 (3d Cir. 2002)....9

*Ratner v. Canadian Universal Ins. Co.*,
269 N.E.2d 237 (Mass. 1971)....14

*Russell v. Salve Regina College*,
938 F.2d 315 (1st Cir. 1991)....15

*Sandefer Oil & Gas Co. v. Aig Oil Rig of Texas, Inc.*,
846 F.2d 319 (5th Cir. 1988)....5

*State Farm Mut. Auto. Ins. Co v. Roach*,
945 So. 2d 1160 (Fla. 2006)....5

*Strauser v. Westfield Ins. Co.*,
827 N.E.2d 1181 (Ind. Ct. App. 2005) ....................................................................14

*Travelers Ins. Co. v. Royal Ins. Co.*,
841 N.E.2d 287, 2006 WL 223854 (Mass. App. Ct. 2006) ....................................................7

*United Brass Works, Inc. v. American Guar. & Liab. Ins. Co.*,
819 F. Supp. 465 (W.D. Pa. 1992)...........................................................................5

*United States v. Skidmore, Owings & Merrill*,
505 F. Supp. 1101 (S.D.N.Y. 1981).......................................................................8-9

*Wilkinson v. Harrington*,
243 A.2d 745 (R.I. 1968)....................................................................................12

**OTHER AUTHORITIES**

Restatement (Second) of the Conflict of Laws, §188 ...............................................................5

Restatement (Second) of the Conflict of Laws, §193 cmt. ........................................................5

Charter opposes Travelers C&S's motion for summary judgment by attempting to bury this Court in an avalanche of irrelevant factual detail and to persuade this Court that the statute of limitations on its breach of contract claim should not begin to run until 2002 when: (1) its "action [with RIDEM] concluded, (2) [its] liability was fully determined, and (3) [it] was finally released."[1] Charter Opp. at 1. The law does not require all three of these elements to be in place before the statute of limitations on a breach of contract claim begins to run. Such a rule would be illogical and impractical, particularly when applied in the environmental context, where it is routine for cleanups, and related environmental monitoring, to last for decades before environmental regulators can certify that nothing more needs to be done at a hazardous waste site.[2] Charter's position is wrong; its claim is untimely; and Travelers C&S should be granted summary judgment because the applicable statute of limitations began to run in 1991, or, at the latest, 1992.

This Court need not wade through the 13-page chronicle of Charter's actions at the Tiverton Site between 1992, when it obligated itself to clean up the Site by signing the Consent Agreement, and 2002, when it received its Certificate of Compliance and its final release from RIDEM. None of that detail matters because it is irrelevant to the appropriate legal standard governing when the statute of limitations begins to run. Under controlling Massachusetts law, the statute of limitations began to run in 1991, when Travelers C&S indisputably denied coverage for the RIDEM claim. If Rhode Island law, which has not addressed this precise question, were found to apply, Rhode Island courts would follow the same rule. Even if this Court held that Rhode Island would follow decisions that require Charter to incur liability before

---

[1] Travelers C&S uses in this brief a number of capitalized terms that were defined in its opening brief. Those definitions are incorporated herein.

[2] *See, e.g., New Hampshire Ball Bearings v. Aetna Cas. & Surety Co.*, 43 F.3d 749, 751 (1st Cir. 1995) (noting that cleanup was expected to take "19 to 32 years"); *Bardon Trimount, Inc. v. Louis E. Guyott, Jr.*, 732 N.E.2d 916, 924 (Mass. App. Ct. 2000) (environmental cleanup can take many years to begin, and can take "decades to complete").

its claim accrues, however, that test is met because Charter indisputably:

- assumed binding liability to clean up the Tiverton Site in 1992;
- admits that it had already spent more than $1 million at the Site by 1992 and obligated itself to spend millions of dollars more; and
- knew in 1992 that Travelers C&S had declined to pay any of those expenses.

*See* Shields Supp. Aff., Ex. 30; Velez Aff., Ex. T. All of the elements of Charter's cause of action were present and it was thus obliged to bring its claim within the next ten years under Rhode Island's statute of limitations, or within six years under Massachusetts law. Charter missed by many years.

