# Exhibit 32

SPELLING
ENTERTAINMENT GROUP INC.

May 8, 1996

The Honorable John H. Chafee
Ten Dorrance Street, Suite 221
Providence, RI 02903

Re: Former Fuel Oil Terminal - Tiverton, Rhode Island

Dear Senator Chafee:

Our company is engaged in a dispute with the U.S. Army Corps of Engineers ("Corps") regarding the environmental clean-up of our property in Tiverton, Rhode Island. As this property is located in your state and given your leadership in environmental issues, we want to call your attention to our concerns about the federally funded portion of the clean-up operation.

Our company is Charter International Oil Company, a wholly owned subsidiary of Spelling Entertainment Group Inc., which is approximately 78% owned by Viacom, Inc. Charter owns a former petroleum terminal in Tiverton. Our property consists of approximately 100 acres with 2,000' frontage on the Sakonnet River/Mt. Hope Bay ("Site").

The U.S. Air Force used portions of the Site from the late 1940's through 1968, and owned the Site from 1955 to 1968. During this period, aviation fuels for military use were delivered to the Site by barge and ship, and then sent by rail and tank truck to operational bases around the region, including Otis Air Force Base in Massachusetts. The United States has committed $250 million to address contamination including such aviation fuel at Otis AFB. We have owned the Site since 1968.

Charter is performing an environmental clean up of the Site pursuant to a 1992 Consent Order with the Rhode Island Department of Environmental Management ("DEM"). We have spent more than $12 million to clean the Site to residential use standards, in keeping with the character of the local community, despite the market value being only a fraction of the clean-up cost.

4655 Salisbury Road, Suite 399 • Jacksonville, Florida 32256 • Phone (904) 281-4480

The Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") provides that the United States shall be as responsible as any other potentially responsible party in addressing environmental contamination. The Corps has responsibility for the Site under the Defense Environmental Restoration Program for Formerly Used Defense Sites ("DERP/FUDS"). The Corps' New England Division ("N.E. Division") made a formal determination of Site eligibility for cleanup funding under the DERP/FUDS program on November 10, 1993.

We are disappointed that the Corps has not made any contribution to the Tiverton clean up. The following incidents are especially troublesome to us:

a. In response to discussions with Charter representatives, on October 15, 1993 the Corps stated a policy against reimbursement of costs incurred prior to execution of a cost-sharing agreement. On November 8, 1995, however, the Corps acknowledged its reimbursement of others in comparable situations. Although the Corps subsequently indicated that it would reconsider its decision, it still has made no decision regarding reimbursement.

b. Charter was not made aware of the Corps' November 10, 1993 finding of Site eligibility for DERP/FUDS funding until June, 1994.

c. In April 1994, Charter sent a draft Interim Cost-Sharing Agreement to the Corps. Although the N.E. Division had received a model Interim Cost-Sharing Agreement from the Corps' Missouri River District in February 1993, on July 5, 1994 the N.E. Division advised Charter that any future cost-sharing agreement must await completion of a "PRP Project" which was not begun until approximately one year later.

d. In February/March 1995, the Corps' declined to enter into a tolling agreement to stay potentially applicable statutes of limitation and provide additional time for informal negotiations, requiring Charter to file suit against the United States. Both of the private-party former owners from whom Charter also is seeking reimbursement entered into such agreements.

e. In July 1995, Charter made what it considers a reasonable cost allocation proposal based upon years of ownership and operation. One of the private party PRPs paid a substantial settlement to Charter based on such proposal after one meeting, a simple and informal exchange of information and several phone calls. In contrast, the Corps has on two occasions effectively refused even to participate in court sponsored alternative dispute resolution negotiations.

Charter recognizes its responsibility for the Tiverton cleanup. As mentioned previously, our Company has spent $12 million to date and is prepared to spend additional amounts to complete the clean-up process. Regrettably, however, the Corps has not participated in the cleanup, despite the authority and funding to do so.

Senator Chafee, you and others in Congress have been rightly critical of CERCLA for generating litigation costs equal to amounts being spent on environmental remediation. Unfortunately, the Corps has declined to conduct reasonable negotiations regarding the Site clean-up without expensive and unnecessary litigation.

We would be most appreciative if you could make an inquiry to the Corps regarding the status of the federally funded portion of the Site clean-up operation and the matters raised in this letter. We would also welcome any assistance that you can provide to ensure that the Corps' gives careful and prompt consideration to Charter's Site clean-up proposals.

Thank you for your attention to this matter. Please do not hesitate to call me directly if you have any questions; I would be happy to meet with you or a member of your staff to discuss our situation.

Very truly yours,

John E. Ross, Vice President
Charter International Oil Company

JER/jz

843