**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHARTER INTERNATIONAL OIL COMPANY,<br><br>Plaintiff,<br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY (f/k/a AETNA CASUALTY AND SURETY COMPANY),<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 06-324 S |

**PLAINTIFF'S SURREPLY BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S ALTERNATE REQUEST FOR CERTIFICATION**

CHARTER INTERNATIONAL OIL CORPORATION

Gerald J. Petros (#2931)
Robin L. Main (#4222)
Anna M. Piazza (#7206)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Phone: (401) 274-2000
Fax: (401) 277-9600
gpetros@haslaw.com
rmain@haslaw.com
apiazza@haslaw.com

Neal R. Brendel (admitted pro hac vice)
James R. Segerdahl (admitted pro hac vice)
Brian F. Saulnier (admitted pro hac vice)
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
neal.brendel@klgates.com
james.segerdahl@klgates.com
brian.saulnier@klgates.com

Dated: June 22, 2007

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... ii

**INTRODUCTION** .......... 1

**ARGUMENT** .......... 1

I. Final Judgment Must Be The Limitations Trigger Based On The No-Action Clause In The Policies, Rhode Island Indemnity Precedents, And Rhode Island Public Policy .......... 1

II. The Consent Agreement Provided A Flexible Framework For The Early Stages Of The Remediation .......... 6

III. Because The Statute Of Limitations Is Procedural Under Rhode Island Choice-Of-Law Principles, This Court Must Apply Rhode Island Law .......... 8

IV. Certification Is Appropriate If There Is Any Doubt On The Limitations Or Choice-Of-Law Issues .......... 10

**CONCLUSION** .......... 11

# TABLE OF AUTHORITIES

## Federal Cases

*Aetna Cas. & Sur. Co. v. Dow Chemical Co.*, 883 F. Supp. 1101 (E.D. Mich. 1995) .................. 9

*Aetna Casualty & Surety Co. v. Kelly*, 889 F. Supp. 535 (D.R.I. 1995) ..................................... 5

*American Home Assur. Co. v. Libbey-Owens-Ford Co.*, 588 F. Supp. 764 (D. Mass. 1984) ......................................................................................................... 9

*Fed. Ins. Co. v. Purex Indus, Inc.*, 972 F. Supp. 872 (D.N.J. 1997) ............................................ 7

*John Beaudette, Inc. v. Sentry Ins. A Mutual Co.*, 94 F. Supp. 2d 77 (D. Mass. 1999) ............. 2, 4

*Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002) ........................................................................................................ 5

*Shapiro v. Associated Intern. Ins. Co.*, 899 F.2d 1116 (11th Cir. 1990) ...................................... 9

*United Brass Works, Inc. v. American Guarantee and Liability Ins. Co.*, 819 F. Supp. 465 (W.D. Pa. 1992) ................................................................................................... 9

## State Cases

*Byron v. Great Am. Indemnity Co.*, 173 A. 546 (R.I. 1934) ....................................................... 8

*DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 474 (R.I. 2004) ............................................... 8

*Gordon v. Clifford Metal Sales Co., Inc.*, 602 A.2d 535 (R.I. 1992) .......................................... 8

*Insurance Co. of N. Am. v. Kayser-Roth Corp.*, No. C.A. PC 92-5248, 1999 WL 813661 (R.I. Super. Ct. July 29, 1999)……………………………………………2

*Johnson Matthey Inc. v. Pennsylvania Mfr. Assoc. Ins. Co.*, 593 A.2d 367 (N.J. Ct. App. 1991)……………………………………………………………….........9

*Kielb v. Couch*, 374 A.2d 79 (N.J. Super Ct. 1977)……………………………………………4

*Mendez v. Brites*, 849 A.2d 329 (R.I. 2004) ........................................................................ 8, 9

*Owens-Corning Fiberglas Corp. v. Allstate Ins. Co.*, 660 N.E. 2d 755 (Ohio Ct. C.P. 1993) ......................................................................................................... 2

*Ratner v. Canadian Universal Ins. Co.*, 269 N.E. 2d 237 (Mass. 1971) ................................ 2, 3