Charter accuses Travelers C&S of repeating arguments it made in support of its motion to dismiss. Travelers C&S concedes this point. The statute of limitations argument that it made in its motion to dismiss is the same argument that justifies entry of summary judgment in favor of Travelers C&S. The Court asked for factual support for the motion to dismiss argument, beyond the pleadings, and that support has been filed with this motion. *See* Tr. of 10/19/06 Hearing, at 15-16, 42-43. The statute of limitations issue is now ripe for decision.

**A. Charter Fails To Manufacture a Dispute of Material Facts**

It is particularly revealing that, in the 13 pages of "facts" in its brief, Charter utterly ignores a number of facts that provide significant context to this Court's decision. Charter's brief fails to acknowledge, and nowhere disputes, that it was Charter which solicited RIDEM's involvement at the Site, as part of a real estate plan to redevelop the land for residential use, and that many of the negotiating positions that it took with RIDEM over the Site's cleanup were designed solely to benefit that redevelopment. *See* Trav. S.J. Brief, at 4.

Instead, Charter recites myriad details of its activities at the Site that were not specifically described in the Consent Agreement, and provides affidavits to interpret the obligations clearly set forth in that binding legal agreement. All of this detail, and parol evidence concerning the

meaning of the unambiguous Agreement, are irrelevant. The terms of the Consent Agreement determine when the statute of limitations began to run. In 1992, the Agreement unequivocally:

- bound Charter to remediate the Site following the RIDEM-approved remedial plan;
- had "all the force and effect of a final administrative decision and order;"
- was enforceable in court; and
- specified that the Site be cleaned up using bioremediation – the technique that was ultimately employed to clean up the Site.

*Id.* at 5-6. There is no dispute of material fact that this Court need resolve about the provisions of the Consent Agreement.

Charter also unsuccessfully attempts to create a dispute of fact as to whether the Policies were made in Massachusetts. *See id.* at 3, 13-14. The face of the Policies themselves, as well as the documents submitted by Travelers C&S, establish the fact that all but two of the Policies were made in Massachusetts. *See id.* On this record, there is no evidence that the vast majority of the Policies were issued, negotiated and delivered in some state other than Massachusetts. Although Charter says it disputes these facts, it has not produced a scintilla of contrary evidence. Such unsupported assertions that a fact is disputed do not suffice to create a genuine dispute of material fact for summary judgment purposes.[3] *See Over the Road Drivers, Inc. v. Transport Ins. Co.*, 637 F.2d 816, 819 (1st Cir. 1980) ("Conclusory allegations, unsupported by factual data, do not create a triable issue of fact") (quotation omitted); *Cardillo v. Cardillo*, 360 F. Supp. 2d 402, 409 (D.R.I. 2005) (opposition may not rest on mere denials, but "must set forth specific facts showing that there is a genuine issue for trial").

**B. Rhode Island's Choice of Law Rules Require The Application of Massachusetts Law**

Charter contends that Rhode Island's choice of law rules do not apply, or result in the application of the Rhode Island statute of limitations. Because Travelers C&S has already

---

[3] Charter further makes the unsupported assertion that the Policies were "issued from Connecticut." Charter Opp. at 49. There is no factual basis for this assertion and it should be ignored. It directly contradicts the evidence provided by Travelers C&S that the policies were negotiated and issued by Travelers C&S' Massachusetts offices.

addressed these arguments in its opening brief, it need only address them again briefly.[4] Rhode Island caselaw, and the modern trend nationwide, should guide this Court to apply the same state's law to govern both the Policies and the statute of limitations.

In breach of contract cases, and in insurance contract cases in particular, Rhode Island follows the *lex loci contractus* rule. *See* Trav. S.J. Brief, at 11-12 (citing cases). Charter makes no effort to distinguish this long-standing Rhode Island law, and does not dispute that Massachusetts law applies under the *lex loci* analysis. *See* Charter Opp. at 45-49.[5] In fact, the *DeCesare* case that Charter cites makes it clear that Rhode Island continues to apply the *lex loci* rule. *See DeCesare v. Lincoln Life Benefit Co.*, 852 A.2d 474, 484 (R.I. 2004). After deciding that the contracts at issue did not contain a choice of law provision, *DeCesare* stated that "Rhode's Island's conflict-of-laws doctrine provides that the law of the state where the contract was executed governs." *Id.* (citations omitted). This is the *lex loci* rule governing the Policies.