*Staples v. Waite*, 76 A. 353 (R.I. 1910) ...................................................................... 8

*Strauser v. Westfield Ins. Co.*, 827 N.E. 2d. 1181 (Ind. Ct. App. 2005) ....................................... 2

*Textron, Inc. v. Aetna Cas. and Sur. Co.*, 754 A.2d 742 (R.I. 2000) ........................................... 4

**State Rules**

Rhode Island Supreme Court Rule 6 ........................................................................... 10

**Other Authorities**

Allan D. Windt, 2 Insurance Claims and Disputes 4th § 9:2 (2007)............................................ 3

Restatement (Second) of Conflict of Laws § 193 ........................................................................ 9

## INTRODUCTION

The prior briefs have crystallized the parties' positions. Under Travelers's view of the statute of limitations, the statute begins to run upon date of denial of the claim, which Travelers contends occurred in 1991. Under Charter's view, the ten-year statute commences at final judgment, which did not occur here until 2002 when the Letter of Compliance was executed. As evidenced from Travelers's reply brief, Travelers does not dispute the facts, including the terms of the Consent Agreement, the documented remediation history, and Charter's affidavits all supporting Charter's position that the Letter of Compliance, not the Consent Agreement, constituted the final judgment in this case, resolving the underlying environmental action. At bottom, this Court must decide whether date of denial or final judgment starts the limitations clock. If it is the latter—as Charter contends it must be in this case based upon the no-action clause in the policies (which Travelers cannot distinguish), Rhode Island indemnity precedents (which Travelers ignores in its reply), and the majority view on the issue (which Travelers misconstrues)—then Travelers's motion for summary judgment must be denied.

## ARGUMENT[1]

### I. Final Judgment Must Be The Limitations Trigger Based On The No-Action Clause In The Policies, Rhode Island Indemnity Precedents, And Rhode Island Public Policy

Charter addressed in its opening brief why final judgment must be the limitations trigger under Rhode Island law. Travelers's reply does not show otherwise.

***First***, Travelers does little to distinguish the no-action clause in the policies. Travelers accuses Charter of misconstruing the no-action clause (*see* Travelers Reply Br. at 12), but then

---

[1] All references to exhibits and affidavits herein are to those filed with Charter's principal brief.

fails to provide any purported correct construction of the clause—likely because it cannot offer one that does not run contrary to the plain meaning of that provision. A no-action clause serves as a condition precedent to sue, evincing the insurer's intent that a claim by the insured should await final judgment in the underlying action. *See* Charter Br. at 31-34. Thus, as a matter of contract law, Travelers agreed in its policies that a cause of action by Charter would only commence upon final judgment. Travelers cannot now contend that the statute commenced and ran before Travelers's own policies state that a cause of action can be brought.

The Rhode Island case Travelers cites in its reply only supports this position. *See* Travelers Reply Br. at 13 (citing *Insurance Co. of N. Am. v. Kayser-Roth Corp*., No. C.A. PC 92-5248, 1999 WL 813661 (R.I. Super. Ct. July 29, 1999)). In *Kayser-Roth*, the court analyzed various conditions precedent in the policies, including the no-action clause, and concluded that Kayser-Roth satisfied the no-action clause because there had been a final judgment in the underlying environmental case. *See Kayser-Roth*, 1999 WL 813661, at *22 ("There is no dispute that Kayser-Roth's liability has been finally determined by judgment against it after actual trial in the [underlying case]."). *Kayser-Roth* clearly establishes that Rhode Island courts treat no-action clauses as conditions precedent for accrual of a cause of action—a position consistent with Charter's understanding of the statute of limitations.