Even if this Court were to diverge from well-established Rhode Island law and adopt the interest weighing approach of the Restatement, Massachusetts law would nonetheless govern the Policies and the statute of limitations issue here. Charter contends that the Restatement favors

[4] Charter's sole new argument is its challenge to Travelers C&S's assertion that *Brown v. Church of the Holy Name of Jesus*, 252 A.2d 176, 178 (R.I. 1969) applied the Massachusetts statute of limitations to a claim under the Massachusetts wrongful death statute. *See* Charter Opp. at 43, n.14. Charter misconstrues *Brown*, which applied the Massachusetts statute of limitations that extended statute of limitations for non-residents and thus found that the ordinary one-year limitation did not control. *Id.* (citing Mass. Gen. Laws ch. 260, §9).

[5] The *lex loci* rule has not been rejected by two Rhode Island Supreme Court decisions, *Gordon v. Clifford Metal Sales Co., Inc.*, 602 A.2d 535 (R.I. 1992), and *Mendez v. Brites*, 849 A.2d 329 (R.I. 2004), as Charter contends. *Gordon*, which applies the choice of law rules of the UCC, rather than Rhode Island contract choice of law rules, expressly states that it is not dealing with the rules for a breach of contract case, and does not adopt or follow the Restatement's interest-weighing standards for breach of contract cases. *See id.* at 538-39 (case does not involve "a simple contracts issue governed by general contract principles"). Further, nothing in *Mendez* remotely suggests that choice of law decisions should be based on an interest weighing analysis. To the contrary, that court clearly found that an auto insurance policy issued in Massachusetts to a Massachusetts resident for a car garaged in Massachusetts was governed by Massachusetts law. *See id.* at 334-35. The court noted that Rhode Island law "simply does not attempt to regulate" insurance policies issued or purchased in other states. *Id.* at 337. In *dicta*, the court merely noted in passing that in the auto insurance context, it may refuse to enforce another state's law when that state's law conflicts with the "strong public policy" of the forum state, though it need not reach that issue as no such conflict existed there. The court provided no analysis of choice of law rules in breach of contract cases (which the insurer raised but the court did not address), and made no suggestion that it was abrogating the long-standing *lex loci* rule to adopt an interest weighing approach. *See id.* at 334, 340.

the law of the state of the "principal location of the risk." *See* Charter Opp. at 46-47. Charter overlooks the clear commentary that when the risks insured under an insurance policy are located in two or more states, as is the case under the Policies here, the location of the insured risk is of less significance, and the court should instead rely on the general contract choice of law rules in Restatement §188. *See* Restatement, §193 cmt. b; *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 233 (3d Cir. 2007); *Maryland Cas. Co. v. W.R. Grace & Co.*, 332 F.3d 145, 152-56 (2d Cir. 2003) (environmental claims); *Sandefer Oil & Gas Co. v. Aig Oil Rig of Texas, Inc.*, 846 F.2d 319, 324 (5th Cir. 1988) (oilfield claims). The Restatement does not provide, as Charter suggests, that the "only risks that matter are the ones at issue in the case at hand." Charter Opp. at 46.[6] Charter also cites comment f of Restatement §193 out of context. That comment relates to how a court would deal with a fire insurance policy that insured houses located in three states when each state required a special statutory form to be used for fire insurance on buildings in its territory, and focused on the impact of those state statutory requirements. *See* Restatement, §193 cmt. f. That provision does not apply here. *See Aetna*, 883 F. Supp. at 1108 (finding cmt. f inapplicable in case involving insurance coverage for multistate environmental liabilities).

If the primary location of the insured risk is relevant to this Court's analysis, that location is Massachusetts. It was the center of the relationship between Travelers C&S and its insured, Northeast, as well as the location of the majority of Northeast's business operations. *See* Stmt.

---

[6] *See Aetna Cas. & Surety Co. v. Dow Chemical Co.*, 883 F. Supp. 1101, 1106-10 (E.D. Mich. 1995) (rejecting cases on which Charter relies; "[w]hile the state where the environmental contamination is located has an interest in remediation and compensation of tort victims, the issue in an insurance policy dispute is not remediation or compensation, it is insurance coverage."); *United Brass Works, Inc. v. American Guar. & Liab. Ins. Co.*, 819 F. Supp. 465, 469-70 (W.D. Pa. 1992) (finding that law of dump site involved in this claim is not determinative of choice of law analysis and applying law of state where insured was headquartered, some of its facilities were located, and policy was issued); *American Home Assurance Co. v. Libbey-Owens-Ford Co.*, 588 F. Supp. 764, 765-66 (D. Mass. 1984) (insurance coverage claim should not be governed by law of state where underlying claim is filed; there could be many such states and parties need certainty about which state's law governs their policies).