The out-of-state cases Travelers cites in its reply brief are similarly unhelpful to Travelers. Those cases merely recognize that the insurer cannot rely on a no-action clause as a basis to deny a claim—a point with which Charter does not disagree.[2] Here, of course, Travelers

[2] *See* Travelers Reply Br. at 13 n.10 (citing *Ratner v. Canadian Universal Ins. Co*., 269 N.E. 2d 237 (Mass. 1971); *Strauser v. Westfield Ins. Co*., 827 N.E. 2d. 1181 (Ind. Ct. App. 2005); *Owens-Corning Fiberglas Corp. v. Allstate Ins. Co*., 660 N.E. 2d 755 (Ohio Ct. C.P. 1993)). Additionally, Travelers cites *John Beaudette, Inc. v. Sentry Ins. A Mutual Co*., 94 F. Supp. 2d 77,

is not relying on the clause to deny Charter's claim; rather, the clause is evidence of the parties' intent that this cause of action can, pursuant to the contract, only be brought once the condition precedent of final judgment was satisfied. The no-action clauses in the policies at issue here foreclose Travelers's statute-of-limitations defense.

***Second***, Travelers conspicuously fails to address the Rhode Island precedents holding that a cause of action for indemnification accrues only upon final judgment. *See* Charter Br. at 21-22. There is no good reason why Rhode Island courts would treat contract indemnity claims one way and insurance contract indemnity claims another; Travelers apparently concedes as much.

***Third***, Travelers incorrectly claims that the majority view is that a cause of action accrues when a policyholder is "legally obligated to pay damages." Travelers Br. at 7. However, Travelers conflates the *coverage* trigger of "legally obligated to pay damages" with the *limitations* trigger. The case law belies Travelers's mischaracterization of the trigger, as do insurance coverage commentators—these authorities specifically refer to final judgment, termination of the underlying action, or similar language in describing the limitations trigger. *See* Charter Br. at 19-20 (compiling cases); *see, e.g.*, Allan D. Windt, 2 Insurance Claims and Disputes 4th § 9:2 (2007) (noting that an " insured's cause of action for the carrier's breach of its duty to indemnify will accrue on the entry of a judgment against the insured or the entering into of a settlement agreement" and that the "majority view [] is that the insured's cause of action [for

---

103 (D. Mass. 1999), to distinguish the no-action clause in the policies at issue. Travelers Reply Br. at 13. The court in *John Beaudette* relied on *Ratner's* interpretation of the no-action clause, fearful of applying the no-action clause to a scenario like this one because of *Ratner*. But *Ratner* only barred the insurer from relying on a no-action clause; the court there expressed no view on the no-action clause as evidence of the parties' intent on the issue of the statute of limitations.

breach of the duty to defend] does not accrue until the termination of the third-party action brought against the insured”).[3]

***Fourth***, Travelers fails to counter the many public policy reasons supporting final judgment as the limitations trigger. As an initial matter, Travelers’s only policy concern—staleness—is exaggerated. *See* Charter Br. at 30-31; *see, e.g., Kielb v. Couch*, 374 A.2d 79, 82-83 (N.J. Super Ct. 1977) (rejecting date-of-denial trigger and staleness argument, because staleness concerns “are always present and have no relationship to the lapse of time between an event and the commencement of a law suit concerning the event[;] such factors should not be controlling in the present case in view of the factual and legal issues involved.”).[4] Further, Travelers ignores many of Charter’s policy arguments, most noticeably its *Textron*-based argument—which evinces that the Rhode Island Supreme Court has adopted a public policy rationale in the environmental insurance context in line with Charter’s position on the statute of limitations. *See* Charter Br. at 26-27 (citing *Textron, Inc. v. Aetna Cas. and Sur. Co*., 754 A.2d 742 (R.I. 2000)).[5]

---

[3] The case Travelers cites for its “legally obligated to pay damages” distinction is *John Beaudette, Inc. v. Sentry Ins. A Mutual Co*., 94 F. Supp. 2d 77, 103 (D. Mass. 1999). But the court there clearly found the accrual point was final judgment. *Id*. (citing Appleman treatise). The court noted that the “legally obligated to pay damages” provision in the policies was merely another reason confirming its adoption of the final judgment accrual point. *Id*. (“The contractual language of the policies defining the parties’ obligations confirms that Sentry had no duty to indemnify Suburban until Suburban became legally obligated to pay damages for property damage caused by an occurrence under the particular policy.”).

[4] In fact, the affidavit of John Ross puts to rest Travelers’s concern with “aging witnesses and sources of proof.” Travelers Reply Br. at 12. As shown in Mr. Ross’s detailed affidavit, the remediation was well-documented. *See* Affidavit of John Ross at ¶12.