Also, the *Shapiro* case that Charter cites (*see* Charter Opp. at 46 n.18), is not good law because it is based on the erroneous prediction that Florida courts would follow the Restatement, when Florida courts have continued to follow traditional *lex loci* analysis. *See State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).

¶¶8-12. The primary location of the insured risk cannot be judged retrospectively, based on the fortuity of where the present claim arose. *See American Employers Ins. Co. v. Coachmen Indus., Inc.*, 838 N.E.2d 1172, 1181 (Ind. Ct. App. 2005); *Liberty Mutual Ins. Co. v. National Council on Compensation Ins., Inc.*, 2007 R.I. Super. LEXIS 16, at 16 (R.I. Super. Ct. Jan. 22, 2007).

Massachusetts also has the most significant interest in having its law applied here. It is the state in which the Policies were negotiated between the insured, its agent, and Travelers C&S employees, and were issued and delivered, and it was the place where the insured was headquartered and the majority of the insured's business was based. It was thus the center of the parties' relationship and the only state's law that the parties could have reasonably expected to govern their dealings. Clearly every state has an interest in protecting the rights of parties who contract within its borders. In contrast, Rhode Island has little interest in the outcome of the present insurance coverage dispute. This is not a case about whether, when, or how the Tiverton Site will be cleaned up. The clean up is over and done, as part of Charter's redevelopment of the Site for residential construction. The only question remaining to be resolved is whether Travelers C&S has a contractual obligation to reimburse its insured's successor under the Policies for some of those payments. The focus here is not protecting Rhode Island residents from anything. The focus now is a dispute over a contract that was not made in, negotiated in, or even between parties residing in, Rhode Island. Rhode Island law should *not* govern the Restatement's interest weighing test.

**C. Massachusetts Law Is Clear That The Statute Of Limitations Began To Run In 1991**

Charter urges this Court to reject the clear and unambiguous holding of the Massachusetts Appeals Court that a claim for breach of an insurance contract begins to run when the insurer "disclaimed any obligation to defend or indemnify." *Travelers Ins. Co. v. Royal Ins. Co.*, 841 N.E.2d 287, 2006 WL 223854, at *2 (Mass. App. Ct. 2006). Charter does not deny that

Travelers C&S declined coverage in 1991, or that the applicable Massachusetts statute of limitations is six years. If Travelers C&S's denial was a breach of contract, as Charter contends, Charter was harmed and incurred expenses in 1991 as a result of that harm. Its cause of action was thus complete, and the limitations period began to run. The reasons that Charter offers to distinguish *Travelers*, or to cast doubt upon its clear holding, were all addressed in Travelers C&S's earlier briefs. *See* Trav. S.J. Br. at 19-22. As discussed in part F below, it is immaterial that the cases Travelers C&S cites do not deal with "no action" clauses, because Massachusetts does not apply such clauses in circumstances like this case, and it is of no consequence that none of these cases involves a third-party environmental insurance claim. These are decisions of general applicability to breach of contract cases and to insurance contract cases in particular.

**D. If Rhode Island Law Governs The Statute Of Limitations Issue, It Does Not Provide That the Statute Begins To Run Only When The Insured Pays Its Final Dime Of Liability And Gets A Release.**