[5] Charter’s opening brief also noted how Travelers failed to appreciate the distinctions between third-party and first-party coverage. Charter Br. at 23-26. Travelers’s response is to claim that policy considerations are also relevant to first-party contracts. *See* Travelers Reply Br. at 9 n.8.

Instead of confronting the serious policy concerns associated with requiring a policyholder to engage in a two-front war against the insurer and environmental agency,[6] Travelers posits several alternatives for insureds to pursue, such as filing a declaratory judgment action and then seeking a stay or a protective order. Travelers Reply Br. at 11. Such alternatives, however, are not guaranteed—and insurers typically fight policyholders' attempts at seeking stays or protective orders, as Travelers itself did (f/k/a Aetna) in the stay case it cites. *See, e.g., Aetna Casualty & Surety Co. v. Kelly*, 889 F. Supp. 535, 541-42 (D.R.I. 1995) (Travelers opposing stay, despite conflict-of-interest dilemma for insured). Taking Travelers's arguments to their end point, Travelers seeks a rule requiring insureds to litigate environmental insurance claims only through declaratory judgment actions, exposing insureds like Charter to conflicts of interest and additional liability in the underlying environmental action and risking an immediate dismissal of the complaint in light of the no-action clause in the policies. Travelers's view of the statute of limitations would render comprehensive coverage for environmental liabilities illusory and do little to incentivize prompt environmental remediation.

Simply put, contrary to Travelers's contention, Charter's view of the statute of limitations is not "extreme." It is the majority position, supported by sound public policy and Rhode Island

---

While courts certainly can examine policy concerns in interpreting first-party contracts, *public* policy plays a much greater role in assessing third-party contracts because, "[u]nlike liability policies, where the public interest in compensation for injured third-parties is a strong factor, in a first-party policy, the extent to which insured persons may protect themselves is a matter that rests in their own determination and judgment. As a result, the relationship between the insurer and insured and the incidence of property damage in first-party matters are generally determined by reliance on traditional contract principles." *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co*., 311 F.3d 226, 233-34 (3d Cir. 2002).

[6] Indeed, in this case, Charter's war had many fronts, including battles with at least four other government agencies and three PRP's—battles described in detail in Charter's principal brief and ignored in Travelers's reply.

case law. Perhaps most importantly, it is a position consistent with the no-action clause found in Travelers's own policies at issue in this case.

## II. The Consent Agreement Provided A Flexible Framework For The Early Stages Of The Remediation

While it appears that Travelers is content in distancing itself from the factual background of this case by belittling the remediation history as an "avalanche of irrelevant detail,"[7] the very purpose of Phase I discovery was to determine the scope and nature of the underlying environmental action, including the terms of the Consent Agreement. After all, if this detail were irrelevant, then the limitations issue could have been decided on Travelers's unsuccessful motion to dismiss. Travelers's decision to avoid the facts of this case is deliberate; the remediation history, as evidenced from the documents, the affidavits, and the terms of the Consent Agreement, all demonstrate that 1992 marked the beginning stages of the underlying remediation efforts with RIDEM, not the final ones. And in light of Travelers's failure to dispute any of this factual detail, these facts should be treated as undisputed for purposes of deciding this motion, demonstrating that no basis exists for granting Travelers's motion.

***First***, Travelers accuses Charter of "recit[ing] myriad details of its activities at the site that were not specifically described in the Consent Agreement" and argues that "[a]ll of this detail, and parol evidence concerning the meaning of the unambiguous Agreement, are irrelevant." Travelers Reply Br. at 2-3. Charter, however, is not seeking to vary the terms of an

[7] Ironically, the lone fact Travelers emphasizes—that Charter solicited RIDEM's involvement at the site—is the most irrelevant to the statute-of-limitations issue. Travelers Br. at 2. Whatever reasons motivated the early site visits by RIDEM—reasons not yet fully developed in the Phase I record—it is clear that RIDEM issued an uninvited coercive letter initiating testing and remediation of a contaminated site that surely had not gone unnoticed by RIDEM. *See* Affidavit of Robin Main ¶3, Exhibit F.