Charter cites a number of cases that it claims stand for a "majority" rule that the statute of limitations on a breach of insurance contract claim only accrues when every penny of liability is fixed by a final judgment or release. Not only is Charter exaggerating when it claims that these cases constitute a "majority" rule, but it also overstates the holdings of these cases. On examination, those cases generally support a rule that the statute of limitations begin to run when it is clear that an insured becomes "legally obligated to pay damages," rather than when the equivalent of a final judgment and release is entered. *John Beaudette, Inc. v. Sentry Ins.*, 94 F. Supp. 2d 77, 103 (D. Mass. 1999). Thus, even if Rhode Island were to adopt the cases urged by Charter, it is indisputable that Charter became legally obligated to pay clean up costs when it signed the Consent Agreement in 1992. It also knew, when it signed the Consent Agreement, that Travelers C&S had declined coverage for those expenses. Further, by 1986, Charter expected to spend more than $3 million to clean up the Site; by 1987 it expected to spend more

than $6.7 million to clean up the Site; it had allegedly incurred $1.1 million to clean up the Tiverton Site by 1992; and it had allegedly incurred more than $12 million in such costs by 1996. *See* Shields Aff., Ex. 10, 24; Shields Supp. Aff., Ex. 30-32. Thus, not only did Charter know that it would be legally obligated to pay clean up costs when it signed the Consent Agreement, but also that it had already incurred such costs more than 10 years before it filed this suit.

Charter next attempts to distinguish relevant Rhode Island authority by asserting that the *Adams* case is limited to "continuing violation" tort cases and that *Gail Frances* is questionable because it relies on the *Skidmore* case which contains different statute of limitations accrual rules for breach of contract and indemnification claims.[7] *See* Charter Opp. at 22-23. With respect to *Adams*, the court clearly found that the plaintiffs' injuries "emanate[d] from" the town's denial of health benefits and distinguished between that denial as the cause of plaintiffs' injury and the continuing consequences of that denial; *Adams*' reasoning is not limited to tort cases espousing a continuing violations theory. *See Adams v. Town of Burrillville,* 249 F. Supp. 2d 151, 154-55 (D.R.I. 2003). Charter, just like Adams, is not complaining that its insurer caused the underlying harm which resulted in its liability, but merely is complaining that its insurer refused to foot the bill for that liability. With respect to *Gail Frances*, which relies primarily on Rhode Island Supreme Court precedent that a breach of contract claim accrues at the time of breach regardless of whether the parties know of the breach or whether damages occur later, its additional reliance on the *Skidmore* case does not help Charter's cause. *See Gail Frances, Inc. v. Diesel Elec., Inc.,*, 62 F. Supp. 2d 511, 515 (D.R.I. 1999) (citing *Blue Ribbon Beef Co. v. Napolitano*, 696 A.2d 1225, 1228-29 (R.I. 1997)). *Skidmore* found that the statute of limitations on a contractual indemnification claim begins to run when the party seeking indemnification "suffers a loss" such

[7] Charter accuses Travelers C&S of relying on cases interpreting fire insurance policies that contained contractual limitations provisions. Travelers C&S cited those cases to show that Rhode Island courts strictly enforce statutes of limitations, and never asserted that the Policies contain similar contractual limits. *See* Trav. S.J. Br. at 22 n.14.

as by making a payment for which it claims indemnification. *See United States v. Skidmore, Owings & Merrill*, 505 F. Supp. 1101, 1107 (S.D.N.Y. 1981). Under that rationale, Charter's claim accrued when it began to make payments for the Tiverton Site, an event that occurred far more than 10 years before Charter filed this suit.

Charter next contends that Travelers C&S has confused first and third party insurance contracts and that distinctions between the types of policies are relevant here. Travelers C&S has not confused these types of policies, and the differences between them that Charter points out are immaterial to the statute of limitations issue. There is no issue in this case about whether the interpretation of terms in a third party policy would inform the interpretation of terms in a first party policy, as was the case in the Third Circuit case upon which Charter primarily relies. *See Port Authority of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (cases in the asbestos context interpreting the trigger of coverage and the definition of property damage in third party insurance disputes are not relevant to such issues in first party disputes).[8] This section of Charter's brief is nothing more than a cover for its attempt to avoid the substantial body of case law from other jurisdictions that support the limitations rule that Travelers C&S urges this Court to adopt. *See* Trav. S.J. Brief at 27-28.