unambiguous writing, but rather to demonstrate that the writing at issue left many issues unresolved and open to future resolution—precisely the reason why it would be inappropriate to consider the mere entry of the Consent Agreement as the date fixing and resolving Charter's liabilities.[8]

***Second***, Travelers's attempt to distinguish *Fed. Ins. Co. v. Purex Indus, Inc.*, 972 F. Supp. 872 (D.N.J. 1997) is deficient. Travelers claims that "*Purex's* facts are dramatically different from Charter's" because in this case contamination had been confirmed when Charter signed the Consent Agreement and the Consent Agreement approved a remediation plan. Travelers Reply Br. at 10. Travelers is mistaken. While contamination was confirmed to be present at the site by 1992, as the affidavits and documents cited in Charter's principal brief make clear, the extent and nature of it had not yet been delineated. *See* Charter Br. at 10; 12-15; 35. Further, the remediation plan was merely a loose framework and was radically altered due to the changing circumstances at the site and with the law. *See id.* at 35-37; Affidavit of John Ross ¶¶5, 6-7, 10; Affidavit of Timothy O'Connor ¶¶4, 6-13. Travelers also omits important aspects of the court's reasoning in *Purex*, such as the court's reliance on the fact that the consent order there was subject to modification (as was the Consent Agreement here) and the agency—consent order notwithstanding—could still sue the insured under a number of environmental statutes (as Consent Agreement here likewise provides). *See* Purex, 972 F. Supp. at 880.

***Third***, Travelers mischaracterizes Charter's position (and the majority view) by claiming that Charter argues for accrual of a cause of action only "when every penny of liability" is paid. Travelers Reply Br. at 7. This is inaccurate. Final judgment represents conclusion of the

[8] Indeed, Charter's supporting affidavits and the Letter of Compliance itself demonstrate that the Consent Agreement was amended from its original form.

underlying action and a final determination of all liabilities. Where important and substantive disputes are still being addressed, as in this case up until 2002, the action is not final and the statute does not run. This is why the factual detail of the remediation here is, contrary to Travelers's contention, relevant as it demonstrates the ups and downs and the utter lack of finality of the underlying environmental action up through 2002. Parties can always settle an environmental action at a certain point, but pay the "judgment" later (e.g., agreeing to a future set stream of payments or obligations to pay certain costs pursuant to a set schedule). The issue of finality turns on when liability was fixed, not the execution of damages.

## III. Because The Statute Of Limitations Is Procedural Under Rhode Island Choice-Of-Law Principles, This Court Must Apply Rhode Island Law

Tellingly, Travelers in its reply does not press its claim that the statute of limitations is substantive under Rhode Island law—most likely because such a position is untenable. Well-settled precedents like *Staples v. Waite*, 76 A. 353, 354 (R.I. 1910) and *Byron v. Great Am. Indemnity Co*., 173 A. 546, 547 (R.I. 1934) make clear that Rhode Island choice-of-law principles command application of Rhode Island law on the procedural issue of the statute of limitations.

Even if that were not the case, this Court should still apply Rhode Island law under an interest-weighing analysis. Lex loci has been largely eviscerated in Rhode Island, as seen in both *Gordon v. Clifford Metal Sales Co., Inc.*, 602 A.2d 535, 537-39 (R.I. 1992) and *Mendez v. Brites*, 849 A.2d 329 (R.I. 2004). While Travelers cites *DeCesare v. Lincoln Benefit Life Co*., 852 A.2d 474 (R.I. 2004) to argue for lex loci—a case that Charter first cited in its principal brief—that case is inapposite, as the primary issue there was the validity of a choice-of-law provision in various life insurance contracts, and the court there did not have to address the issue

of whether some other state had a more significant interest. In light of the Rhode Island Supreme Court's decision that same term in *Mendez*, recognizing the validity of a Restatement-type interest-weighing analysis, if the Rhode Island Supreme Court were squarely presented with the issue, it would surely put to rest the last vestiges of lex loci.