Charter also relies heavily on the *Purex* case to argue that "finality" is required before the statute of limitations begins to run on an environmental claim. *See* Charter Opp. at 34-35 (citing *Federal Ins. Co. v. Purex Indus., Inc.*, 972 F. Supp. 872 (D.N.J. 1997)). Charter misinterprets *Purex*. In denying summary judgment to Purex's insurers, that court found that the

[8] In any event, the purported reasons that Charter offers for rejecting first party cases here are proven irrelevant or utterly speculative in light of the *Port Authority* case Charter cites. For example, Charter argues that public policy considerations are relevant to third party insurance contracts but not, apparently, first party contracts. Many state courts would be surprised to hear that public policy is irrelevant to the interpretation of life, auto, and homeowners insurance. Similarly, Charter's speculation that harm in the first party context is more "finite" or "undisputed" than in the third party context is belied by the facts of the *Port Authority* case, in which the insured alleged harm from installed asbestos spanning a long and indefinite time frame, at many buildings, to which a variety of remedial and monitoring approaches had been taken and were continuing to be taken. *See* 311 F.3d at 230-32.

statute of limitations did not start to run on the only date that would have made Purex's claims untimely, the date that Purex signed an environmental Administrative Consent Order ("ACO"), because "[t]he ACO merely required testing of environmental conditions and remediation of contamination that might be discovered. In other words, liability was not finally determined at this point because any liability was contingent upon the discovery of contamination. Reports of contamination at the Millville site were not confirmed until [two years after the ACO was signed]." *Id.* at 880. Charter is incorrect that Purex's submission of a cleanup plan (eight years after signing the ACO), and later remediation and modifications under it, were relevant to the statute of limitations issue. *See id.* at 876. *Purex*'s facts are dramatically different from Charter's. Here, not only had contamination been confirmed when Charter signed its Consent Agreement, but the Consent Agreement approved a remediation plan. *See* Shields Aff., Ex. 17. Moreover, and completely ignored by Charter, *Purex* endorsed the statute of limitations rule that Travelers C&S urges this Court to adopt – the date on which the insurer denied coverage. *See Purex*, at 880. That rule did not make Purex's claim untimely because its insurers denied coverage only after the coverage suit was filed, but it would bar Charter's claims completely.

Charter also attempts to demonstrate that the Consent Agreement is "flexible" and only a "loose framework." Charter advocates for a rule that would not start the statute of limitations clock running until the very last dime of its clean up costs were known, no more activities at the Site could be required of it, and it obtained a final release from regulators. If this is the standard this Court wishes to adopt, Travelers C&S cannot dispute that the statute of limitations did not begin to run until 2002. This "rule" is contrary to law, impractical, and completely ignores the fact that Charter had conceded undisputed liability for cleaning up the Tiverton Site in 1992 and that if Charter had thereafter reneged on its obligation, it was subject to suit. *See* Shields Aff., Ex. 17, at CIOC 06-07. Such a rule would stretch the statute of limitations well past the

established dictate of Rhode Island law that contract statutes of limitations accrue before all of the consequential damages are known. *See Blue Ribbon*, 696 A.2d at 1229.

**E. Public Policy Weighs Against The Extreme Position Taken By Charter**

Charter's brief repeats the public policy theories that it raised in opposition to Travelers C&S's motion to dismiss. While Travelers C&S addressed these arguments in earlier briefing, several short supplementary points are required. Charter argues that it could not have known early in the remediation process how much its remediation would ultimately have cost, and thus an early accrual rule would prejudice its ability to decide whether to sue its insurer. Whether the statute of limitations began to run either in 1991, or at the latest 1992, as Traveler C&S asserts, Charter would have had plenty of time to make that decision. By 1997 (Charter's deadline to sue under the 6-year Massachusetts statute), Charter had allegedly incurred $18.3 million in connection with the Site. By 2001, (Charter's deadline to sue under the ten-year Rhode Island statute) it had allegedly incurred $21.2 million. *See* Shields Aff., Ex. 24. Either sum is perfectly sufficient to enable Charter to perform the cost-benefit analysis of deciding whether to sue its insurer. Equally frivolous is Charter's argument that the statute of limitations only begins to run after the last penny of its liability is paid to prevent it from recovering a windfall. In practice, Charter could combine a breach of contract claim to recover past costs with a declaratory judgment claim to receive a declaration as to whether it has coverage for future costs and a court would resolve the question of Charter's coverage all at once. Charter also complains loudly that it should not have to fight a "two-front war" by defending itself against RIDEM's cleanup requests while litigating with its insurer over coverage. There is a simple, conventional, solution to this alleged problem – if Charter truly felt that it was being prejudiced in the coverage action, it could seek a protective order or request that the action be stayed. *See, e.g., Aetna Cas. & Surety Co. v. Kelly*, 889 F. Supp. 535, 541-42 (D.R.I. 1995). The case would then have been

timely filed, the defendant insurer would be on notice of the dispute, and the court would be able to evaluate the parties' interests in the timing of the case. Such a resolution would ameliorate the significant prejudice facing an insurer like Travelers C&S here, who was sued in 2006, after its insured's successor let more than fourteen years lapse after receiving (and never disputing) Travelers C&S's denial of coverage.[9]