As explained in Charter's opening brief, under an interest-weighing analysis, the law of the principal place of risk—Rhode Island here—is the law with the greatest interest. The primary case Travelers cites (Reply Br. at 5 & n.6) for an aggregate counting of all risks in determining the principal place of risk—*Aetna Cas. & Sur. Co. v. Dow Chemical Co.*, 883 F. Supp. 1101 (E.D. Mich. 1995)—involved an insurance action seeking coverage for multiple sites, not a single site. *See Dow Chemical Co.*, 883 F. Supp. at 1103 (E.D. Mich. 1995) ("The environmental claims arise from approximately 350 locations in forty-three states (including Michigan) and five Canadian provinces."). By contrast, this case has one site and thus one principal place of risk and one state with the greatest interest in the resolution of this case—Rhode Island.[9]

[9] Travelers also cites *American Home Assur. Co. v. Libbey-Owens-Ford Co.*, 588 F. Supp. 764 (D. Mass. 1984) and *United Brass Works, Inc. v. American Guarantee and Liability Ins. Co.*, 819 F. Supp. 465 (W.D. Pa. 1992) to incorrectly argue that one must count up all the risks in a policy in determining the principal place of risk. Both of those cases, however, are distinguishable. *American Home* was not even an environmental case and thus involved no site and no principal place of risk. *See* 588 F. Supp. at 764. The court in *United Brass* refused to apply the law of the site—but nonetheless recognized that other courts have adopted a site-specific approach. *See United Brass*, 819 F. Supp. at 469 (citing *Johnson Matthey Inc. v. Pennsylvania Mfr. Assoc. Ins. Co.*, 593 A.2d 367, 371 (N.J. Ct. App. 1991)). What appeared to prevent the court in *United Brass* from adopting a site-specific analysis was the fact that it incorrectly believed that Comment F of Restatement § 193 only applied to statutory-form fire policies. *Id.* at 469 n.3. Comment F, however, has been applied to third-party environmental policies. *Shapiro v. Associated Intern. Ins. Co.*, 899 F.2d 1116, 1120 (11th Cir. 1990) (applying Comment F and finding that "although the risks covered under the Associated umbrella policy were spread out over several states, the Restatement advises application of the substantive law of the state in

## IV. Certification Is Appropriate If There Is Any Doubt On The Limitations Or Choice-Of-Law Issues

Contrary to Travelers's claim, Charter is not contending that this Court must certify these questions to the Rhode Island Supreme Court, only that it has the discretion to do so. There is certainly ample authority, including Rhode Island case law, for this Court to decide the limitations issue, apply the majority view, and hold that final judgment—issuance of the Letter of Compliance in 2002—must be the point of accrual for Charter's cause of action. However, in the event that this Court harbors any doubt, Rhode Island Supreme Court Rule 6 allows for certification of the issues as formulated in Charter's opening brief. *See* Charter Br. at 52. These important issues are well-suited for this procedure.

---

which each individual risk is located when adjudicating issues concerning that risk, treating the comprehensive policy effectively as several different policies").

## CONCLUSION

For the foregoing reasons, Charter respectfully requests that this Court deny Travelers's motion for summary judgment, or, alternatively, certify the relevant questions to the Rhode Island Supreme Court.

CHARTER INTERNATIONAL OIL CORPORATION

Respectfully submitted by its attorneys:

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Robin L. Main (#4222)
Anna M. Piazza (#7206)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Fax: (401) 277-9600
gpetros@haslaw.com
rmain@haslaw.com
apiazza@haslaw.com

Neal R. Brendel (admitted pro hac vice)
James R. Segerdahl (admitted pro hac vice)
Brian F. Saulnier (admitted pro hac vice)
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
neal.brendel@klgates.com
james.segerdahl@klgates.com
brian.saulnier@klgates.com

Dated: June 22, 2007

**CERTIFICATE OF SERVICE**

**To:**

John A. Nadas, Esq.
Kathleen Burdette Shields, Esq.
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts, Carroll, Feldstein & Peirce
Ten Weybosset Street
Providence, RI 02903

I hereby certify that on June 22, 2007, a copy of the foregoing Plaintiff's Surreply Brief in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Alternate Request for Certification was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros (#2931)