Although Charter feigns concern for Rhode Island public policy, it actually ignores established policy that seeks to prevent the litigation of stale claims with "tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses" and that "prevent[s] the unexpected enforcement of state claims concerning which persons interested have been thrown off their guard for want of seasonable prosecution." *Wilkinson v. Harrington*, 243 A.2d 745, 752 (R.I. 1968). The merits of Charter's claim for coverage will depend in part on the details of Northeast's operations at the Site and its knowledge and actions, all of which are now many decades old, and involve many aging witnesses and sources of proof. The extent to which remedial efforts were documented will not be the focus of many of these issues. Charter indisputably knew that Travelers C&S had declined coverage in 1991. There is no public policy that justifies Charter's rule here – which would allow it to bring suit *at any time before 2012* (10 years after the Certificate of Compliance was issued in 2002).

**F. The "No Action" Clause Appearing In Some Of The Policies Does Not Mean That Charter's Claim Accrued First In 2002.**

Charter contends that the "no action clause" in some of the Policies precludes the running of the statute of limitations until it received its Certificate in 2002. Charter misconstrues the "no action" clause, it is not applicable here. While Travelers C&S is not aware of any Rhode Island

[9] Charter also asserts that Travelers C&S monitored its cleanup in the intervening fourteen years simply because Travelers C&S produced (many months after this litigation was filed) documents from its files that related to Charter's post-1991 clean up work. *See* Charter Opp. at 33-34. Charter cites no support for its assertion, and cannot show that the documents did not result from Travelers C&S's investigation, in 2006, of Charter's claim.

authority directly on point, existing Rhode Island case law suggests that there is no basis for Charter's assertion that the clause was not satisfied until the Certificate of Compliance was issued in 2002, rather than when Charter and RIDEM signed the Consent Agreement in 1992. As of 1992, Charter was legally obligated to undertake and pay for the cleanup of the Tiverton Site. *See* Shields Aff., Ex. 17 at CIOC 02-04. After 1992, Charter could not refuse to clean up the Tiverton Site. The fact that Charter did not know in 1992, down to the dime, how much that cleanup would cost, is immaterial. *See, e.g.*, *Insurance Co. of N. Am. v. Kayser-Roth Corp*., No. C.A. PC 92-5248, 1999 WL 813661, *22 (R.I. Super. Ct. July 29, 1999) (liability was "finally determined" for purposes of "no action" clause despite fact that declaratory judgment held insured responsible for uncertain future remediation costs), *aff'd*, 770 A.2d 403 (R.I. 2001).

Massachusetts law, which should govern the Policies, "prevents an application of this clause as a means to bar an insured's cause of action against the insurer for breach of the duty to defend. . . . It is therefore unlikely that a Massachusetts court would follow decisions which rely . . . on no action clauses as a means to forego triggering the limitations period until issuance of a final judgment in an action alleging breach of the duty to defend." *Beaudette*, 94 F. Supp. 2d at 101 (relying on *Ratner v. Canadian Universal Ins. Co.*, 269 N.E.2d 237, 239 (Mass. 1971)).[10] Moreover, despite Charter's speculation about what position Travelers C&S could theoretically have taken concerning this clause, there can be no dispute that the "no action" clause was not, in fact, one of the reasons that Travelers C&S denied coverage for Charter's claim in 1991. *See* Velez Aff., Ex. T, at 7.

---

[10] Because Massachusetts law should govern the Policies, this Court should defer to Massachusetts law to determine whether the "no action" clause could affect the running of the statute of limitations. Although there is some disagreement on this issue nationally, Massachusetts and many other jurisdictions have declined to construe the "no action" clause to prevent the running of the statute of limitations in situations like those presented here. *See, e.g.*, *Strauser v. Westfield Ins. Co.*, 827 N.E.2d 1181, 1186 (Ind. Ct. App. 2005) (rejecting defense to statute of limitations bar premised on "no action" clause); *Owens-Corning Fiberglas Corp. v. Allstate Ins. Co*., 660 N.E.2d 755, 760-61 (Ohio Ct. C.P. 1993) (rejecting application of "no action" clause in analogous circumstances).

**G. Charter's Alternative Request For Certification Is Not Appropriate**

Charter's request for certification of certain questions to the Rhode Island Supreme Court should be denied, as there is no reason why this Court cannot resolve the state law issues before it, some of which arise under Massachusetts law. "The mere fact that the Rhode Island Supreme Court has not . . . address[ed] an issue does not, by itself, require certification. A federal court may attempt to predict how [a] state's highest court would rule on [an] issue in a pending federal case. Such predictions may be based upon existing state law or the better reasoned authorities from other jurisdictions." *56 Associates ex rel. Paolino v. Frieband*, 89 F. Supp. 2d 189, 191 (D.R.I. 2000) (citations omitted). Certification is also inappropriate where it would cause "needless delay" and "would likely inhibit, rather than further, the efficient administration of justice." *National Pharmacies, Inc. v. Feliciano-de-Melecio*, 221 F.3d 235, 241 (1st Cir. 2000).

To the extent necessary, this Court can reasonably predict Rhode Island law. First, it is clear that, under applicable Rhode Island choice of law rules, the choice of the applicable statute of limitations should follow the choice of substantive law to be applied to the Policies, and that the applicable law is that of Massachusetts, not Rhode Island. Second, even if this Court were to apply Rhode Island's statute of limitations in this case, the better reasoned Rhode Island decisions—as well as logic and public policy—suggest that the statute of limitations begins to run upon denial of a claim, because that is when the alleged breach occurs. The state law here is sufficiently clear to allow this Court to predict its course. *See, e.g., Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 10 (1st Cir. 2000) (denying motion to certify coverage question); *Russell v. Salve Regina College*, 938 F.2d 315, 318 (1st Cir. 1991) (denying motion to certify questions in contract dispute).[11]

[11] If the Court decides to certify questions to the Rhode Island Supreme Court, the Court should not certify the questions proposed by Charter because they are overbroad and inappropriate for certification, and should request briefing on the certification process and any potential questions.

## CONCLUSION

For the reasons stated above and for the reasons stated in Travelers C&S's opening memorandum, summary judgment should be granted to Travelers C&S dismissing Charter's Complaint in its entirety because it is time-barred by the statute of limitations.

/s/ Jason C. Preciphs
R. Kelly Sheridan (#1976)
Jason C. Preciphs (#6727)
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street
Providence, Rhode Island 02903
(401) 521-7000 (P)
(401) 521-1328 (F)

John A. Nadas (admitted pro hac vice)
Kathleen Burdette Shields (admitted pro hac vice)
Christopher R. Blazejewski (# 7549)
Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000 (P)

## CERTIFICATION OF SERVICE

I hereby certify that on this 15th day of June, 2007 a copy of Travelers Casualty and Surety Company's *Reply Brief in Support of Its Motion for Summary Judgment on the Statute of Limitations* has been filed electronically through the CM/ECF System, where it is available for viewing and downloading and will be sent electronically to the counsel of record listed below who are registered participants identified on the Notice of Electronic Filing:

**Robin-Lee Main**
Hinckley Allen & Snyder
50 Kennedy Plaza
Suite 1500
Providence, RI 02903-0819
rmain@haslaw.com

**Gerald J. Petros**
Hinckley, Allen & Snyder
50 Kennedy Plaza
Suite 1500
Providence, RI 02903
gpetros@haslaw.com

**Anna M. Piazza**
Hinckley, Allen & Snyder, LLP
50 Kennedy Plaza
Suite 1500
Providence, RI 02903
apiazza@haslaw.com

In addition, service of the within document by First-Class Mail, postage prepaid, has been made upon the to the following counsel of record who are not registered ECF participants identified on the Notice of Electronic Filing:

Brian F. Saulnier
James R. Segerdahl
Neal R. Brendel
Kirkpatrick & Lockhart Nicholson Graham LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222

/s/ Jason C. Preciphs